# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **TRACTOR SUPPLY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 3:21-cv-00619** |
| **v.** ) | |
| ) | **Judge William Campbell** |
| **ACE AMERICAN INSURANCE** ) | **Magistrate Judge Holmes** |
| **COMPANY, UNIFIRST CORPORATION** ) | |
| **and ESIS, INC.,** ) | **Jury Demanded.** |
| ) | |
| **Defendants.** ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, Tractor Supply Company, for its Third Amended Complaint against the above-named Defendant, states as follows:

### Introduction

1.  This case concerns a continuing series of breaches of contract, tortious conduct, civil conspiracy, and bad faith by Defendants intended to systematically deny Tractor Supply Company ("Tractor Supply") the benefits of insurance protection and proceeds to which it is rightly entitled, as well as indemnity for the claims made against ACE American Insurance Company's ("ACE") insurance policy(s), to which Tractor Supply is an additional insured, as a result of problems with Defendant UniFirst Corporation's ("UniFirst") products. Defendants' conduct has been knowing, intentional, and outrageous, and has caused Tractor Supply Company extensive and continuing damages.

### Parties

2.  Plaintiff Tractor Supply is a corporation which is incorporated under the laws of the State of Delaware with a principal place of business of Brentwood, Williamson County,

Tennessee. This makes Tractor Supply a citizen of the States of Delaware and Tennessee, pursuant to 28 United States Code Section 1332(c)(1).

3. Defendant ACE American Insurance Company is a corporation which is incorporated under the laws of the Commonwealth of Pennsylvania with a principal place of business of 436 Walnut Street, Philadelphia, Pennsylvania. This makes ACE American solely a citizen of the Commonwealth of Pennsylvania, pursuant to 28 USC § 1332(c)(1).

4. Defendant UniFirst Corporation (hereinafter, "UniFirst") is a corporation which is incorporated under the laws of the Commonwealth of Massachusetts with a principal place of business of Wilmington, Massachusetts. This makes UniFirst solely a citizen of the Commonwealth of Massachusetts, pursuant to 28 USC § 1332(c)(1).

5. Defendant ESIS, Inc. (hereinafter, "ESIS") is a corporation which is incorporated under the laws of the Commonwealth of Pennsylvania with a principal place of business of Philadelphia, Pennsylvania. This makes ESIS solely a citizen of the Commonwealth of Pennsylvania, pursuant to 28 USC § 1332(c)(1).

## Jurisdiction and Venue

6. This Court has jurisdiction over this case pursuant to 28 USC § 1332 under diversity of citizenship. As shown above, Tractor Supply and the Defendants are completely diverse from each other. Further, as detailed below, the amount in controversy is measured in the millions of dollars, and therefore exceeds the jurisdictional minimum of Seventy-five Thousand Dollars ($75,000.00).

7. This Court also has supplemental jurisdiction over any additional state law claims made, pursuant to 28 USC § 1367.

8.     This Court has personal jurisdiction over Defendants inasmuch as they have the necessary minimum contacts as required by the United States Constitution. Each of the Defendants does a systemic course of business in the State of Tennessee. Defendants also meet the requirement of the Tennessee Long-Arm Statute, Tennessee Code § 20-2-201, as they are subject to suit in the same manner as a corporation incorporated under the laws of the State of Tennessee for a cause of action arising in the State of Tennessee. As discussed below, this cause of action arises at least in part within the State of Tennessee.

9.     Venue is proper pursuant to 28 USC § 1391(b)(2), inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Tennessee. As further detailed below, this case focuses on, amongst other things, the 2017 contract between Tractor Supply and UniFirst. That contract's explicit terms in paragraph 8.1 specifically selects, consents, and agrees to venue in this Court, stating that "venue shall be proper only in a court of competent jurisdiction located in the county and state in which [Tractor Supply]'s corporate offices are located." This Court is of competent jurisdiction and is so located, in that it is the federal court with jurisdiction over Williamson County, Tennessee. Further, the contract was consummated in this District, and there have been violations of the aforementioned contract within this District. Additionally, ESIS and ACE have committed extensive acts within this District, making venue also proper in this District.

### Facts

10.     Tractor Supply contracted with UniFirst on or about August 16, 2010, for the purpose of UniFirst supplying to Tractor Supply certain rental items, including rugs and mats to be used in Tractor Supply's stores throughout the United States. ESIS operates as UniFirst's agent and third-party administrator for the handling of all claims under this contract.

11.     UniFirst agreed in paragraph 12B as follows: "[UniFirst] shall defend, indemnify and save harmless [Tractor Supply] ... from all claims .... arising from or as a result of (i) any accident, injury, including death, loss or damage of any kind whatsoever caused to any person or property of any person as shall occur during the Term caused by the negligence or misconduct of [UniFirst] or (ii) [UniFirst's] failure to perform its obligations under this Agreement. The indemnities provided herein are ones of first defense and payment, not of reimbursement or surety and shall in no way be limited by or to the amount of insurance carried, or required to be carried, by [UniFirst]. The obligations of this Subsection 12B shall survive expiration or termination of this Agreement."

12.     UniFirst contracted in paragraph 11 for UniFirst to "carry and maintain, at its sole cost and expense, commercial general liability insurance on an occurrence form, including contractual liability, personal and bodily injury, and property damage insurance with a combined single limit in an amount sufficient to protect [UniFirst] and [Tractor Supply], but in no event will such insurance be in an amount less than a combined single limit of $1,000,000 per occurrence and an aggregate limit of $2,000,000. [Tractor Supply], its subsidiaries, affiliates, successors and assigns shall be named as an additional insured under [UniFirst]'s insurance subject to the provisions of this Agreement...." The paragraph continues, "Such insurance shall also be endorsed to provide that the insurance shall be primary to and not contributory to any similar insurance carried by [Tractor Supply] and which relate to [Tractor Supply]'s negligence and/or obligations hereunder, and shall contain a severability of interest clause."

13.     UniFirst agreed in the 2010 contract to furnish Tractor Supply with an insurance certificate as evidence that proper and adequate insurance coverage was in place. Subsequently, UniFirst furnished one or more certificates representing that the required coverage was in place,

and that Tractor Supply had been named as an additional insured on the required policies. The certificates did not disclose that any limitations had been placed on Tractor Supply's additional insured status, as such limitations which would make the coverage insufficient under the contract. Accordingly, Tractor Supply consistently contracted work with UniFirst relying upon UniFirst's representation that proper and adequate insurance coverage was in place.

14.     The certificates disclosed that the required coverage was provided under a policy issued by ACE. These certificates were issued by ACE or on ACE's behalf by its duly authorized agent(s).

15.     The 2010 contract expired on August 31, 2017. It was replaced by a new contract, effective September 1, 2017, through August 31, 2020.

16.     The 2010 contract also provides for arbitration between UniFirst and Tractor Supply for disputes under the contract. No such clause appears in the 2017 contract. Tractor Supply explicitly states that this Complaint, as to UniFirst, seeks relief only on such matters which occurred from September 1, 2017 to present. ESIS and ACE, however, are not signatories to the 2010 contract. All claims in this Complaint are addressed against ESIS and ACE for the full period of both the 2010 and 2017 contracts.

17.     The second contract had slightly different provisions. In paragraph 4, UniFirst warranted that: "All items of Merchandise supplied by [UniFirst] hereunder...will be processed, mended and finished in accordance with generally accepted standards of the textile rental industry [and] [s]ervices provided will be performed in a good and workmanlike manner by a skilled and qualified staff in accordance with the highest textile rental industry standards.

18.     Paragraph 5 of the 2017 contract, similar to paragraph 12B of the 2010 contract, required UniFirst to "defend, indemnity and hold harmless" Tractor Supply "from and against all

liabilities, costs, losses, damages and expenses...incurred or suffered by the Indemnified Party and arising as a result of the negligent acts or willful misconduct of the Indemnifying Party in performing its obligations under this Agreement."

19.     In paragraph 8.4 of the 2017 contract provides through reference to Exhibit B of the contract, matching paragraph 11 from 2016, that "[UniFirst] will obtain and at all times during the term of this Agreement maintain at its own expense...[Commercial General Liability] Insurance – on an occurrence basis naming [Tractor Supply]...as additional insureds with coverage limits of not less than $1,000,000 per occurrence/$2,000,000 aggregate. Such insurance shall also be endorsed to provide that the insurance shall be primary to and not contributory to any other coverages or self-insured programs maintained by [Tractor Supply]."

20.     As required by the 2017 contract, UniFirst furnished Tractor Supply one or more certificates representing that the required coverage was in place, and that Tractor Supply had been named as an additional insured on the required policies.

21.     The certificates disclosed that the required coverage was provided under a policy issued by ACE. These certificates were issued by ACE or on its behalf by its duly authorized agent(s). Again, the certificates did not disclose that any limitations had been placed on Tractor Supply's additional insured status.

22.     On May 22, 2019, a customer was injured in the Tractor Supply store in Crossville, Cumberland County, Tennessee, when he slipped on a mat provided by UniFirst under the contract. The case was assigned claim number 4169-048808.[1]

---

[1] To prevent any possibility of claims of violation of privacy or violation of confidentiality agreements, all claims in open pleadings will be referred to by claim number, and no specific dollar amounts of any settlement will be stated. Tractor Supply will move for an appropriate Protective Order as part of the report to the Court from the meeting of the parties under Federal Rule of Civil Procedure 26(f).

23.     On the same day, a customer was injured in the Tractor Supply store in Clewiston, Hendry County, Florida, when she slipped on a mat provided by UniFirst under the contract. The case was assigned claim number 004169-038486.

24.     At the time of the accidents, UniFirst maintained a Commercial General Liability policy through ACE. The Certificate of Liability Insurance represents that Tractor Supply was named as an additional insured on the policy, with subrogation waived. The insurance certificate does not disclose any information which would indicate the policy was in any way inconsistent with paragraph 11 of the contract.

25.     ESIS functions as UniFirst's third-party administrator for this and other insurance policies and appears to act as an independent contractor.

26.     Eventually, Tractor Supply was notified that both the injured customers from the Crossville and Clewiston store falls had retained counsel and were making a claim against Tractor Supply for their falls on UniFirst's mats.

27.     Tractor Supply tendered the Crossville claim to UniFirst and ESIS on April 28, 2020, demanding both indemnity under the contract and that ACE assume defense of the claim, with indemnification, pursuant to Tractor Supply's status as an additional insured on the UniFirst policy.

28.     Tractor Supply tendered the Clewiston claim directly to ACE twice, each time demanding both indemnity under the contract and that ACE assume the defense of and indemnify the claim, pursuant to Tractor Supply's status as an additional insured on the UniFirst policy. The claim specified that the customer was injured as a direct result of UniFirst's product. This required ACE to assume the defense of and indemnify the claim. The customer's damages, and thus the indemnity amount, are in excess of $145,000.00.

29.     Tractor Supply became aware as these cases progressed that the insurance policy, issued by ACE and for which Tractor Supply was named as an additional insured, contained a substantial deductible, far in excess of the norm. On information and belief, the deductible amount is Five hundred thousand Dollars ($500,000.00). This was not disclosed by UniFirst, ESIS, or ACE at any time prior to the claims made by Tractor Supply as an additional insured.

30.     By law, regulation, and insurance industry standard, the payment of a deductible is the sole responsibility of the policy holder.

31.     Also, by law, regulation, and insurance industry standard, an insurer who is notified of a claim which it believes as a factual matter or as a matter of disputed law is without coverage under a putatively applicable policy, who desires to be relieved of the duty of defense and indemnity of the claim, generally is required to seek the approval of a court of competent jurisdiction through a declaratory judgment action. Anything less can be considered a cause of action under various theories of liability.

32.     By letter on May 1, 2020, ESIS, speaking for UniFirst, flatly denied the contractual obligations of UniFirst under the contract and wrongfully denied Tractor Supply access to the insurance policy to which it was a named insured.

33.     Subsequently, Tractor Supply expended its own funds to settle the Crossville claim which should have been defended and indemnified by the Defendants, thereby causing Tractor Supply to suffer damages.

34.     Additionally, ACE denied the Clewiston claim of Tractor Supply without explanation.

35.     On information and belief, these denials were as a direct result of ACE communicating with the primary insured, UniFirst, and allowing UniFirst to control ACE's

decision on providing the coverage required under the contract, required under the policy, and which is confirmed by the Certificate of Insurance issued by ACE.

36.     Further, by law, regulation, and insurance industry standard, an insurer is required to treat each insured, whether they be the primary insured or an additional insured, equally and without favoritism. In other words, an insurer is prohibited from allowing one insured to interfere with the claims handling process of another insured.

37.     In spite of this rule, ACE allowed UniFirst to interfere in the claims handling process of the claims made by Tractor Supply, wrongfully causing the denial of Tractor Supply's claims by Defendant.

38.     These are but two examples of the ongoing gross misconduct of the Defendants with regard to these claims. Other examples include, but are not limited to:

    A.  Claim number 4169-037322, date of loss November 16, 2016. Claimant tripped and fell on a UniFirst entrance mat. Defendants denied the tender and claim. This claim remains open.

    B.  Claim number 4169-038486, date of loss February 25, 2017. Claimant tripped and fell on a UniFirst mat in a vestibule. Defendants denied the tender and claim. This claim remains open.

    C.  Claim number 4169-038849, date of loss April 3, 2017. Claimant tripped and fell on a UniFirst mat in a vestibule. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

    D.  Claim number 4169-038878, date of loss April 7, 2017. Claimant tripped and fell on a UniFirst mat in a front entrance. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

E. Claim number 4169-040948, date of loss September 27, 2017. Claimant tripped and fell on a UniFirst mat walking into an entrance. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

F. Claim number 4169-041071, date of loss October 6, 2017. Claimant tripped and fell on a UniFirst mat in the front entrance of a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

G. Claim number 4169-041426, date of loss November 5, 2017. Claimant tripped and fell on a UniFirst mat while walking out of a store. Defendants denied the tender and claim. This claim remains open.

H. Claim Number 4169-042385, date of loss January 26, 2018. Claimant tripped on a UniFirst walking out of a store, striking his shoulder against a door. Defendants denied the tender and claim. This claim remains open.

I. Claim number 4169-043584, date of loss April 25, 2018. Claimant tripped and fell on a UniFirst mat upon entering a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

J. Claim number 4169-044730, date of loss July 23, 2018. Claimant tripped over a UniFirst mat in a store. Defendants denied the tender and claim. This claim remains open.

K. Claim number 4169-044872, date of loss August 14, 2018. Claimant tripped and fell on a UniFirst mat in the front door area of a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

L.  Claim number 4169-045185, date of loss September 10, 2018. Claimant tripped on a UniFirst mat and struck her head. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

M.  Claim number 4169-045378, date of loss September 12, 2018. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

N.  Claim number 4169-046009, date of loss October 12, 2018. Claimant tripped and fell on a UniFirst mat while leaving a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

O.  Claim number 4169-046080, date of loss October 19, 2018. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendants denied the tender and claim. This claim remains open.

P.  Claim number 4169-046486, date of loss November 20, 2018. Claimant tripped on a UniFirst mat and was injured. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

Q.  Claim number 4169-046662, date of loss November 23, 2018. Claimant tripped and fell on a UniFirst mat while leaving a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

R.  Claim number 4169-047292, date of loss January 26, 2019. Claimant tripped and fell on a UniFirst mat. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

S. Claim number 4169-050472, date of loss January 27, 2019. Claimant tripped and fell on a UniFirst mat. Defendants denied the tender and claim. This claim remains open.

T. Claim number 4169-047676, date of loss February 28, 2019. Claimant tripped and fell on a UniFirst mat in a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

U. Claim number 4169-047819, date of loss March 12, 2019. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendants denied the tender and claim. This claim remains open.

V. Claim number 4169-047973, date of loss March 24, 2019. Claimant tripped and fell on a UniFirst mat while entering a store. Defendants denied the tender and claim. This claim remains open.

W. Claim number 4169-048088, date of loss April 2, 2019. Claimant tripped and fell on a UniFirst mat upon entering a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

X. Claim number 4169-048978, date of loss April 12, 2019. Claimant tripped and fell on a UniFirst mat at a store entrance. Defendant denied the tender and claim. This claim remains open.

Y. Claim number 4169-048378, date of loss April 23, 2019. Claimant tripped and fell on a UniFirst mat while entering a store. Defendant denied the tender and claim. This claim remains open.

Z.  Claim number 4169-048387, date of loss April 23, 2019. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendant denied the tender and claim. This claim remains open.

AA. Claim number 4169-048456, date of loss April 26, 2019. Claimant tripped and fell on a UniFirst mat, causing injuries. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

BB. Claim number 4169-048808, date of loss May 22, 2019. Claimant tripped and fell on a UniFirst mat in a vestibule. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

CC. Claim number 4169-049129, date of loss June 15, 2019. Claimant tripped and fell on a UniFirst mat in a vestibule. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

DD. Claim number 4169-049429, date of loss July 11, 2019. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendants denied the tender and claim. This claim remains open.

EE. Claim number 4169-049596, date of loss July 28, 2019. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendants denied the tender and claim. This claim remains open.

FF. Claim number 4169-049781, date of loss August 12, 2019. Claimant tripped and fell on a UniFirst mat. Defendants denied the tender and claim. This claim remains open.

GG. Claim number 4169-049821, date of loss August 15, 2019. Claimant tripped and fell on a UniFirst mat walking in an entrance door. Defendants denied the tender and claim.

HH. Claim number 4169-050071, date of loss September 3, 2019. Claimant tripped and fell on a UniFirst mat exiting a store. Defendants denied the tender and claim. This claim remains open.

II. Claim number 4169-050083, date of loss September 5, 2019. Claimant tripped and fell on a UniFirst mat entering a store. Defendants denied the tender and claim.

JJ. Claim number 4169-050266, date of loss September 20, 2019. Claimant tripped and fell on a UniFirst mat while walking through a vestibule. Defendants denied the tender and claim. This claim remains open.

KK. Claim number 4169-050260, date of loss September 22, 2019. Claimant tripped and fell on a UniFirst mat at an entrance, causing major cerebral trauma.[2] Defendants denied the tender and claim. This claim remains open.

LL. Claim number 4169-050510, date of loss October 10, 2019. Claimant tripped and fell on a UniFirst mat in an entrance. Defendants denied the tender and claim. This claim remains open.

MM. Claim number 4169-050704, date of loss October 26, 2019. Claimant tripped and fell on a UniFirst mat while entering a store. Defendants denied the tender and claim. This claim remains open.

---

[2] The damages from this claim individually exceed $750,000.00.

NN. Claim number 4169-050927, date of loss November 14, 2019. Claimant tripped and fell on a UniFirst mat while entering a store. Defendants denied the tender and claim. This claim remains open.

OO. Claim number 4169-051018, date of loss November 24, 2019. Claimant tripped and fell on a UniFirst mat while walking into a store. Defendants denied the tender and claim.

PP. Claim number 4169-051375, date of loss December 19, 2019. Claimant tripped and fell on a UniFirst mat while exiting a store. Defendants denied the tender and claim. Tractor Supply paid a settlement from its own funds.

QQ. Claim number 4169-051500, date of loss December 31, 2019. Claimant tripped and fell on a UniFirst mat exiting a store. Defendants denied the tender and claim. This claim remains open.

RR. Claim number 4169-051724, date of loss January 4, 2020. Claimant tripped and fell on a UniFirst mat entering a store. Defendants denied the tender and claim.

SS. Claim number 4169-051563, date of loss January 7, 2020. Claimant tripped and fell on a UniFirst mat while entering a store. Defendants denied the tender and claim.

TT. Claim number 4169-051567, date of loss January 7, 2020. Claimant tripped and fell on a UniFirst mat while leaving a store. Defendants denied the tender and claim.

UU. Claim number 4169-051583, date of loss January 8, 2020. Claimant tripped and fell on a UniFirst mat while entering a store. Defendants denied the tender and claim.

VV. Claim number 4169-051614, date of loss January 11, 2020. Claimant tripped and fell on a UniFirst mat as he departed a store. Defendants denied the tender and claim. This claim remains open.

WW. Claim number 4169-051623, date of loss January 13, 2020. Claimant tripped and fell on a UniFirst mat as he left a store. Defendants denied the tender and claim. This claim remains open.

XX. Claim number 4169-051639, date of loss January 14, 2020. Claimant tripped and fell on a UniFirst mat entering a store. Defendants denied the tender and claim. This claim remains open.

YY. Claim number 4169-051786, date of loss January 27, 2020. Claimant tripped and fell on a UniFirst mat exiting a store. Defendants denied the tender and claim.

ZZ. Claim number 4169-051827, date of loss January 30, 2020. Claimant tripped and fell on a UniFirst mat while departing a store. Defendants denied the tender and claim.

AAA. Claim number 4169-051944, date of loss February 7, 2020. Claimant tripped on a UniFirst mat entering a store. Defendants denied the tender and claim.

BBB. Claim number 4169-052018, date of loss February 15, 2020. Claimant tripped and fell on a UniFirst mat entering a store. Defendants denied the tender and claim.

CCC. Claim number 4169-052323, date of loss March 7, 2020. Claimant tripped and fell on a UniFirst mat while walking into a store. Defendants denied the tender and claim. This claim remains open.

DDD. Claim number 4169-052385, date of loss March 14, 2020. Claimant tripped and fell on a UniFirst mat while leaving a store. Defendants denied the tender and claim. This claim remains open.

EEE. Claim number 4169-052461, date of loss March 22, 2020. Claimant tripped and fell on a UniFirst mat entering a store. Defendants denied the tender and claim.

FFF. Claim number 4169-053303, date of loss March 24, 2020. Claimant tripped and fell on a UniFirst mat while walking through the door of a store. Defendants denied the tender and claim. This claim remains open.

GGG. Claim number 4169-053413, date of loss June 1, 2020. Claimant tripped and fell on a UniFirst mat at entrance of a store. Defendants denied the tender and claim. This claim remains open.

HHH. Claim number 4169-053573, date of loss June 11, 2020. Claimant tripped and fell on UniFirst mat upon entering a store. Defendants denied the tender and claim. This claim remains open.

III. Claim number 4169-053873, date of loss June 29, 2020. Claimant tripped and fell on a UniFirst mat in the vestibule while entering a store. Defendants denied the tender and claim. This claim remains open.

JJJ. Claim number 4169-054591, date of loss August 15, 2020. Claimant tripped and fell on a UniFirst mat in a front entrance. Defendants denied the tender and claim. This case remains open.

39.     Defendants have established a continuing pattern and practice of wrongfully rejecting Tractor Supply's demands for defense and indemnity asserted under the insurance policy to which Tractor Supply is named as an additional insured and under the Contract. Further, Defendants have engaged in other acts that constitute bad faith against Tractor Supply in this case, including wrongfully engaging in a conspiracy against Tractor Supply to deny it defense, indemnity, and other benefits.

40.     Specifically, the Defendants have engaged in a pattern and practice of deliberately and unlawfully avoiding their legal obligations by systematically denying Tractor Supply's claims in multiple cases without any legal justification.

41.     Further, on information and belief, Defendants have wrongfully refused Tractor Supply's claims because of the actions of UniFirst and ESIS actively taking steps with ACE to prevent Tractor Supply from accessing the coverage it is supposed to receive under the insurance policy in which it is named as an additional insured. This action by ACE is in violation of the severability clause of the insurance policy, wherein ACE states they will treat each insured separately and without prejudice to any other insured. In other words, the policy states that ACE will not allow the primary insured to interfere in the claims, defense, and indemnity of an additional insured. ACE has not complied with its promise in this regard.

42.     Pursuant to paragraph 11 of the contract, UniFirst had a duty to obtain and provide Tractor Supply with CGL liability insurance coverage which named Tractor Supply as an additional insured and also "which relate to [Tractor Supply]'s negligence and/or obligations" under the contract, that is, which cover Tractor Supply for its own acts or omissions. However, upon information and belief, UniFirst, knowingly and willingly aided by its agent, ESIS, has taken specific and deliberate action to cause ACE to deny Tractor Supply coverage under said policy(s).

43.     Paragraph 11 of the contract required Tractor Supply to be named as an additional insured on the above-described insurance policies with a $1,000,000 per occurrence and an aggregate limit of $2,000,000. This description requires that Tractor Supply actually be provided that coverage. In other words, the insurance coverage provided under UniFirst's policies was to begin with the first dollar of damages and extend through the policy limits, including the costs of defense, as is standard in all such insurance policies.

44.     UniFirst provided insurance certificates to Tractor Supply representing that Tractor Supply has been named as an additional insured on the policies required by paragraph 11 of the contract. Unfortunately, these insurance certificates did not reveal that the insurance policies did not provide to Tractor Supply the coverage bargained for. Instead of coverage from the beginning of the case, UniFirst and ESIS had arranged a process, unknown in insurance law, regulation, or industry practice, wherein UniFirst could deny coverage to Tractor Supply through use of an artifice not authorized at law.

45.     Specifically, the insurance contract which ESIS administers provides in its written terms to have a deductible. At insurance law, this means that the insurer is responsible for all activities in the case from the moment the claim is presented to the insurer by the named insured (including an additional insured). The main insured is required to reimburse the insurer for its expenses, up to the amount of the deductible. The insurer is obligated to take action on the claim without prepayment of the deductible.

46.     This is contrast with a "self-insured retention." In the latter case, the main insured is required to pay all the expenses of the claim, from whatever source, until the amount of the self-insurance is expended. At that point, the insurer takes over and pays for the remainder of the claim, up to the limit of the policy. In instances of self-insurance, the insurer has no obligation to take any action on the claim until the insured has exhausted the self-insurance.

47.     What UniFirst and ESIS created, and ACE has acquiesced to, was a regime which is titled as a deductible, but which operates like a self-insured retention. Specifically, ACE and ESIS have represented on numerous occasions to Tractor Supply that this deductible is a "insured controlled deductible," and therefore, neither ACE nor ESIS can take any action on the claim until UniFirst pays its deductible. The concept of a deductible, as opposed to a self-insured retention,

being controlled by the insured is completely contrary to all insurance law, regulation, and industry standards. It apparently is a concept invented by the Defendants to attempt to excuse this outrageous conduct.

48.     This action has the effect of denying Tractor Supply access to the insurance policy, because ESIS wrongfully refuses to process, and ACE wrongfully refuses to defend and indemnify, the claim without the effective permission of UniFirst through the pre-payment of the deductible.

49.     This action is outrageous in that it has the effect of outsourcing the coverage determination from ACE, as the insurer, to UniFirst, the primary insured. This action is completely without legal justification and creates a situation where any coverage under the policy is illusory.

50.     When this inconsistency was brought to the attention of ACE and ESIS, they could provide no excuse for their conduct, nor provide any explanation in law, regulation, contract, industry standard, or anything else. The only statement ACE would make was that it could not go against the directions of UniFirst and ESIS and thereby was required to deny Tractor Supply coverage. UniFirst too refused to provide any explanation for its actions in wrongfully denying Tractor Supply the insurance coverage bargained for.

51.     UniFirst may not accomplish through the use of an agent such as ESIS what it cannot lawfully do itself. Further, ESIS is also liable for knowingly assisting another in wrongful conduct.

52.     When the claims were brought to ACE's attention directly, to avoid the interference by UniFirst and ESIS, ACE refused to process the claims, stating it could not go against the directions of UniFirst and ESIS.

53.     As a result of the Defendants' wrongful conduct, Tractor Supply has suffered losses in excess of Two Million Dollars ($2,000,000.00) and suffers continuing damages as further claims accrue.

## Count One: Breach of Contract (as to ACE)

54.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

55.     Pursuant to the Certificate(s) of Insurance and other documents which evidence that ACE had agreed to accept Tractor Supply as an additional insured, waive subrogation, and make the its policy(s) primary for Tractor Supply Company for claims under the UniFirst contracts, ACE had a duty to insure Tractor Supply with Commercial General Liability (hereinafter, "CGL") liability insurance coverage naming Tractor Supply as an additional insured and also "which relate[s] to [Tractor Supply]'s negligence and/or obligations" under the contracts, that is, which covers Tractor Supply for its own acts or omissions.

56.     However, upon information and belief, Tractor Supply's additional insured status under the policy(s) has been limited by ACE in some manner and do not include coverage for the alleged acts and omissions of Tractor Supply.

57.     Upon information and belief, therefore, ACE breached the contract(s) by failing to provide the insurance coverage in accordance with the Certificate(s) of Insurance.

58.     As a proximate result of ACE's breach, Tractor Supply is without the insurance coverage to which it is entitled under the contracts, in whole or in part, for the claims pending against Tractor Supply.

59.     ACE consistently concealed their breach by providing insurance certificates to Tractor Supply, which misled Tractor Supply to believe, justifiably, that it had been named as an additional insured on the policy(s) required by the UniFirst contracts, without limitations unknown to Tractor Supply.

60.     Tractor Supply only discovered that ACE was in breach after claims and litigation involving the rugs UniFirst supplied to Tractor Supply under the contracts ensued, at which time the purported limitations in its additional insured status under the policy(s) were disclosed to Tractor Supply by ACE.

61.     Therefore, insofar as ACE has accurately represented to Tractor Supply Company its status under its policy(s), and for the reasons set forth above and others that may become apparent, Tractor Supply is entitled to damages proximately caused by ACE's breach of its obligations under the contract(s) of insurance, including but not limited to indemnifying and/or reimbursing Tractor Supply for all judgments, settlements, attorneys' fees, costs, expenses, or other costs or damages incurred by or on behalf of Tractor Supply in and about the defense of this matter as a result of the allegations in the aforesaid claims, others not specified, and all future claims.

### Count Two: Breach of Contract (as to ACE)

62.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

63.     ACE wrongfully refused to process the aforesaid claims, abdicating their duty under the policy(s) to treat each insured separately and without regard to the interests of any other insured, including the primary insured, thereby allowing UniFirst to deny Tractor Supply coverage under the policy which Tractor Supply was named as an additional insured.

64.     Had ACE not allowed UniFirst to interfere with its claims processing, all claims asserted against Tractor Supply in connection with the subject mats would have been covered under the applicable policy(s). As a proximate result of ACE permitting UniFirst's wrongful interference, Tractor Supply is without the insurance coverage to which it is entitled under the contracts, in whole or in part, for the aforesaid claims.

65.     Accordingly, ACE breached the contract by failing to comply with the severability clause of the policy(s) which require ACE to treat Tractor Supply as an equal to UniFirst when adjusting and adjudicating claims under the policy(s).

66.     Therefore, Tractor Supply is entitled to damages resulting from ACE's breach, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, others not specified, and all future claims.

### Count Three: Breach of Contract (as to ACE)

67.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

68.     ACE wrongfully abdicated control of the insurance adjusting process and determination of coverage to UniFirst and UniFirst's agent, ESIS, thereby allowing UniFirst to deny Tractor Supply coverage under the policy which Tractor Supply was named as an additional insured.

69.     Had ACE not allowed UniFirst to assume control the claims processing and determination of coverage of Tractor Supply's claims, all claims asserted against Tractor Supply in connection with the subject mats would have been covered under the applicable policy(s). As a proximate result of ACE permitting UniFirst's wrongful interference, Tractor Supply is without

the insurance coverage to which it is entitled under the contracts, in whole or in part, for the aforesaid claims.

70.     Accordingly, ACE breached the contract by failing to comply with the clause(s) of the policy(s) which require ACE to be the adjuster and claims administrator for Tractor Supply.

71.     Therefore, Tractor Supply is entitled to damages resulting from ACE's breach, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, others not specified, and all future claims.

## Count Four: Breach of Contract (As to UniFirst and ESIS)

72.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

73.     As discussed above, UniFirst and ESIS, as agent of UniFirst, breached the contract by wrongfully refusing to provide Tractor Supply with the insurance coverage required under paragraph 11 of the contract by use of the artifice of the "insured controlled deductible."

74.     Accordingly, UniFirst and ESIS breached the contract by taking action to prevent Tractor Supply from obtaining the benefit of its bargain through such breach.

75.     Therefore, Tractor Supply is entitled to damages resulting from UniFirst and ESIS's breach, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, and all future claims.

## Count Five: Breach of Contract (As to UniFirst and ESIS)

76.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

77. Further, UniFirst also breached the contract by refusing to indemnify Tractor Supply for its losses as a result of UniFirst's mats which UniFirst provided to Tractor Supply under the contract, as required by paragraph 12B of the contract.

78. Accordingly, UniFirst and ESIS breached the contract by taking action to prevent Tractor Supply from obtaining the benefit of its bargain through such breach.

79. Therefore, Tractor Supply is entitled to damages resulting from UniFirst and ESIS's breach, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, and all future claims.

## Count Six: Breach of Contract (As to UniFirst and ESIS)

80. Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

81. Additionally, UniFirst and ESIS wrongfully interfered with the processing of these claims by ACE, thereby causing ACE to deny Tractor Supply coverage under the policy which Tractor Supply was a named additional insured.

82. Had UniFirst not interfered with ACE's claims processing, all claims asserted against Tractor Supply in connection with the subject mats would have been covered under the applicable policy. However, as a proximate result of UniFirst's wrongful interference, Tractor Supply is without the insurance coverage to which it is entitled under the contract, in whole or in part, for the aforesaid claims.

83. Accordingly, UniFirst and ESIS breached the contract by taking action to prevent Tractor Supply from obtaining the benefit of its bargain through such breach.

84. Therefore, Tractor Supply is entitled to damages resulting from UniFirst and ESIS's breach, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, and all future claims.

## Count Seven: Tortious Interference (As to UniFirst and ESIS)

85. Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

86. UniFirst and ESIS were aware that Tractor Supply was a named additional insured with ACE, and that this status as an additional insured gave Tractor Supply the status of a third-party beneficiary to a valid contract.

87. As UniFirst was the primary insured, and ESIS was the third-party administrator to the contract, both were aware of the existence of the contract.

88. UniFirst and ESIS intended to disrupt the performance of the contract by ACE.

89. UniFirst and ESIS wrongfully and tortiously interfered with the processing of Tractor Supply's claims by ACE, thereby causing ACE to deny Tractor Supply coverage under the policy which Tractor Supply was a named additional insured.

90. Had UniFirst and ESIS not interfered with ACE's claims processing, all claims asserted against Tractor Supply in connection with the subject mats would have been covered under the contract. Tractor Supply has suffered damages as a result of the actions of UniFirst and ESIS.

91. Therefore, Tractor Supply is entitled to damages resulting from UniFirst and ESIS's tortious interference, including but not limited to all judgments, settlements, attorneys' fees, costs,

expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, and all future claims.

**Count Eight: Inducement of Breach of Contract (As to UniFirst and ESIS)**

92.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

93.     As previously stated, UniFirst and ESIS were aware that Tractor Supply was a named additional insured with ACE, and that this status as an additional insured gave Tractor Supply the status of a third-party beneficiary to a valid contract.

94.     UniFirst was the primary insured, and ESIS was the third-party administrator to the contract, both were aware of the existence of the contract.

95.     For reasons of its own, UniFirst and ESIS sought, through intentional act, to induce ACE to breach the contract to which Tractor Supply was a third-party beneficiary.

96.     As a result of UniFirst and ESIS' wrongful acts, ACE did, in fact, breach the contract by wrongfully denying Tractor Supply coverage under the policy which Tractor Supply was a named additional insured.

97.     Had UniFirst not interfered with ACE's claims processing, all claims asserted against Tractor Supply in connection with the subject mats would have been covered under the contract. Tractor Supply has suffered damages as a result of the actions of UniFirst and ESIS.

98.     Therefore, Tractor Supply is entitled to damages resulting from UniFirst and ESIS's inducement of breach of contract, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, and all future claims.

## Count Nine: Breach of Fiduciary Duty (as to UniFirst and ESIS)

99.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

100.    As the primary insured under the contract of insurance, and under the applicable contract(s) between UniFirst and Tractor Supply, to which ESIS was the third-party administrator, there existed a special relationship between the parties such that UniFirst and ESIS owed a fiduciary duty to Tractor Supply.

101.    UniFirst and ESIS breached that fiduciary duty by intentionally acting in a manner designed to prevent Tractor Supply from obtaining indemnity or access to the insurance policy for which it was an additional insured.

102.    As a direct and proximate cause of this breach of fiduciary duty, Tractor Supply has suffered damages.

103.    Therefore, Tractor Supply is entitled to damages resulting from UniFirst and ESIS's breach of fiduciary duty, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints, and all future claims.

## Count Ten: Fraudulent Misrepresentation and/or Fraudulent Concealment (As to ACE)

104.    Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

105.    UniFirst Corporation provided insurance certificates to Tractor Supply representing that Tractor Supply has been named as an additional insured on the policies required the contracts.

106.    The insurance certificates were issued by ACE, through its agent, Willis of Massachusetts, Inc.

107.    These insurance certificates did not reveal that the insurance policies contained limitations on Tractor Supply's status as an additional insured, or upon the coverage that was provided to Tractor Supply as an additional insured under the insurance policies issued by ACE to UniFirst, which made the coverage provided to Tractor Supply as an additional insured both inconsistent with the requirements of the contracts and illusory.

108.    ACE intentionally provided these misleading insurance certificates to Tractor Supply in an effort to conceal and prevent Tractor Supply from discovering that ACE had agreed to allow UniFirst and ESIS to take control of the claims handling and adjusting process so as to deny Tractor Supply coverage under the policy.

109.    Tractor Supply reasonably relied upon this representation by ACE as evidence that Tractor Supply was protected by adequate insurance coverage in the event it incurred any liabilities, damages, or other losses with respect to "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the Agreement.

110.    As a result of ACE's fraudulent misrepresentation and/or fraudulent concealment of the illusory nature of the insurance coverage the certificates of insurance purported to represent, Tractor Supply has incurred damages in the defense of the aforesaid claims, and others. Tractor Supply will continue to incur damages as it continues its defense of the aforesaid claims and others in the future.

111.    Therefore, Tractor Supply is entitled to damages resulting from ACE's fraudulent misrepresentation and/or fraudulent concealment, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other costs and damages incurred by or on behalf of Tractor Supply in and about the defense of this matter as a result of the allegations in the aforesaid complaints, others not specified, and all future claims.

4883-5994-1640.2

**Count Eleven: Fraudulent Misrepresentation and/or Fraudulent Concealment (As to UniFirst)**

112.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

113.     As required by paragraph 11 of the Contract, UniFirst provided to Tractor Supply a Certificate of Insurance which named Tractor Supply as an additional insured on the applicable policies. That Certificate is in the usual and customary form. It does not reveal anything which would suggest that UniFirst had retained the ability to deny coverage to Tractor Supply through use of an artifice not authorized in law, regulation, or industry standards.

114.     UniFirst, and its agent, ESIS, fraudulently misrepresented and/or concealed from Tractor Supply this artifice, and the fact that no insurance coverage would actually be provided under the policies which Tractor Supply had been named as an additional insured, an action inconsistent with the requirements of paragraph 11 of the contract.

115.     UniFirst intentionally provided these misleading insurance certificates to Tractor Supply in an effort to conceal and prevent Tractor Supply from discovering that the insurance obtained failed to meet the requirements of paragraph 11 of the contract. Tractor Supply had the right to rely upon UniFirst's representations and did so to its detriment by contracting work to UniFirst which would not have been done had Tractor Supply been apprised of the true facts.

116.     As a result of UniFirst Corporation's fraudulent misrepresentation and/or fraudulent concealment of the fact there was not actually insurance coverage provided to Tractor Supply as required by paragraph 11 of the contract, Tractor Supply has incurred damages in the defense of the aforementioned complaints, which would have been covered by the insurance coverage UniFirst was required to obtain under paragraph 11 of the contract. Tractor Supply will

continue to incur damages as it continues its defense of the claims in the aforementioned complaints and future claims.

117.    Therefore, Tractor Supply is entitled to damages resulting from UniFirst's fraudulent misrepresentation and/or fraudulent concealment, with the knowing and willing assistance of ESIS, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforementioned complaints and all future claims.

### Count Twelve: Negligent Misrepresentation (as to ACE)

118.    Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

119.    UniFirst provided to Tractor Supply a Certificate of Insurance which named Tractor Supply as an additional insured on the applicable policies. That Certificate is in the usual and customary form. It does not reveal anything which would suggest that ACE had ceded to UniFirst the ability to deny coverage to Tractor Supply through use of an artifice not authorized in law, regulation, or industry standards.

120.    The insurance certificates were issued by ACE, through its agent, Willis of Massachusetts, Inc.

121.    In issuing the certificates of insurance, ACE negligently misrepresented either Tractor Supply's status as an additional insured under the UniFirst Policy(s) or the nature and/or scope of the coverage provided by the policy(s), or both.

122.    These insurance certificates did not reveal that the insurance policies contained limitations on Tractor Supply's status as an additional insured, or upon the coverage that was provided to Tractor Supply as an additional insured under the insurance policies issued by ACE,

Case 3:21-cv-00619   Document 89   Filed 01/13/22   Page 31 of 56 PageID #: 2215

which made the coverage provided to Tractor Supply as an additional insured both inconsistent with the requirements of the contracts and illusory.

123. ACE negligently omitted the fact of UniFirst's control of the claims handling process when they provided the insurance certificates to Tractor Supply. Tractor Supply reasonably relied upon this representation or omission by UniFirst as evidence that it was protected by adequate insurance coverage in the event that it incurred any liabilities, damages, or other losses with respect to "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the contract.

124. Tractor Supply reasonably relied upon this representation by ACE as evidence that Tractor Supply was protected by adequate insurance coverage in the event it incurred any liabilities, damages, or other losses with respect to "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the Agreement.

125. However, upon being provided with notice on multiple occasions of the claims in the aforementioned complaints, Tractor Supply was informed by the ACE that its additional insured status was limited and subject to UniFirst's sole, arbitrary, and unfettered discretion as to whether Tractor Supply will receive any insurance coverage of any type at all.

126. ACE has generally refused to accept Tractor Supply's demands for defense and indemnity of the aforementioned complaints under the policies for which UniFirst caused Tractor Supply to be named as an additional insured, and others, making the coverage provided to Tractor Supply as an additional insured both inconsistent with the requirements of the contracts and illusory.

127. As a result of ACE's negligent misrepresentation of the illusory nature of the insurance coverage the certificates of insurance purported to represent, Tractor Supply has incurred

damages in the defense of the aforesaid claims, and others. Tractor Supply will continue to incur damages as it continues its defense of the aforesaid claims and others in the future.

128.    Therefore, Tractor Supply is entitled to damages resulting from ACE's negligent misrepresentation and/or negligent concealment, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other costs and damages incurred by or on behalf of Tractor Supply in and about the defense of this matter as a result of the allegations in the aforesaid complaints, others not specified, and all future claims.

## Count Thirteen: Negligent Misrepresentation (as to UniFirst)

129.    Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

130.    As required by paragraph 11 of the contract, UniFirst provided to Tractor Supply a Certificate of Insurance which named Tractor Supply as an additional insured on the applicable policies. That Certificate is in the usual and customary form. It does not reveal anything which would suggest that UniFirst had retained the ability to deny coverage to Tractor Supply through use of an artifice not authorized in law, regulation, or industry standards.

131.    UniFirst negligently omitted this fact when it provided the insurance certificates to Tractor Supply representing that it had satisfied its obligations to obtain insurance coverage under paragraph 11 of the contract. Tractor Supply reasonably relied upon this representation or omission by UniFirst as evidence that it was protected by adequate insurance coverage in the event that it incurred any liabilities, damages, or other losses with respect to "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the contract.

132.    However, upon being provided with notice on multiple occasions of the potential claims in the aforementioned complaints, Tractor Supply was informed by UniFirst and ESIS that

its additional insured status was limited and subject to UniFirst's sole, arbitrary, and unfettered discretion as to whether Tractor Supply will receive any insurance coverage of any type at all.

133.    UniFirst and ESIS have generally refused to accept Tractor Supply's demands for defense and indemnity of the aforementioned complaints under the policies for which UniFirst caused Tractor Supply to be named as an additional insured.

134.    Therefore, as a result, Tractor Supply has incurred damages in the defense of the aforementioned complaints and will continue to incur damages as it continues its defense of the claims in these and future claims.

135.    Therefore, Tractor Supply is entitled to damages resulting from UniFirst's negligent misrepresentation or omission, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforementioned complaints and all future claims.

### Count Fourteen: Negligence (as to ACE)

136.    Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

137.    ACE had a duty to obtain and provide Tractor Supply insurance coverage in the event that it incurred any liabilities, damages, or other losses with respect to "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the Agreement.

138.    ACE negligently failed to obtain the proper and/or adequate insurance coverage.

139.    ACE's negligent acts include, but are not limited to, failure to ensure that the policy met the requirements of the contract between UniFirst and Tractor Supply, failure to ensure that ACE retained control of the claims handling process, and failure to ensure that ACE agents

conformed with law, regulation, and industry standards with regard to the policies for which Tractor Supply was named as an additional insured.

140. ACE's negligence has proximately caused Tractor Supply to incur damages in the defense of the aforesaid claims and will continue to incur damages as it continues its defense of the claims.

141. Therefore, Tractor Supply is entitled to damages resulting from ACE's negligence, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other costs and damages incurred by or on behalf of Tractor Supply in and about the defense of this matter as a result of the allegations in the aforesaid complaints, others not specified, and all future claims.

### Count Fifteen: Negligence (as to UniFirst)

142. Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

143. UniFirst had a duty to obtain and provide Tractor Supply insurance coverage in the event that it incurred any liabilities, damages, or other losses with respect to "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the contract. UniFirst negligently failed to obtain the proper and/or adequate insurance coverage.

144. UniFirst's negligent failure to obtain the proper and/or adequate insurance coverage has proximately caused Tractor Supply to incur damages in the defense of the aforementioned complaints and will continue to incur damages as it continues its defense of these complaints and future claims.

145. Therefore, Tractor Supply is entitled to damages resulting from UniFirst's negligent failure to procure proper and/or adequate insurance coverage, including but not limited

to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforementioned complaints and future claims.

**Count Sixteen: Declaratory Judgment Concerning
ACE's Duty to Defend**

146. Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

147. This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

148. ACE has a duty under the CGL Policy issued to UniFirst to provide a defense to Tractor Supply against the allegations in the aforementioned claims, and others, as no determination of liability has been made, the claims clearly allege that each claimant's injuries were proximately caused in whole or in part by the actions and product of UniFirst, and the contracts specifically require UniFirst and, therefore, its insurers, that is, ACE, to defend Tractor Supply, regardless of the determination of liability or allegations.

149. Accordingly, regardless of the view of ACE of the facts of the case, because they contracted to accept this risk—to provide liability insurance coverage to Tractor Supply as an additional insured for the actions and products of UniFirst—ACE is required by the allegations in the claims and by the terms of the policy(s), to provide a defense to Tractor Supply in this matter. ACE contractually agreed to make Tractor Supply an additional insured on the policy(s).

150. There is an actual, justiciable controversy concerning the duty of ACE, to provide a defense to Tractor Supply in this matter under the terms of the Policy issued to UniFirst.

151. Thus, Tractor Supply seeks a declaration that ACE has a duty to defend Tractor Supply against the allegations made in the aforementioned claims, and other claims, and an award of all attorneys' fees, costs, and expenses incurred in defending these claims.

## Count Seventeen: Declaratory Judgment Concerning ACE's Duty to Indemnify and/or to Provide Coverage to Tractor Supply

152.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

153.     This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

154.     Tractor Supply is an additional insured under various insurance policies issued to UniFirst as evidenced by the certificates of insurance issued by ACE to Tractor Supply.

155.     Tractor Supply seeks a declaration that insurance coverage is available to it under the terms of the policy(s) for any judgment, settlement, attorneys' fees, costs, expenses, or other costs or damages incurred by or on behalf of Tractor Supply in and about the defense of aforementioned claims, and other claims.

156.     There is an actual, justiciable controversy concerning the duty of ACE to indemnify Tractor Supply in this matter for any judgment, settlement, attorneys' fees, costs, expenses, or other costs incurred by or on behalf of Tractor Supply in and about the defense of aforementioned claims, and other claims, in accordance with the terms of the Policy issued to UniFirst.

157.     Thus, Tractor Supply seeks a declaration that ACE has a duty to defend Tractor Supply against the allegations made in the aforementioned claims, and other claims, and an award of all attorneys' fees, costs, and expenses incurred in defending these claims.

## Count Eighteen: Declaratory Judgment Concerning ACE's Duty to Defend

158.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

159.     This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §
2201.

160.     ACE had a duty as the insurer of UniFirst and Tractor Supply (as additional insured)
under the contract to provide a defense to Tractor Supply from the allegations in the
aforementioned claims, as the claims allege that the various plaintiffs' injuries were proximately
caused in whole or in part by the actions of UniFirst, and the contract specifically requires UniFirst
to defend Tractor Supply via the required insurance policies issued by ACE, regardless of the
determination of liability or allegations.

161.     Additionally, as detailed above, through the use of an artifice, UniFirst, with the
knowing and willing participation of ACE, failed to procure insurance coverage for Tractor Supply
in violation of the requirements of the contract. As a result, ACE has blocked all attempts by
Tractor Supply to obtain coverage concerning UniFirst's obligation to defend and/or indemnify
for Tractor Supply from the allegations of the aforementioned claims as an additional insured
under the applicable policy(s) as described by the various certificates of insurance.

162.     In the contract, ACE agreed to defend Tractor Supply from all claims arising from
any accident or injury arising from the subject contract. If this Court determines that ACE is
improperly obstructing Tractor Supply from accessing and utilizing the insurance policy(s) in
which it was named an additional insured, then ACE will be required to provide that insurance
coverage in the normal manner when there is a deductible, and not utilize the artifice of an "insured
controlled deductible" in order to deny Tractor Supply access to and utilization of the insurance
policies in which it was named an additional insured, and the proceeds thereof.

163.     Therefore, Tractor Supply seeks a determination from this Court that ACE has a
duty to defend Tractor Supply from the aforementioned complaints and all future claims under the

contract, and an award of all attorneys' fees, costs, and expenses incurred in defending against the aforementioned complaints to their conclusions.

## Count Nineteen: Declaratory Judgment Concerning
## UniFirst Corporation's Duty to Defend

164.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

165.     This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

166.     UniFirst had a duty under paragraph 11 of the contract to provide a defense to Tractor Supply from the allegations in the aforementioned complaints, as the complaints allege that the various plaintiffs' injuries were proximately caused in whole or in part by the actions of UniFirst, and paragraph 11 of the contract specifically requires UniFirst to defend Tractor Supply via the required insurance policies, regardless of the determination of liability or allegations.

167.     Additionally, as detailed above, through the use of an artifice, UniFirst, with the knowing and willing participation of ESIS, failed to procure insurance coverage for Tractor Supply in violation of the requirements of paragraph 11 of the contract. As a result, UniFirst and ESIS have blocked all attempts by Tractor Supply to obtain performance by ACE concerning UniFirst's obligation to defend and/or indemnify for Tractor Supply from the allegations of the aforementioned complaints as an additional insured under the applicable policy(s) obtained by UniFirst.

168.     In the contract, UniFirst agreed to defend Tractor Supply from all claims arising from any accident or injury arising from the subject contract. If this Court determines that UniFirst and ESIS are improperly obstructing Tractor Supply from accessing and utilizing the insurance policies in which it was named an additional insured, then UniFirst and ESIS will be required to

provide that insurance coverage in the normal manner when there is a deductible, and not utilize the artifice of an "insured controlled deductible" in order to deny Tractor Supply access to and utilization of the insurance policies in which it was named an additional insured, and the proceeds thereof.

169.     Therefore, Tractor Supply seeks a determination from this Court that UniFirst has a duty to defend Tractor Supply from the aforementioned complaint and all future claims under the contract, and an award of all attorneys' fees, costs, and expenses incurred in defending against the aforementioned complaints to their conclusions.

**Count Twenty: Declaratory Judgment Concerning UniFirst Corporation's Duty to Defend**

170.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

171.     This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

172.     Paragraph 10 of the contract required UniFirst to provide its services "with generally accepted standards of the textile rental services industry." The aforementioned complaints allege violation of these standards, and that this violation proximately caused the accident and the various plaintiffs' injuries in whole or in part.

173.     Accordingly, for this second independent reason, UniFirst failed to comply with the requirements of the contract and is obligated to defend Tractor Supply from all claims arising from any accident or injury arising from the subject contract.

174.     Therefore, Tractor Supply seeks a determination from this Court that UniFirst has a duty to defend Tractor Supply from the aforementioned complaint and all future claims under

the contract, and an award of all attorneys' fees, costs, and expenses incurred in defending against the aforementioned complaints to their conclusions.

## Count Twenty-One: Declaratory Judgment Concerning UniFirst Corporation's Duty to Indemnify Tractor Supply

175.    Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

176.    This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

177.    UniFirst has an obligation under the contract to indemnify Tractor Supply from all claims arising from any accident or injury arising from the subject contract. The aforementioned complaints allege that his damages were incurred from slipping on a rug provided by UniFirst to Tractor Supply under the contract, and that the damages were proximately caused in whole or in part by the acts or omissions of UniFirst.

178.    Therefore, Tractor Supply seeks a determination from this Court that UniFirst has a duty to defend Tractor Supply from the aforementioned complaint and all future claims under the contract, and an award of all attorneys' fees, costs, and expenses incurred in defending against the aforementioned complaints to their conclusions.

## Count Twenty-Two: Declaratory Judgment Concerning UniFirst Corporation's Duty to Indemnify Tractor Supply Company

179.    Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

180.    This Count is made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

181.     UniFirst failed to procure proper and/or adequate insurance coverage in violation of paragraph 11 of the contract. As a result, UniFirst and ESIS have consistently denied their obligation to defend and/or indemnify Tractor Supply from all claims arising from any accident or injury arising from the subject contract.

182.     Therefore, Tractor Supply seeks a determination from this Court that UniFirst has a duty to defend Tractor Supply from the aforementioned complaint and all future claims under the contract, and an award of all attorneys' fees, costs, and expenses incurred in defending against the aforementioned complaints to their conclusions.

### Count Twenty-Three: Promissory Estoppel (As to UniFirst)

183.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

184.     UniFirst promised to obtain and provide Tractor Supply insurance coverage with respect to UniFirst's products under the contract, along with "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the contract. In reliance on this promise, Tractor Supply contracted work to UniFirst, a decision which would not have been made had Tractor Supply known that UniFirst had failed to provide the promised coverage.

185.     As a result, Tractor Supply has incurred damages in the defense of the aforementioned complaints, which would have been covered by the insurance coverage UniFirst promised to obtain. Tractor Supply continues to incur damages as it continues its defense of the claims in these complaints and in future claims.

186.     Therefore, UniFirst is estopped from denying it had an obligation to obtain insurance coverage, and to name Tractor Supply as an additional insured, covering "such acts and omissions which relate to [Tractor Supply]'s negligence and/or obligations" under the contract.

187.     Further, Tractor Supply is entitled to damages resulting from UniFirst's failure to obtain the proper and/or adequate insurance coverage, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforementioned complaints and in future claims.

### Count Twenty-Four: Civil Conspiracy (As to All Defendants)

188.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

189.     On information and belief, Defendants and other unknown third parties, through their authorized employees, agents, officers, and other persons, acting within the scope of their employment, entered into an agreement, express or implied, to wrongfully deny Tractor Supply its rightful indemnity and defense to under the contract.

190.     Such agreement constitutes civil conspiracy.

191.     This conspiracy is demonstrated by the following nonexclusive overt acts in support of the conspiracy and its goals:

    A.     Direction from ACE and UniFirst to direct all claims to ESIS, who then refuses the claim without legal cause;

    B.     Denial by ESIS of attempts to bring coverage determinations to the attention of the Defendant;

    C.     Deliberate acts of interference between the insured/insurer relationship of Tractor Supply and ACE;

    D.     Denial by the Defendants of numerous meritorious claims under the indemnity and additional insured clauses of the contracts;

E. Defendants' use of an artifice, namely, the "insurer controlled deductible ," which has no support in law, regulation, or industry standard, to deny Tractor Supply access to the policy under which it is an additional insured;

F. Defendants' referral of all attempts at communication from Tractor Supply, including all tenders of claims and attempts to seek coverage, to ESIS;

G. ACE's refusal to take on its legally obligated duties of making its own coverage determination, independent of the views of UniFirst and ESIS; and

H. ACE's refusal to communicate with Tractor Supply as to the legal reasons for its denial of coverage.

192. This civil conspiracy has proximately caused Tractor Supply to incur damages in the defense of the aforesaid complaints and will continue to incur damages as it continues its defense of the claims in the aforesaid complaints and future claims.

193. Therefore, Tractor Supply is entitled to damages resulting from Defendants' civil conspiracy, including but not limited to all judgments, settlements, attorneys' fees, costs, expenses, or other damages it incurs as a result of the allegations in the aforesaid complaints and future claims.

**Count Twenty-Five: Punitive Damages (As to All Defendants)**

194. Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

195. In sum, Defendants' conduct in this case has been outrageous and constitutes actual malice toward Tractor Supply.

196. Defendants' conduct also shows a conscious, reckless and outrageous indifference to the health, safety, welfare, and rights of others, including its insured, Tractor Supply.

197.     Further, Defendants' conduct demonstrates a clear intent to defraud.

198.     Accordingly, Defendants are liable to Tractor Supply for punitive damages.

**Count Twenty-Six: Statutory Bad Faith (As to ACE)**

199.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

200.     UniFirst maintained a Commercial General Liability policy(s) through ACE and administered by ESIS as agent for, and for the benefit of, ACE. Tractor Supply was properly listed as an additional insured on such policy(s).

201.     Because Tractor Supply was named as an additional insured on said policy, it qualifies as a holder of the policy or insured under the policy.

202.     In each of the losses identified in paragraphs 22 through 38 herein, Tractor Supply made demand of ACE to accept and pay the loss. Regardless of whether the said policy operated with a self-insured retention, deductible, or what ACE has described as an insured controlled deductible, ACE has refused to pay the losses presented to it and such refusal was made not in good faith, and has inflicted upon Tractor Supply additional expenses, loss, and injury, including attorney fees.

203.     Pursuant to Section 624.155, Florida Statutes, an insurer commits statutory bad faith when it does not attempt in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for the insured's interests.

204.     In each of the losses identified in paragraphs 22 through 38 herein, Tractor Supply is the insured of ACE, inasmuch as Tractor Supply has been properly named as an additional

insured on the applicable insurance policies and an appropriate Certificate of Insurance was issued to Tractor Supply by ACE or its agent.

205. In each of the losses identified in paragraphs 22 through 38 herein, ACE was presented numerous opportunities to settle each claim, when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward Tractor Supply and with due regard for Tractor Supply's interests. These opportunities included, but are not limited to:

 A. Claim number 004169-038486 (Hendry County, Florida). ACE has been presented an opportunity to participate in a mediation on behalf of Tractor Supply but has refused to do so. In that case, given the facts and circumstances of a customer who was at near-full term pregnancy, whose fall has been alleged to have injured the unborn child in some manner, and the customer herself who alleges that the fall caused here serious injuries, ACE could and should have defended Tractor Supply and settled this claim for an amount[3] which it is in Tractor Supply's interest to accept, but which ACE will not even consider, let alone attempt to settle in good faith;

 B. Claim number 4169-038849. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

 C. Claim number 4169-038878. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own

---

[3] The amount is in excess of this Court's jurisdictional minimum of $75,000.00

funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

D.      Claim number 4169-040948. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

E.      Claim number 4169-044892. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

F.      Claim number 4169-045185. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

G.      Claim number 4169-045378. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

H.      Claim number 4169-046009. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

I.      Claim number 4169-046486. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

J.      Claim number 4169-04666218. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

K.      Claim number 4169-047292. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

L.      Claim number 4169-048088. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

M.      Claim number 4169-048456. ACE denied the claim and refused to participate in any settlement discussions, leaving Tractor Supply to pay a settlement from its own funds in a situation where the subsequent settlement demonstrated the claim could have been settled by ACE in good faith.

N.      Additionally, concerning claim numbers 4169-041071, 4169-043584, 4169-044730, 4169-047819, 4169-048978, 4169-049129, 4169-049429, 4169-049596, 4169-049781, 4169-049821, 4169-050071, 4169-050083, 4169-050266, 4169-

050260, 4169-050510, 4169-050704, 4169-050927, 4169-051018, 4169-051375, 4169-051500, 4169-051724, 4169-051563, 4169-051567, 4169-051583, 4169-051614, 4169-051623, 4169 051639, 4169-051786, 4169-051827, 4169-051944, 4169-052018, 4169-052323, 4169-052385, and 4169-052461, in each and every instance, ACE was presented the opportunity to settle meritorious claims. ACE refused to even discuss the possibility, leaving Tractor Supply, its insured, to fend for itself.

206. Tractor Supply has performed all conditions precedent for bringing this claim. Specifically, on January 11, 2021, pursuant to Section 624.155(3), Florida Statutes, the Civil Remedy Notice of Insurer Violations was filed with the Florida Department of Financial Services, detailing the required information. A copy of the notice, with ACE's response, is attached as **Exhibit A**. At the time this Amended Complaint was filed, ACE had refused the demand of Tractor Supply, thereby allowing this count to proceed under Section 624.155(3)(c), Florida Statutes.

207. Additionally, the damages sustained by Tractor Supply, at least to the extent of the forty (40) enumerated claims, and others, has been determined, via the settlements and other readily discernable expenses and losses.

208. The above misconduct committed by ACE constitutes bad faith within the meaning of Section 624.155, Florida Statutes. Thus, Tractor Supply is entitled to all relief provided by said statute, including court costs and attorneys' fees, pursuant to Section 624.155(4), Florida Statutes.

## Count Twenty-Seven: Statutory Bad Faith (As to ACE)

209. Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

210.    UniFirst maintained a Commercial General Liability policy(s) through ACE and administered by ESIS as agent for, and for the benefit of, ACE. Tractor Supply was properly listed as an additional insured on such policy(s).

211.    Because Tractor Supply was named as an additional insured on said policy, it qualifies as a holder of the policy or insured under the policy.

212.    In each of the losses identified in paragraphs 22 through 38 herein, Tractor Supply made demand of ACE to accept and pay the loss. Regardless of whether the said policy operated with a self-insured retention, deductible, or what ACE has described as an insured controlled deductible, ACE has refused to pay the losses presented to it and such refusal was made not in good faith, and has inflicted upon Tractor Supply additional expenses, loss, and injury, including attorney fees.

213.    Pursuant to Section 624.155, Florida Statutes, an insurer commits statutory bad faith when it violates Section 626.9541(1)(i), Florida Statutes, by committing with such frequency as to indicate a general business practice, the following:

A.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

B.    Failing to acknowledge and act promptly upon communications with respect to claims;

C.    Denying claims without conducting reasonable investigations based upon available information;

D.    Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement; or

E.      Failing to promptly notify the insured of any additional information necessary for the processing of a claim.

214.    In each of the losses identified in paragraphs 22 through 38 herein, constituting at least forty (40) separate instances, ACE has violated Section 626.9541(1)(i)3b, Florida Statutes, by misrepresenting the pertinent insurance policy provisions relating to the coverages at issue, through the artifice of the "insured controlled deductible ," a concept that does not exist in insurance law, in order to wrongfully deny coverage to Tractor Supply.

215.    In each of the losses identified in paragraphs 22 through 38 herein, constituting at least forty (40) separate instances, ACE has violated Section 626.9541(1)(i)3c, Florida Statutes, by failing to acknowledge and act promptly on communications with respect to claims by deflecting all attempts at communication, directing the communications to UniFirst or ESIS and refusing to take any further action on the claims.

216.    In each of the losses identified in paragraphs 22 through 38 herein, constituting at least forty (40) separate instances, ACE has violated Section 626.9541(1)(i)3d, Florida Statutes, by denying claims without conducting reasonable investigations based upon available information. Specifically, for each and every claim, ACE has refused to make any investigation, instead referring the claim to UniFirst or ESIS and denying any further action.

217.    In each of the losses identified in paragraphs 22 through 38 herein, constituting at least forty (40) separate instances, ACE has violated Section 626.9541(1)(i)3f, Florida Statutes, by failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. For each claim, ACE has refused to provide anything beyond a bare-bones form email which refers the claim to UniFirst or ESIS without any explanation other than

reliance on the artifice of the "insured controlled deductible ," which is neither recognized in insurance law or rationally based in any way on the insurance policy.

218. In each of the losses identified in paragraphs 22 through 38 herein, constituting at least forty (40) separate instances, ACE has violated Section 626.9541(1)(i)3g, Florida Statutes, by failing to promptly notify the insured of any additional information necessary for the processing of a claim. Uniformly, ACE has never asked for any information which might inform its decision on coverage from Tractor Supply, deferring completely to UniFirst's wishes and representations.

219. ACE's violations of Section 626.9541(1)(i), Florida Statutes, are continuing and ongoing, including further claims which have accrued since the filing of the original Complaint.

220. The frequency of these violations, covering at least forty (40) separate claims, demonstrates that the acts of ACE constitute a general business practice.

221. Because ACE has committed multiple violations of Section 626.9541(1)(i), Florida Statutes, its conduct constitutes bad faith under Section 624.155(1)(a)1, Florida Statutes.

222. Tractor Supply has performed all conditions precedent for bringing this claim. Specifically, on January 11, 2021, pursuant to Section 624.155(3), Florida Statutes, the Civil Remedy Notice of Insurer Violations was filed with the Florida Department of Financial Services, detailing the required information. A copy of the notice, with ACE's response, is attached as **Exhibit A**. At the time this Second Amended Complaint was filed, ACE had refused the demand of Tractor Supply, thereby allowing this count to proceed under Section 624.155(3)(c), Florida Statutes.

223. Additionally, the damages sustained by Tractor Supply, at least to the extent of the forty (40) enumerated claims, and others, has been determined, via the settlements and other readily discernable expenses and losses.

224.     The above misconduct committed by ACE constitutes bad faith within the meaning of Section 624.155, Florida Statutes. Thus, Tractor Supply is entitled to all relief provided by said statute, including court costs and attorneys' fees, pursuant to Section 624.155(4), Florida Statutes.

### Count Twenty-Eight: Punitive Damages for Bad Faith (As to ACE)

225.     Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

226.     Pursuant to Section 624.155(5), Florida Statutes, an insurer is subject to a punitive damages award when the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are willful, wanton, and malicious, or in reckless disregard for the rights of any insured.

227.     ACE has established a continuing pattern and practice of continuing to wrongfully reject Tractor Supply's demands for defense and indemnity asserted under the insurance policy to which Tractor Supply is named as an additional insured.

228.     In each and every one of the at least forty (40) claims brought to ACE by Tractor Supply, ACE has committed numerous violations of Section 624.155, Florida Statutes, as well as at least the same number of violations of Section 626.9541(1)(i), Florida Statutes.

229.     This continuing pattern and practice of continuous and deliberate violations of the bad faith statutes of the State of Florida demonstrates that the acts of ACE constitute a general business practice.

230.     ACE's conduct in this case has been outrageous and were willfully, wantonly, and maliciously performed against Tractor Supply.

231.     ACE's conduct also was committed in reckless disregard for the rights of its insured, Tractor Supply.

232.   Accordingly, ACE is liable to Tractor Supply for punitive damages.

## Count Twenty-Nine: Statutory Bad Faith (As to ESIS)

233.   Tractor Supply incorporates and realleges the foregoing paragraphs of this Second Amended Complaint.

234.   UniFirst maintained a Commercial General Liability policy through ACE and administered by ESIS as agent for, and for the benefit of, ACE. Because Tractor Supply was named as an additional insured on said policy, it qualifies as a holder of the policy.

235.   In each of the losses identified in paragraphs 20 through 26 herein, Tractor Supply made demand of ESIS, as agent for ACE, to accept and pay the loss. Regardless of whether the said policy operated with a self-insured retention, deductible, or what ESIS has described as an insured controlled deductible, ESIS has refused to pay the losses presented to it and such refusal was made not in good faith, and has inflicted upon Tractor Supply additional expenses, loss, and injury, including attorney fees.

236.   The bad faith actions committed by ESIS constitute bad faith within the meaning of T.C.A. § 56-7-105 and thus, Tractor Supply is entitled to all relief provided by said statute, including a 25% penalty on the liability for the losses incurred by Tractor Supply.

## JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.

WHEREFORE, Tractor Supply Company demands judgment against the Defendants, both jointly and severally, for compensatory damages, including pre- and post-judgment interest, punitive damages, declaratory judgment in the manner described above, the attorneys' fees, costs, and expenses of this action, and for such other relief as this Court deems just and proper.

Respectfully Submitted,

/s/ Kevin T. Elkins
Mark M. Bell (Tenn. BPR No. 029048)
Kevin T. Elkins (Tenn. BPR No. 033280)
WALLER LANSDEN DORTCH & DAVIS LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Email: mark.bell@wallerlaw.com
       kevin.elkins@wallerlaw.com

*Attorneys for Plaintiff Tractor Supply Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the United States District Court for the Middle District of Tennessee using the Court's Electronic Case Filing (ECF) system, which will serve all parties indicated on the electronic filing notice to receive service in this matter:

J. Graham Matherne
Andrew J. Pulliam
Wyatt Tarrant & Combs LLP
333 Commerce Street, Ste. 1050
Nashville, TN 37201

*Attorneys for Defendant UniFirst Corporation*

Alfred C. Warrington, V
Clyde & Co. US LLP
1221 Brickell Avenue, Suite 1600
Miami, FL 33131

William Bryan Jakes III
Howell & Fisher, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203

*Attorneys for Defendant ACE American Insurance Company*

E. Todd Presnell
Bradley Arant Boult Cummings LLP
1600 Division Street, Ste. 700
Nashville, Tennessee 37203

Alissa Christopher
Cozen O'Connor
1717 Main Street, Ste. 3100
Dallas, TX 75201

*Attorneys for Defendant ESIS, Inc.*

on this the 7th day of January, 2022

/s/ Kevin T. Elkins

4883-5994-1640.2

55

4883-5994-1640.2