EXHIBIT

T

```
 1              VIDEOTAPED DEPOSITION OF BERND G. HEINZE
 2                      February 8, 2023
 3                  UNITED STATES DISTRICT COURT
 4                  MIDDLE DISTRICT OF TENNESSEE
 5                      NASHVILLE DIVISION
 6
        ----------------------------
 7      TRACTOR SUPPLY COMPANY,      )
                                     )
 8              Plaintiff,           )
                                     )
 9      vs.                          )  NO. 3:21-cv-00619
                                     )
10      ACE AMERICAN INSURANCE       )
        COMPANY UNIFIRST CORPORATION)
11      AND ESIS, INC.,              )
                                     )
12              Defendants.          )
        ----------------------------
13      APPEARANCES:
14                      FOR THE PLAINTIFF:
15                      MARK M. BELL, ESQ.
                        ANDREW A. WARTH, ESQ.
16                      Attorney at Law
                        Waller Lansden Dortch & Davis, LLP
17                      511 Union Street
                        Suite 2700
18                      Nashville, Tennessee  37219
                        (615)244-6380
19                      mark.bell@wallerlaw.com
20
                        FOR THE DEFENDANTS:
21
                        ANDREW J. PULLIAM, ESQ.
22                      J. GRAHAM MATHERNE, ESQ.
                        Attorney at Law
23                      Wyatt Tarrant & Combs LLP
                        333 Commerce Street
24                      Suite 1050
                        Nashville, Tennessee  37201
25                      (615)251-6675
                        apulliam@wyattfirm.com
```

Page 1

```
 1      APPEARANCES, cont'd:
 2                      ALFRED C. WARRINGTON V, ESQ.
                        Attorney at Law
 3                      Clyde & Co. US LLP
                        1221 Brickell Avenue
 4                      Suite 1600
                        Miami, Florida  33131
 5                      (305)329-1799
                        alfred.warrington@clydeco.us
 6
                        STEVEN W. ELLIOT, ESQ.
 7                      Attorney at Law
                        Howell & Fisher, PLLC
 8                      3310 West End Avenue
                        Suite 550
 9                      Nashville, Tennessee  37203
                        (615)921-5224
10                      selliott@howell-fisher.com
11                      JEREMY R. GOOLSBY, ESQ.
                        Attorney at Law
12                      Frost Brown Todd LLP
                        250 3rd Ave. S.
13                      Suite 1900
                        Nashville, Tennessee  37201
14                      (615)251-5583
                        jgoolsby@fbtlaw.com
15
                        ALISSA K. CHRISTOPHER, ESQ.
16                      JAMES B. HARPER, ESQ.
                        Attorney at Law
17                      Cozen O'Connor
                        1717 Main Street
18                      Suite 3100
                        Dallas, Texas  75201
19                      (214)462-3036
                        akchristopher@cozen.com
20
21                      Also Present:  David Drumel, Videographer
22
23
24
25

                                                    Page  2
```

Alpha Reporting                                800-556-8974
A Veritext Company                             www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 2 of 179 PageID #:
10318

```
 1                    I N D E X

 2     Examinations                              Page

 3

 4         BERND G. HEINZE

 5     Examination By Mr. Bell                       5

 6     Examination by Mr. Pulliam                  126

 7     Reexamination by Mr. Bell                   133

 8

 9

10

11

12                  E X H I B I T S

13     No.                 Description           Page

14

15     Exhibit 425 - Heinze Expert Report          22

16     Exhibit 426 - November 17, 2020 E-Mail      66

17

18

19

20

21

22

23

24

25

                                          Page  3
```

Examinations — Page

BERND G. HEINZE
Examination By Mr. Bell — 5
Examination by Mr. Pulliam — 126
Reexamination by Mr. Bell — 133

EXHIBITS
No. — Description — Page
Exhibit 425 - Heinze Expert Report — 22
Exhibit 426 - November 17, 2020 E-Mail — 66

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 3 of 179 PageID #: 10319

```
1            (On record at approximately 9:08 a.m. CT.)

2

3            THE VIDEOGRAPHER:  Good morning.  We are

4       going on the record at 9:08 a.m. on February 8th,

5       2023.  Please note that this deposition is being

6       conducted virtually.  Quality of recording depends

7       on the quality of the camera and the internet

8       connection.  What is seen from the witness and

9       heard on the screen is what will be recorded.

10      Audio and video recording will continue to take

11      place unless all parties agree to go off the

12      record.

13           This is Media Unit 1 in the

14      video-recorded deposition of Bernie Heinze taken

15      by counsel for the Plaintiff in the matter of

16      Tractor Supply Company versus ACE American

17      Insurance Company, et al., filed in the United

18      States District Court for the Middle District of

19      Tennessee, Nashville Division, case number

20      321-CV-00619.

21           This deposition is being held via Zoom.

22      My name is David Drumel, I am the videographer

23      with Veritext.  The court reporter is Kelly

24      Forfar.

25           Counsel, please state your appearances
```

Alpha Reporting                      800-556-8974
A Veritext Company                   www.veritext.com

```
 1              for the record which will then be followed by the
 2              swearing of the witness by the court reporter.
 3                      MR. BELL:  Good morning, I am Mark Bell
 4              on behalf of Tractor Supply, I am also joined by
 5              Drew Warth.
 6                      MR. WARRINGTON:  Al Warrington for ACE
 7              American and I am joined by Ms. Panelo.
 8                      MS. CHRISTOPHER:  Alissa Christopher for
 9              ESIS, Inc. and James Harper also for ESIS, Inc.
10                      MR. PULLIAM:  Andy Pulliam and Graham
11              Matherne for UniFirst Corporation.
12                      THE COURT REPORTER:  I am sorry, Andrew
13              and who?
14                      MR. PULLIAM:  Graham Matherne.
15                      THE COURT REPORTER:  Thank you.
16
17                      BERND G. HEINZE,
18      having first been duly sworn, was examined and
19      testified on his oath as follows:
20
21                      THE WITNESS:  Good morning, Mark.
22                          EXAMINATION
23      BY MR. BELL:
24          Q.     Hey, good morning, Mr. Heinze, and how
25      are you doing this morning?
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 5 of 179 PageID #:
10321

```
 1            A.      I am well.  And you?

 2            Q.      Doing well, thank you.

 3            A.      Good.

 4                    MR. BELL:  Before we begin, I just want

 5            to put a couple items on the record, two

 6            stipulations that we have, which is the first, an

 7            objection as to one party is good for all parties;

 8            and second, all objections other than to form are

 9            reserved.

10                    Also, Alissa and Mr. Heinze, I understand

11            that you want to read and sign.  Just want to make

12            sure --

13                    THE WITNESS:  Yes, please.

14                    MR. BELL:  -- that is okay with everyone.

15                    MS. CHRISTOPHER:  Yes.

16                    MR. PULLIAM:  Yes.

17                    MR. WARRINGTON:  Mark, I would just also

18            add that we have that standing objection with

19            respect to claims handling issues given the

20            Court's Order in dismissing the bad faith claims.

21                    MR. BELL:  Understood.

22                    THE COURT REPORTER:  All right.  I am

23            sorry, claims handling in this case, what was the

24            end of that?

25                    MR. WARRINGTON:  Yeah, sorry.  We have a
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          standing objection with respect to whether inquiry
 2          into claims handling as to ACE is appropriate
 3          because the bad faith claims have been dismissed.
 4                    THE COURT REPORTER:  Thank you.
 5                    MR. BELL:  And noted on -- on that
 6          objection, and obviously we note our disagreement
 7          with the objection, but understood.
 8   BY MR. BELL:
 9          Q.     Mr. Heinze, this is not your first rodeo,
10   I understand?
11          A.     That's correct.
12          Q.     Okay.  Do you have any questions about
13   the ground rules of a deposition?
14          A.     No, sir.
15          Q.     Okay.  How many depositions -- between
16   taking and being a deponent, how many depositions do
17   you think you have done?
18          A.     As a deponent probably I think it is now
19   up to around 110, maybe 115.  In terms of taking,
20   probably over 5, 600.
21          Q.     Okay.  I am not -- I am not going to tell
22   you anything new other than just to ask is there
23   anything that would affect your ability to testify
24   truthfully and honestly today?
25          A.     No, sir.
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

1        Q.    Okay.  Now you have been qualified as an
2   expert in other cases; is that right?
3        A.    Yes, sir.
4        Q.    And what -- what topics have you been
5   qualified on?
6        A.    It ranges with regard to the issues of
7   claims handling practices, the duty of good faith and
8   fair dealing, generally accepted customs and practices
9   of the insurance industry and the standard of care,
10   matters involving directors and officers, general
11   liability, products liability, policies; it really runs
12   the gamut, Mr. Bell, with regard to, if you take a look
13   at Exhibit B to my Report, a variety of different
14   matters and cases across the country, but most all of
15   them relate to insurance and insurance coverage
16   matters.
17        Q.    Okay.  Have you ever been limited by a
18   court as an expert witness?
19        A.    Yes.
20        Q.    And in what respects have you been
21   limited?
22        A.    Where I have been instructed by counsel
23   to render an opinion on either a legal issue,
24   interpretation of a statute, interpretation of a policy
25   provision, or where I have rendered an opinion that

Alpha Reporting        800-556-8974
A Veritext Company        www.veritext.com

1    counsel's behaviors were not in keeping with the
2    American Bar Association's Code of Professional
3    Responsibility.
4         Q.      And then have you ever been excluded as
5    an expert witness?
6         A.      No, sir.
7         Q.      And then you mentioned the -- I think one
8    of the items you mentioned was the interpretation of a
9    policy provision; is that right?
10        A.      Yes, sir.
11        Q.      Okay.  And -- and why -- why have you
12   been limited on the interpretation of a policy
13   provision?
14        A.      That really is something that remains
15   within the purview of the court and is not something
16   that would be permissible for expert witness opinion
17   unless a court leave was sought and permission granted
18   by the trial court.  It was done at the request of
19   counsel, I understand the instructions, but since
20   counsel for the adverse party had also commented on
21   those things, I was asked to do so as well and the
22   court excluded both of those opinions.
23        Q.      Gotcha.
24                In -- in your report here in this case,
25   did you interpret any policy provisions?

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1        A.      No.  But I have reserved my right, as I
 2   note in the Report, Mr. Bell, to do so if Mr. Fey is
 3   permitted to testify on those matters as well.
 4        Q.      And I understand you reserved your right
 5   to do so.  Did -- did your opinion itself express any
 6   opinions on the interpretation of the policy
 7   provisions?
 8        A.      No, only to the extent where I referenced
 9   various contractual provisions of the Risk Management
10   Services Agreement or the Textile Services Agreement
11   relating to flat goods or the general liability service
12   instructions as they inform the generally accepted
13   customs and practices of the duties and
14   responsibilities of ESIS in its role as UniFirst's
15   third-party administrator.
16        Q.      But as far as the formal interpretation,
17   the policy should have provided coverage, the policy
18   shouldn't have provided coverage, you didn't express
19   any opinions on those issues directly?
20        A.      It is beyond the scope of my retention,
21   Mr. Bell.  It wasn't anything that ESIS did in its
22   activities with regard to acting as a third-party
23   administrator for UniFirst and, therefore, was really
24   nothing on which comment or opinion was sought from the
25   folks at ESIS.
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
 1            Q.     Got it.  Let me ask you this, Mr. Heinze.
 2     What -- and I think you referenced that in potentially
 3     Tennessee or potentially Florida, and -- and what law
 4     applies to this dispute?
 5            A.     That's something that the Court will need
 6     to determine, Mr. Bell.
 7                   MR. PULLIAM:  Object to the form.
 8                   THE COURT REPORTER:  I am sorry, I didn't
 9            catch who said that.
10                   MR. PULLIAM:  Andy Pulliam, I was
11            objecting to the form but I didn't beat Mr.
12            Heinze's response.
13                   MR. BELL:  Sorry, Andy, did you say you
14            didn't hear Mr. Heinze's response?
15                   MR. PULLIAM:  I said I didn't beat his
16            response to put my objection in before he said it.
17                   MR. BELL:  Oh, gotcha, okay.
18     BY MR. BELL:
19            Q.     Understood on that as far as the
20     applicable law.
21                   Did you -- in coming to your conclusions,
22     did you apply any applicable law?
23            A.     In my Report, Mr. Bell, I laid out what I
24     understand as a claims professional and in my role as
25     an expert witness here what the common law and statutes
```

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

```
 1    are of the states of Tennessee and Florida as they
 2    pertain to the allegations contained within Tractor
 3    Supply's Third Amended Complaint against ESIS.  But
 4    that was only done for the standpoint of informing
 5    generally accepted insurance customs and practices and
 6    the role in which ESIS played in regard to undertaking
 7    its administrative activities on behalf of UniFirst
 8    pursuant to the Risk Management Services Agreement and
 9    only to the effect that I would reserve the right to
10    comment upon the issues that are -- the allegations
11    that are made against ESIS as those common law cases
12    and/or statutory issues might pertain.
13           Q.     Okay.  And so you -- you mentioned
14    Tennessee and Florida; is that right?
15           A.     Yes, sir.
16           Q.     You didn't mention Massachusetts, did
17    you?
18           A.     No, sir.
19           Q.     Did you look at anything related to
20    Massachusetts?
21           A.     No, sir.
22           Q.     Did you look at anything related to the
23    common law of Massachusetts?
24           A.     Not with regard to this case, no.  I have
25    testified in Massachusetts before on matters that are
```

Page 12

1      similar to those that are at issue here.
2          Q.      Do you know offhand what the -- what the
3      applicable standards would be in Massachusetts?
4          A.      With regard to what?
5          Q.      With regard to any of the matters that
6      you opined on?
7          A.      Well, that is a very large area, a rather
8      large swath of things that I have opined upon.  If it
9      relates to the duties and responsibilities of a
10     third-party administrator as ESIS was undertaking in
11     its contractual role here with UniFirst, I believe that
12     based upon my experience and also acting as a
13     third-party administrator now of matters that are
14     coming out of the Commonwealth of Massachusetts, that
15     they will be the same as I have opined in my Report.
16         Q.      Okay.  But you didn't specifically
17     reference anything related to Massachusetts in your
18     Report, correct?
19         A.      Correct.  I have reserved my right to
20     supplement my Report as additional matters come to my
21     attention or as I am asked to do so by counsel.
22         Q.      And did you say that you act as a TPA in
23     Massachusetts?
24         A.      I act as a TPA here in Pennsylvania but
25     our territory runs from the state of Maine down to

Alpha Reporting                          800-556-8974
A Veritext Company                      www.veritext.com

1    Virginia and west to Ohio.

2         Q.      Tell me about that TPA role that you

3    currently have.

4         A.      Sure.  We serve as a third-party

5    administrator for an insurance carrier or also for

6    various syndicates at Lloyd's on a one-off basis or on

7    a line of business portfolio perspective.

8         Q.      Okay.  And you said it is a Lloyd's

9    syndicate?

10        A.      A variety of Lloyd's syndicates will

11   contact us from time to time to undertake third-party

12   administrative activities and serve as a claims

13   administrator on their behalf since they do not have

14   claims operations in the United States.  But the other

15   matter that we have had since 2002 relates to a

16   domestic insurer in Georgia, and that's the territory

17   that I was describing earlier, Mark, that we handle

18   from Maine down to Virginia, west to Ohio.

19        Q.      Gotcha, okay.

20              So you have got the various Lloyd's

21   syndicates, the 2000 -- or the domestic insurer

22   in Georgia; any other parties for whom you perform TPA

23   services?

24        A.      No, that's it.

25        Q.      Okay.  And for the Lloyd's syndicate, is

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1      it the same region that you are involved with as -- as
 2      it is for the domestic insurer in Georgia?
 3              A.      No, that's nationwide.
 4              Q.      Gotcha.
 5                      And the TPA claims for the Lloyd's
 6      syndicate, are they -- what type of lines, is it
 7      specialty lines?
 8              A.      It is mostly specialty lines but on the
 9      property side.
10              Q.      Okay, got it.
11                      And what about on -- for the domestic
12      insurer?
13              A.      Also property, first party property.
14              Q.      First party property, okay.
15              A.      There are a few liability ones in there
16      as well but in the main it is all first party property.
17              Q.      Gotcha.
18                      And -- and your role as TPA, are you all
19      doing scene investigations, preparing estimates or what
20      is your -- what is the scope of your role as a TPA for
21      those two carriers?
22              A.      We serve as the TPA for the carriers and
23      then we retain independent adjustors or general
24      adjustors on the ground to undertake the scene
25      investigations and provide that information to us that
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1    we then review and evaluate, establish reserves and
 2    provide our reports to the carrier under whose contract
 3    we are operating.
 4         Q.    Gotcha, okay.
 5               And who is the domestic insurer in
 6    Georgia?
 7         A.    AXIS Insurance Company.
 8         Q.    A X I S?
 9         A.    Yes.
10         Q.    And AXIS, are they -- they are a division
11    of someone; who -- is it -- I thought at least.  Are
12    they part -- part of AXA or is it separate?
13         A.    No, AXA is a different insurance company
14    that is domiciled in Paris, France and has operations
15    throughout Europe and some here within the United
16    States domestically, but primarily they are run out of
17    Paris and the AXA Versicherung Aktiengesellschaft in
18    Cologne, Germany.
19               THE COURT REPORTER:  I am sorry, you are
20         going to have to slow way -- go back and say that
21         company.
22               THE WITNESS:  I will give -- I will give
23         you the spelling at a break, Kelly.
24               THE COURT REPORTER:  Can you just say it
25         slower so I can write it phonetically at least?
```

Page 16

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 16 of 179 PageID #:
10332

```
 1                    THE WITNESS:  Sure.  AXA Versicherung,
 2          V E R S I C H E R U N G, Aktiengesellschaft,
 3          A K T I E N G E L L S C H A F T [sic].
 4                    THE COURT REPORTER:  Thank you.
 5                    THE WITNESS:  You're welcome.
 6      BY MR. BELL:
 7          Q.     And the TPA work that you are doing on
 8      behalf of those insurers, is that within the Heinze
 9      Group, LLC?
10          A.     Yes, yes.
11          Q.     Okay.  And how many people work for the
12      Heinze Group, LLC?
13          A.     Nine.
14          Q.     And you are president and CEO?
15          A.     Yes.  And we will use -- when we do our
16      audits we will use 1099 people on the side, Mark.  We
17      will get people that are specialists or experts in
18      particular lines of business when we do our audits of
19      the various insurance companies or TPAs or MGAs.
20          Q.     And then of these nine employees, how
21      many of them do expert witness-related work?
22          A.     Just me.
23          Q.     Just you, okay.
24                 And then the other eight, is it all TPA
25      work, or what do the other eight do?
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 17 of 179 PageID #: 10333

```
 1        A.      The other eight also assist with the TPA
 2    activities, and then we also have an association
 3    management function that we run and their primarily
 4    responsibilities go with regard to that function of the
 5    operation.
 6        Q.      Gotcha.
 7                And when you say "association
 8    management," what do you -- what do you mean by that?
 9        A.      We represent a number of nonprofit
10    professional trade associations.
11        Q.      I got it.  Like IIABA or something like
12    that, the Big "I"?
13        A.      Correct.
14                THE COURT REPORTER:  The I -- say that
15          one more time, Mark.
16                MR. BELL:  The Big "I."
17                THE COURT REPORTER:  But you said AI --
18                MR. BELL:  IIABA.
19                THE COURT REPORTER:  Thank you.
20    BY MR. BELL:
21        Q.      And -- and what is -- tell me about that
22    association management role, what does -- what does
23    that entail?
24        A.      Essentially we are the back office of the
25    professional trade association.  We will do everything
```

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

```
 1      from managing the website to undertaking meetings,
 2      trade shows, membership development, newsletters,
 3      promotional activities, making sure that all of the
 4      continuing legal education or continuing education
 5      activities are properly certified by all 50 state bar
 6      associations or 50 state insurance companies; we are
 7      accredited by all 50 state insurance departments.
 8                  I am an accredited and approved provider
 9      and instructor by all 50 state insurance companies, so
10      we will do everything from cradle to grave for the
11      various trade associations as though they were doing it
12      themselves but have outsourced that function to us,
13      much like carriers or private companies like UniFirst
14      have done with TPAs.
15          Q.      Gotcha, okay.
16                  And are those all insurance trade
17      associations?
18          A.      No.
19          Q.      Okay.  And how many -- how many
20      associations is it roughly?
21          A.      Currently or in the past?
22          Q.      Currently?
23          A.      Currently three.
24          Q.      And who are those associations?
25          A.      The Federation of Defense and Corporate
```

Page 19

Alpha Reporting                          800-556-8974
A Veritext Company                     www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 19 of 179 PageID #:
10335

1    Counsel, the International Furnishings and Design

2    Association and the California Insurance Wholesalers

3    Association.

4         Q.    Do you -- do you represent policyholders?

5         A.    Yes.

6         Q.    And did -- tell me about that role

7    representing policyholders.

8         A.    I don't represent them as counsel,

9    however as part of my expert witness services, I am

10   called upon from time to time to review matters

11   involving people that are policyholders against

12   insurance companies which -- which I will accept so

13   long as there is no conflict.

14        Q.    Got it.

15              And when you were in private practice,

16   did you represent policyholders?

17        A.    Very limited basis, Mark.  I would say

18   that at most it was 5 percent.

19        Q.    Gotcha, okay.

20              Because looking through -- if I am

21   looking through your recent history of retentions,

22   there is a Varney Agency; was that on -- was that a

23   failure-to-procure type case or something?

24        A.    That is exactly right.

25        Q.    Okay.  And were you retained by the -- I

                        Alpha Reporting                  800-556-8974
                        A Veritext Company               www.veritext.com

```
 1    guess that would have been the -- the agency itself in

 2    a claim for failure to procure?

 3           A.      By the retail agency, that is exactly

 4    right.

 5           Q.      Okay.  And then the others are -- look

 6    like they are all insurers --

 7           A.      No, there are some policyholders in there

 8    as well, Mark.  Would you like me to go through them?

 9           Q.      No, no.  But I was just going to get back

10    it -- it looks like 20 -- I was just starting from --

11    from the start -- from the most recent and going back.

12    And then there is a John Robert Sebo?

13           A.      Yes.

14           Q.      Is that -- is that a -- that is a policy

15    holder?

16           A.      That's correct.

17           Q.      I know that case.  We will talk about

18    that on the break; unrelated.

19           A.      Okay.

20           Q.      But -- okay.  So that is a policyholder.

21    And, then, just looking back at the last five -- if you

22    look back at the last five years, who are the other

23    policyholders?

24           A.      Would you mind if I look at my Report?

25           Q.      Yeah, yeah, please do.  In fact, we will
```

Alpha Reporting                          800-556-8974
A Veritext Company                     www.veritext.com

1    go ahead and mark that and introduce it as an exhibit;
2    it is going to be Exhibit 425.
3              Do you have a -- Mr. Heinze, do you have
4    a hard copy of it also, or are you just using the one
5    on the screen?
6         A.    I do.  And actually 425, Mark, is the
7    Deposition Notice.
8         Q.    I am sorry, it should be -- it is
9    actually the -- it is the Disclosure -- sorry.  It is
10   the ESIS Disclosure and then it includes the Report
11   beginning on page 6.
12        A.    You are absolutely right.
13        Q.    No worries, it looked liked a Deposition
14   Notice at first.  But, sorry, there are some other --
15   some unfamiliar documents, I imagine, at the front of
16   that that are not yours.
17        A.    That is absolutely fine; not to worry.
18             THE COURT REPORTER:  So 425 is going to
19        be -- what is the -- how do I find it?
20             MR. BELL:  I just called it the Heinze
21        Expert Report.
22             THE COURT REPORTER:  Okay.
23          (Exhibit 425  -  Heinze Expert Report.)
24             THE WITNESS:  With regard to past
25        testimony, I am just looking back here over the

                                        Page 22

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 22 of 179 PageID #:
                                    10338

```
 1              last five years, it looks like the Sebo case was
 2              the only one in which deposition or trial
 3              testimony has been offered.  The other ones have
 4              not reached the deposition stage quite yet --
 5      BY MR. BELL:
 6              Q.      Okay, got it.
 7              A.      -- or were amicably resolved short of
 8      that.
 9              Q.      Do you have any current engagements for
10      policyholders?
11              A.      Yes.
12              Q.      Okay.  How -- how many currently?
13              A.      Let me take a quick look.
14                      Five.
15              Q.      Five, okay.  And in what -- what -- what
16      type of matters are those, and what type -- what are
17      those types of engagements; is it TPA-related work or
18      what -- can you describe just basically at a broad
19      level what they are.
20              A.      Sure.  As I look through them, most all
21      of them, Mark, relate to claims handling practices; the
22      generally accepted insurance industry customs and
23      practices; the duty of good faith and fair dealing; and
24      there is a property claim with regard to the -- a fire
25      in a manufacturing facility, there are actually two of
```

Page 23

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 23 of 179 PageID #:
10339

1    those; and then the others relate just to insurance and

2    insurance-related matters involving claims handling

3    activities.

4          Q.      Okay.  And then -- so you -- you -- today

5    you personally handle claims as a TPA?

6          A.      Yes.

7          Q.      And how long have you been handling

8    claims for?

9          A.      How long have I been handling -- I was

10    not sure if you were done with your question.  How long

11    have I been handling claims for?

12          Q.      Yes.

13          A.      Since 1983.

14          Q.      Okay.

15          A.      Since I started as an attorney.

16          Q.      And correct me if I am wrong on this,

17    you -- you have experience handling claims as an

18    attorney and then also as a -- working for an insurer

19    and also as a TPA; is that right?

20          A.      Yes, sir.

21          Q.      Okay.  Do you have any insurance

22    designations?

23          A.      No.

24          Q.      Let me ask this.  I think you referenced

25    them in your Report, the Florida Unfair Claims

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

1      Settlement Practices Act and the Tennessee Unfair

2      Claims Settlement Practices Act; is that correct?

3            A.      Yes.

4            Q.      Did that -- did the -- did the Unfair

5      Claims Settlements Practices Acts influence your

6      opinions?

7            A.      They were relevant to what I reviewed and

8      examined as regard to commenting upon the propriety of

9      the allegations contained within Tractor Supply's Third

10     Amended Complaint.

11           Q.      And did you find anything that was in --

12     was not in compliance in keeping with either of those

13     Unfair Claims Settlement Practices Acts?

14           A.      As far as ESIS was concerned, no.

15           Q.      What about as far as anybody else was

16     concerned?

17           A.      I was not retained to look at anyone

18     else's activities or services other than those of ESIS.

19           Q.      Gotcha.

20                   And I understand you may not have been

21     retained for that but did you -- in reviewing the

22     materials did you come to any conclusions related to

23     any other parties?

24           A.      No, sir.

25           Q.      Okay.  Did you -- in reviewing the

                     Alpha Reporting                800-556-8974
                     A Veritext Company             www.veritext.com

1    materials did you come across anything that seemed odd

2    or atypical in -- in the handling of the claims,

3    whether by ESIS or anybody -- any other party?

4         A.    I am just taking a pause to think, Mark.

5    I mean, I have reviewed probably close to 50,000 pages

6    of this record.  And reflecting back on all of it, I

7    honestly don't have any recollection of anything that I

8    saw that struck me as being outside of compliance, odd

9    or unusual with regard to this kind of a high

10   deductible insurance program and the matter in which

11   the parties under their respective contracts operated

12   with one another or the manner in which the claims were

13   being administered.

14        Q.    Okay.  You don't remember seeing any

15   e-mails that you thought, oh, that seems -- that seems

16   a little out of the norm?

17        A.    No.

18        Q.    Let me ask you this.  You mentioned that

19   this is typical for how a -- a policy with a high

20   deductible is handled; is that right?

21        A.    Yes.

22        Q.    Let me ask you this.  Typically when you

23   have a high deductible plan, the TPA -- is the TPA

24   retained by the insurer or the insured in -- in a high

25   deductible plan, not high self-insured retention plan?

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

```
1          A.      It depends.
2          Q.      What -- what is typical?
3          A.      It depends upon whether the insurance
4     carrier has its own claim department or is outsourcing
5     a particular book of business or a particular insured
6     to a third-party administrator; it depends upon whether
7     the insured itself has a risk management or claims
8     department and is undertaking those activities on its
9     own or outsourcing those to a third-party
10    administrator.  I couldn't say which one was more
11    typical than the other; I have seen it both ways.  At
12    Reliance we had self-insured retention policies; we had
13    high deductible policies, as the one that is at issue
14    here; and we had TPAs that were responding on behalf of
15    both the insured; and at times we would have a TPA
16    called Sterling that we would utilize for the handling
17    of those, usually the SIR programs, the higher SIR
18    programs.
19         Q.      Okay.  And you said that the -- in
20    some -- or I think you said this.
21               And if ever I say you said something, I
22    am not trying to say something incorrect.  So if I ever
23    say you said something and it is incorrect, please do
24    correct me.
25               But I thought that you had said
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1      that the -- that in many instances the -- the insurer

2      may outsource to a TPA; is that right?

3              A.      Yes.

4              Q.      And is that what happened in this case?

5              A.      No, the insured outsourced to a

6      third-party administrator here.

7              Q.      Okay.  And then who did the investigation

8      and claims handling on behalf of the insurer?

9              A.      Well, the insurer, if referring to ACE or

10     referring to Tractor Supply's insurer?

11             Q.      ACE.

12             A.      At ACE.  The way the high deductible

13     program worked is that the investigation would be

14     conducted by ESIS.

15             Q.      So the investigation is conducted by

16     ESIS --

17             A.      -- on behalf of UniFirst.

18             Q.      -- on behalf of UniFirst, right.

19             A.      Correct.

20             Q.      And that's not -- that's not problematic

21     that the -- that the named insured's TPA is doing the

22     investigation for an additional insured on the policy?

23                     MR. WARRINGTON:  Form.

24                     MS. CHRISTOPHER:  Object to form.

25                     THE WITNESS:  That's a different

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

```
 1          question.  It is not unusual, excuse me, for a
 2          third-party administrator to undertake an
 3          investigation of the underlying facts and
 4          circumstances to determine liability with regard
 5          to the accident that is allegedly having been
 6          reported to the Tractor Supply folks of someone
 7          having fallen or tripped or becoming injured by
 8          one of UniFirst's mats while they were at the
 9          Tractor Supply location.
10               The issue with regard to investigating
11          additional insured status was done by ACE.
12     BY MR. BELL:
13          Q.     And who did that investigation on ACE's
14     behalf?
15          A.     ACE employees.
16          Q.     What is your -- what gives you the
17     understanding that ACE employees did the investigation
18     into coverage for the additional insured?
19          A.     That was something that was consistent
20     within the testimony of the depositions and consistent
21     in the e-mails that I saw with regard to the activities
22     to determine whether Tractor Supply could be afforded
23     additional insured status on the claims that were
24     reported.
25          Q.     Would it be improper for ESIS to have
```

Alpha Reporting                          800-556-8974
A Veritext Company                       www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 29 of 179 PageID #:
10345

```
1      done the investigation into additional insured
2      coverage?
3                    MR. WARRINGTON:  Form.
4                    THE WITNESS:  Well, it didn't --
5                    THE COURT REPORTER:  Wait, who said form?
6           Was that you, Al?
7                    MR. WARRINGTON:  Yes.
8                    THE COURT REPORTER:  Thank you.
9                    THE WITNESS:  It -- it didn't undertake
10          those investigations, it limited its investigation
11          with regard to the liability of UniFirst based
12          upon the claims that were reported to Tractor
13          Supply.
14                   The issues involving investigations of
15          additional insured status was undertaken by Marcia
16          Flagg and others at ACE Insurance Company.
17     BY MR. BELL:
18          Q.      Did you say Marcia Flagg at ACE?
19          A.      I am sorry.  No, I am sorry, she was at
20     ESIS.  I apologize.  By people at -- at ACE.
21                   I think I remember Brooke Skolnik's
22     deposition testimony that all of the activities
23     relating to additional insureds were undertaken by ACE
24     employees, and I believe Ms. Flagg testified to that
25     same thing in her deposition where she says, as I note
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 30 of 179 PageID #: 10346

1    in my Report, that she undertook no activities with

2    regard to examining coverage issues whatsoever.

3         Q.    Okay.  So you said -- and I understand

4    what you said here is that in this case it -- it

5    didn't, that ESIS didn't do the investigation on behalf

6    of ACE.

7         A.    Right.

8         Q.    What I am asking you is would it be

9    inappropriate if ESIS had done the investigation into

10   coverage on behalf of ACE?

11        A.    Well, it didn't have any duties or

12   responsibilities to ACE, its contract was completely

13   and solely with UniFirst, so that would -- if they had

14   done something like that, it would have been outside

15   the activities for which they were contracted with

16   UniFirst.

17        Q.    And would that have been inappropriate

18   also?

19        A.    I would have to take a look at the

20   individual activities or what the claim professional

21   had before them at the time in order to make that

22   determination.

23        Q.    I mean, it doesn't seem terribly

24   complicated.  If it -- you said that the -- I thought

25   you had said that the ACE -- or somebody acting on

Alpha Reporting                    800-556-8974
A Veritext Company                www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 31 of 179 PageID #:
10347

```
 1   ACE's behalf needed to do the investigation into
 2   coverage, right?
 3           A.      Yes.
 4           Q.      And so if ESIS did the investigation and
 5   not ACE, then that would be inappropriate, would it
 6   not?
 7           A.      Again --
 8                   MR. PULLIAM:  Object to the form.
 9                   THE WITNESS:  -- again, Mark, I would
10           just have to say --
11                   THE COURT REPORTER:  Who said that, I am
12           sorry?
13                   MR. PULLIAM:  Andy Pulliam.
14                   THE WITNESS:  I would need to take a look
15           at exactly what was done, why it was done and what
16           those circumstances were, otherwise it would just
17           be speculation.
18   BY MR. BELL:
19           Q.      Would it -- would it -- would it need to
20   be some -- you said you need to look at the
21   circumstances.  Would it need to be some atypical or
22   exceptional circumstances to make that appropriate?
23           A.      Again, it would cause -- I don't want to
24   box myself in, Mark, with regard to commenting on a
25   hypothetical on which I don't have any facts, so I
```

Alpha Reporting                      800-556-8974
A Veritext Company              www.veritext.com

```
 1    would just have to say that I would need to take a look
 2    specifically at what those facts or circumstances were
 3    if, in fact, that were done; but in my review of the
 4    record here, it was not.
 5         Q.     Now here ESIS really played two different
 6    roles, did it not?
 7         A.     Well, I think the role that they played
 8    was to act as a third-party administrator for UniFirst
 9    under its Risk Management Services Agreement.
10         Q.     Did it play any other role?
11         A.     In terms of what?
12         Q.     Was ESIS not also the TPA for the
13    conflict files?
14         A.     A conflict file would be established in
15    the event there was an acceptance by ACE of an
16    additional insured tender for purposes of defending
17    that particular claim.  There was a conflict file also
18    set up by ACE as well as by ESIS.
19         Q.     And here there were conflict files that
20    were set up, right?
21         A.     Yes.
22         Q.     Okay.  So in those situations then ESIS
23    is really playing two different roles, is it not?
24         A.     No, it is merely monitoring the
25    activities that ACE is undertaking with regard to
```

Page 33

```
 1    having accepted the additional insured tender and
 2    offering the defense under a reservation of rights.
 3         Q.     So what is the role of ESIS with respect
 4    to a conflict file?
 5         A.     To make sure that the adjustor that is
 6    undertaking the liability investigation for UniFirst is
 7    not subjected to any of the activities that are taking
 8    place involving the coverage evaluation or the defense
 9    that is provided under reservation of rights to Tractor
10    Supply by ACE.
11         Q.     Sir, walk -- walk me through that again.
12    Sorry, I don't think I caught that all.  Sorry, do you
13    mind explaining that to me, again, Mr. Heinze?
14         A.     Sure.
15                Kelly, could you read back the question,
16    please.  I'll tell you what, why don't you read back
17    the question, if you would, and the answer.
18                And maybe, Mark, let's both listen to it
19    again and see if that makes sense.
20                MR. BELL:  Sure.
21           (Whereupon the record was read
22           back as requested.)
23                THE WITNESS:  Right.  Does that make
24           sense, Mark?
25
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

BY MR. BELL:

        Q.      Not -- not really.  Let me try to break
it out some.

                So you said -- I thought you were saying
-- or I thought in reading it back -- or hearing it
back, you said to make sure the adjustor involved in
the liability is not subject to a coverage evaluation
or defense; is that --

        A.      Is not being subjected to seeing any of
the coverage activities or the undertaking of a defense
for Tractor Supply by ACE under a reservation of
rights.  You want to make sure that those lines of
demarcation are kept separate and independent so that
there is no crossover and so that, as Mr. Fey rightly
said, that firewall is maintained.

        Q.      I gotcha.

                So what -- so is it -- so when ESIS is
handling -- when handling a claim -- a conflict file
claim, are they doing that on behalf of ACE, or who are
they doing that on behalf of?

        A.      They are doing it on -- through the
auspices of the Risk Management Services Agreement with
UniFirst.

        Q.      Okay.  It is -- so -- so even when it
is -- when -- when ESIS's role with respect to the

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 35 of 179 PageID #:
10351

1    additional insured is still within the auspices of
    2    ESIS's contract with the TP -- with UniFirst?
    3          A.     Yes.  Because the deductible for the
    4    first four years of the program was $500,000 per
    5    occurrence and in the last year was a million dollars
    6    per occurrence, so all of the activities were taking
    7    place within that deductible layer, and that's what
    8    ESIS was under contract with UniFirst, to assist as a
    9    third-party administrator.
   10          Q.     Okay.  So ESIS's role -- let me -- let me
   11    ask it this way.
   12                 ESIS's role in that TPA side, even in a
   13    conflict file, is just as it relates to liability; is
   14    that right?
   15          A.     It is as it relates to liability for
   16    UniFirst, that is correct.  And it is monitoring the
   17    activities that ACE is undertaking in providing the
   18    defense under a reservation of rights to Tractor
   19    Supply.
   20          Q.     So, for instance, like settlement
   21    authority in a conflict file, who -- who would give
   22    settlement authority?
   23          A.     In a conflict file where there was an
   24    additional insured tender that was accepted under a
   25    reservation of rights, that settlement authority would

Alpha Reporting                                    800-556-8974
A Veritext Company                              www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 36 of 179 PageID #:
10352

```
 1     come from ACE.
 2          Q.     And what would ESIS's role -- or what
 3     should ESIS's role be with respect to settlement
 4     authority?
 5          A.     The settlement authority that ESIS had
 6     was, I believe, if my memory serves me correctly, Mark,
 7     $10,000 on behalf of UniFirst; and where matters were
 8     up to and including $10,000, it had the authority to
 9     settle those claims on behalf of UniFirst.
10          Q.     I -- I got that with respect to the
11     UniFirst but what about as it relates to a conflict
12     file for the additional insured?
13          A.     It had no settlement authority on behalf
14     of ACE.
15          Q.     Gotcha.  Okay, so --
16          A.     Because its authority -- sorry to
17     interrupt.  Its authority was primarily and solely
18     through the contract of the Risk Management Services
19     Agreement.  It had no similar agreement or any other
20     type of contractual relationship in regard to these
21     issues in this matter with ACE.
22          Q.     So it had -- did I hear you right that --
23     that ESIS had no settlement authority with respect to
24     ACE?
25          A.     With regard -- with regard to the matters
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    involving the UniFirst mats, correct, that's my
 2    understanding.
 3         Q.    And then who -- so who was charged with
 4    doing the investigation of coverage?
 5         A.    As I testified, that would be with regard
 6    to the folks at ACE.
 7         Q.    ACE, okay.
 8              Did you see any evidence of any employees
 9    from ACE contacting anyone from Tractor Supply about
10    any individual accidents?
11         A.    I don't recall as I am sitting here at
12    the moment.  In all likelihood it probably would have
13    gone through Gallagher Bassett which was Tractor
14    Supply's third-party administrator if it happened, but
15    I just don't recall as I am sitting here at the moment.
16         Q.    Do you remember -- did you see the
17    testimony of -- the deposition testimony of ESIS's
18    corporate representative?
19         A.    Mr. Christman [sic]?
20         Q.    Yes.
21         A.    Yes.  Or Christensen, I think it was.
22         Q.    I think that is right.
23         A.    Yeah.
24         Q.    I think I said his name wrong 20 times
25    during the deposition.
```

Alpha Reporting                          800-556-8974
A Veritext Company                     www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 38 of 179 PageID #:
10354

```
 1                   But the -- do you remember a discussion
 2       in his deposition about a matter being open for defense
 3       only?
 4            A.      I do recall that, yes.
 5            Q.      And I think he had testified, and correct
 6       me if I am wrong, that all of the -- all of the matters
 7       for Tractor Supply's additional insured were opened for
 8       defense only; is that right?
 9            A.      I would have to go back and look at the
10       exact testimony, Mark, I don't recall exactly what
11       Mr. Christensen's testimony was verbatim, but I would
12       allow that testimony to stand as it is.  I did
13       certainly see that.
14            Q.      Okay.  And I guess the idea of if it was
15       defense only that would be consistent with your
16       understanding that ACE didn't actually -- I am sorry,
17       ESIS didn't have settlement authority on behalf of ACE,
18       right?
19            A.      Correct.
20            Q.      Let me ask you this.  You -- the MedPay,
21       you are familiar with MedPay?
22            A.      Yes.
23            Q.      Why was -- why did ESIS not offer MedPay
24       to any of the claimants?
25            A.      I am not interpreting the policy here,
```

Alpha Reporting                          800-556-8974
A Veritext Company                  www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 39 of 179 PageID #:
10355

1    Mark, but my understanding in looking at the 2016

2    through 2020 policies of ACE that were afforded to

3    UniFirst, was that on product liability claims there

4    was no MedPay coverage.

5         Q.    What -- what leads you to that

6    conclusion?

7         A.    I believe that was a provision within the

8    policy.

9         Q.    That the policy said there was no MedPay?

10        A.    On product liability claims.

11        Q.    Any -- anything else that you can recall

12   as to why there wouldn't have been MedPay?

13              Excuse me.

14        A.    Well, the policy speaks for itself so if

15   there is not going to be MedPay coverage on product

16   liability matters, that pretty much is what the policy

17   says.  There may be other provisions and the policy was

18   quite long but I do recall that particular aspect of

19   the policy.

20        Q.    And then -- because I -- did you see

21   e-mails or correspondence in the files where ESIS told

22   claimants that there was no MedPay on the ACE policies?

23        A.    I believe so.  I would have to go back

24   and take a look.

25        Q.    And you agree with me that there was --

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    there was MedPay available under the policies, although
 2    perhaps in certain circumstances -- let me break up the
 3    question.
 4              You would agree with me that subject to
 5    the limitations of the policy there was MedPay on the
 6    policies, right?
 7         A.    Yes.
 8         Q.    Okay.  And so in a particular instance
 9    MedPay may or may not have applied, right?
10         A.    Again, I am not making any coverage
11    determinations, Mark, I was not asked to do any
12    coverage evaluations.  I took the coverage as I found
13    it and rendered my opinions accordingly.
14         Q.    And I am not going to argue with you
15    about whether there was or was not MedPay just because
16    I know you are not -- you weren't asked to testify --
17    you weren't asked to testify about whether the policy
18    did or didn't provide MedPay, right?
19         A.    Correct.
20         Q.    Okay.
21         A.    Not at this time, at least.
22         Q.    Gotcha.
23              Let's -- let's look at your Report, if
24    you can bring that up, Exhibit 425.  And I am going to
25    reference page numbers on your Report.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          A.      Okay.

 2          Q.      Those are the -- those are going to be

 3     the page numbers on the -- on the bottom corner of the

 4     Report rather than the -- than the .pdf number.

 5          A.      Understood.

 6          Q.      So if we go to page 20 of your Report,

 7     there is footnote 14 --

 8          A.      Yes.

 9          Q.      Is this -- this is the -- we had talked

10     about this earlier.  Is this the explanation as to why

11     you did not give an interpretation on the -- on the

12     policy interpretation or the -- sort of the common law

13     duties?

14          A.      And the statutes, because that is really

15     something that's outside the purview of expert witness

16     testimony.  But as I said, Mark, I have reserved my

17     right to do so if it would be of assistance to the

18     Court, and if Mr. Fey is permitted to testify on it, I

19     would be respectfully requesting to do so as well.  But

20     as I took everything in, certainly in what I do as a

21     claims professional and as I have done throughout my

22     entire career, customs and practices in the insurance

23     industry are certainly informed by common law and

24     statutes, so I certainly took those into consideration

25     when I examined the allegations in Tractor Supply's
```

Alpha Reporting                           800-556-8974
A Veritext Company                     www.veritext.com

```
 1     Third Amended Complaint and issued my opinions
 2     accordingly.
 3             Q.      Got it.
 4                     And if you would go with me on the Report
 5     to page 32, the -- the first paragraph there; are
 6     you -- are you there?
 7             A.      I am.
 8             Q.      Okay.  It says:  What's more, ESIS
 9     adhered to these processes even when the underlying
10     facts clearly showed that an incident did not quote,
11     unquote, result from a UniFirst mat.
12                     Do you see that?
13             A.      I do.
14             Q.      What did -- what do you mean that the --
15     that the facts clearly showed the incident did not
16     result from a UniFirst mat?
17             A.      Right.  So in the 60 claims that were
18     tendered, Mark, and it would help if I go back to page
19     31 to put this in context.
20             Q.      Sure.
21             A.      There is a discussion with regard to what
22     was done and how the facts were developed in ESIS's
23     determination of its liability investigation on behalf
24     of UniFirst.  And in the course of that investigation,
25     if I remember the various facts of some of the claims,
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1  there were situations in which someone may have tripped

2  over a cane or someone in a walking boot may have

3  stumbled on a mat where it really wasn't the mat's role

4  or responsibility of having caused the accident, it was

5  merely incidental to where the accident occurred.

6      Q.    I gotcha.  So you -- when you say that

7  the underlying facts clearly show the incident did not

8  result from a UniFirst mat, are you referring to all 60

9  claims or just a certain subset within the 60 claims?

10     A.    I am referring to those matters that were

11  tendered by Tractor Supply for coverage and ESIS's

12  investigation with regard to whether the mats were or

13  were not at fault from -- for the accident or the

14  injuries that were sustained by that particular

15  claimant.

16     Q.    Did you find in reviewing the files in

17  any of the 60 underlying claim files that the accidents

18  resulted from the mat?

19     A.    I think that would be involving those

20  potentially eight matters in which ACE agreed to defend

21  under a reservation of rights where there may have been

22  an indication that the mats may have been involved in

23  precipitating or resulting in the claimant's injuries.

24     Q.    Gotcha.

25         Now you -- you put the words "result

Page  44

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 44 of 179 PageID #:
10360

1    from" in quotes, right?

2         A.      Yes.

3         Q.      What does "result from" mean, in general

4    insurance parlance?

5         A.      That that's what caused the accident.

6         Q.      So would it be your position that

7    "results from" and "caused by" mean the same thing?

8         A.      That would -- that would require a legal

9    interpretation, I think.  I -- I am going to stick by

10   what I said in my Report.  I would -- in normal

11   insurance parlance, what I am referring to here is that

12   the mats were involved in precipitating the accident as

13   opposed to merely being incidental to where the

14   accident occurred.

15        Q.      I gotcha.

16                So "results from," that's -- another way

17   to say results from would be "involved in precipitating

18   the incident"?

19        A.      I would agree with that, yes.

20        Q.      Okay.  And is that a generally accepted

21   -- and that definition, is that just sort of a

22   generally accepted insurance term for "results from"?

23        A.      It is the one that I use.

24        Q.      Gotcha, okay.  Gotcha.

25                All right.  And so would you agree with

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

1    me that -- or let me ask you this.  Yeah.  Would you
2    agree with me "arising from," "results from," and
3    "caused by," those three terms are all used in
4    insurance policies, right?
5              A.      They are.
6              Q.      Would you agree with me that they all
7    mean something slightly different from one another?
8              A.      They can.
9              Q.      Can, okay.
10             And so they can but do they, I guess?
11             A.      Well, again, that would require a look at
12    the entire context of the paragraph or the sentence,
13    Mark.  It -- all I can say is they can mean different
14    things but I would have to see it in the particular
15    parlance of that, and, again, I am not making any kind
16    of coverage interpretations at this point.
17             Q.      Gotcha.
18             A.      All I am saying here is what those eight
19    litigation matters that were tendered and accepted by
20    ACE under a reservation of rights was based upon the
21    fact that the liability investigation conducted by ESIS
22    on behalf of UniFirst indicated that the mats may have
23    been responsible or that the damages may have resulted
24    from the mats.  And that's why ACE, I think, decided to
25    afford a defense under a reservation of rights under

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1      those circumstances.
 2              Q.      Gotcha, okay.
 3                      You -- you mentioned there the
 4      investigation on behalf of -- I am sorry -- the
 5      investigation by ESIS, the liability investigation by
 6      ESIS, right?
 7              A.      Yes.
 8              Q.      Okay.  And let me ask you this.  Are
 9      the -- the -- the investigation by ESIS, if we have got
10      a situation where there is a conflict file, so we have
11      got two -- got two ESIS adjustors, right?
12              A.      I am following you.
13              Q.      Okay, sorry.  So we have got two ESIS
14      adjustors for a conflict file, who does the
15      investigation into liability?
16              A.      One of those ESIS adjustors.
17              Q.      It only has to be one of them?
18              A.      Well, the other one would not have been
19      involved yet because the tender investigation had to be
20      provided so that ACE could make a determination as to
21      whether or not to afford coverage under a reservation
22      of rights; that's, then, when the conflict adjustor was
23      assigned both at ESIS as well as at ACE.
24              Q.      So does the conflict adjustor do any
25      investigation into liability?
```

                        Alpha Reporting              800-556-8974
                        A Veritext Company           www.veritext.com

```
 1          A.      They can.  It is certainly not anything
 2    that I have seen that would be unusual but in all -- in
 3    most situations they do not, they confine themselves to
 4    undertaking only those activities involving the defense
 5    now of the additional insured under the reservation of
 6    rights.
 7          Q.      Now let me -- let me -- let me make sure
 8    I am clear on something.  You said that they undertake
 9    only the actions in defense of the additional insured;
10    is that -- is that right?
11          A.      The one conflict adjustor at ESIS and the
12    conflict adjustor at ACE --
13          Q.      Gotcha.
14          A.      -- whereas the liability investigation
15    was undertaken on behalf of UniFirst by the other ESIS
16    adjustor.
17          Q.      Okay.  So -- and typically the only
18    investigation that is done into liability is done by
19    the ESIS adjustor on behalf of UniFirst?
20          A.      Yes.  But I -- again, I am not saying
21    that exclusively that a conflict adjustor may not from
22    time to time also look at some other aspects as the
23    defense of the case is being conducted.
24          Q.      Now the defense of the additional insured
25    in the conflict file, what -- what -- what role does
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    ESIS have in that?

2         A.    It is acting in a role on behalf of

3    UniFirst of monitoring the activities and the

4    litigation that is now taking place and conducting its

5    activities in concert with the duties and

6    responsibilities that are outlined in the Risk

7    Management Services Agreement.

8         Q.    Okay.  So -- so even on a conflict file,

9    ESIS is only monitoring on behalf of UniFirst; is that

10   right?

11        A.    Yes.

12        Q.    So they are not monitoring on behalf of

13   ACE, right?

14        A.    Correct.

15        Q.    What interactions between ESIS and ACE

16   should take place with respect to a conflict file?

17        A.    I am not sure I understand the question.

18        Q.    Yeah, sure.  So you have got a -- you

19   have got a -- so on the main file, the UniFirst file,

20   you will have -- I am sure you saw there is some

21   communications about liability and history and

22   everything else, right?

23        A.    Right.

24        Q.    And so that's -- those are communications

25   that are taking place between ESIS -- I don't want to

                                                Page 49

1    -- I put my hands like this because it is a battle, but

2    they are between ESIS and they are between ACE?

3            A.      Well, it is not a battle.

4            Q.      Right, I said it is not a battle; when I

5    put my hands like this, I said I don't mean it is a

6    battle, I meant they are communicating with each other.

7            A.      Well, the communications that are taking

8    place are between ESIS and UniFirst.

9            Q.      And also ESIS is communicating with ACE,

10   are they not?

11           A.      The liability adjustor is communicating

12   with UniFirst, the conflict adjustor may be

13   communicating with ACE.  Again, to keep those aspects

14   separate with regard to coverage and the reservation of

15   rights.

16           Q.      I got -- I am with you.  I mean on the --

17   on the non-conflict file, the UniFirst file, the ESIS

18   employee is communicating with ACE about liability and

19   other matters, right?

20           A.      They can.  They certainly share the

21   information if it is being requested but in those kind

22   of situations, from what I have seen, most of those

23   matters of the 60, most of them were probably amicably

24   resolved within the authority that ESIS had.  There

25   were about 50 of them that were also put into

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1      litigation that were not pursued.  And 19 of those, I

2      think if my memory serves me correctly, were closed

3      without payment, and the rest of them were closed or

4      settled within the authority that ESIS had under its

5      authority from UniFirst under the high deductible

6      program.

7              Q.      Right, but ESIS and ACE are communicating

8      about the liability, I mean, that's where ESIS -- ACE

9      is getting the information about how long the mat was

10     in its care, custody -- in Tractor Supply's care,

11     custody and control, is it not?

12             A.      They can see that if it is certainly

13     requested but, again, ACE is being placed on notice of

14     matters in which there is a tender of an additional

15     insured endorsement.  In most of these situations where

16     the investigation on liability is conducted, it is

17     communications between the ESIS adjustor and UniFirst.

18             Q.      Sure.  But the ones -- I am talking about

19     the ones where there was a tender to ACE for an

20     additional insured status.

21             A.      Okay, that's different.  That -- then in

22     that situation there may very well be a review by ACE

23     of the investigation that was conducted by the ESIS

24     adjustor.

25             Q.      Okay.  And so in those situations, the

                        Alpha Reporting                     800-556-8974
                        A Veritext Company                  www.veritext.com

1    same ones where you have got a tender that's been -- an
2    additional insured tender to ACE and you have got a
3    conflict file, what -- what interactions do the ESIS
4    conflict rep have with the ACE adjustor?
5         A.    I think it is basically just monitoring
6    what is taking place in the litigation but it has
7    nothing to do with any of the coverage issues that ACE
8    has made with regard to whether or to what extent
9    coverage will be afforded under a reservation of rights
10   for the additional insured tender that was made by
11   Tractor Supply.
12        Q.    Okay.  So -- so you mentioned monitoring.
13   What -- what other roles other than monitoring does the
14   conflict -- ESIS conflict adjustor have with respect to
15   a conflict file?
16        A.    Well, I think it is probably just based
17   upon what is taking place in the litigation and to make
18   sure that there is no information pertaining to the
19   coverage issues or the matters that are involved solely
20   for ACE's review that are being examined by the
21   liability adjustor for ESIS on behalf of UniFirst.
22        Q.    Anything else that that conflict adjustor
23   is supposed to be doing?
24        A.    There may have been other things.  If
25   there is something that you would like me to take a

Page 52

Alpha Reporting                        800-556-8974
A Veritext Company                     www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 52 of 179 PageID #:
10368

```
1    look at, I would be happy to see it, but that is what
2    my best recollection is in terms of what the ESIS
3    conflict adjustor was doing.
4         Q.      Got it, okay.
5              And you said that their -- I thought that
6    you said that their role was also to make sure no
7    information pertaining -- pertaining to coverage was --
8    was issued; is that right?
9         A.      Yes.
10        Q.      And so ESIS -- for the conflict file,
11   ESIS has no role whatsoever with respect to coverage;
12   is that right?
13        A.      That's correct, all of the coverage
14   decisions were made by ACE.
15        Q.      What about with respect to an
16   investigation?  Did -- did ESIS perform investigations
17   on ACE's behalf for conflict files?
18        A.      No.
19        Q.      Would that be improper if ESIS had?
20        A.      It would have to have been done under
21   various circumstances.  I have to take a look at what
22   those circumstances were or what the requests were, but
23   the bottom line here from what I have reviewed in the
24   record was that ESIS limited its activities to those
25   instructions, the special -- the general liability
```

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

1    service instructions as well as the duties and

2    responsibilities it had under the Risk Management

3    Services Agreement with UniFirst and that alone.  All

4    of the aspects with regard to investigations of

5    coverage were undertaken by ACE in -- in their role as

6    the underwriter for this program.

7         Q.      If you would, scroll up with me.  I think

8    you were looking at page 31 last.

9         A.      And 32, right.

10        Q.      Yes.  If you could scroll up a little

11   higher on 31, and in fact the bottom of page 30.

12        A.      Okay.

13        Q.      Do you see the -- the last sentence

14   there, "if ACE American accepted coverage" --

15               THE COURT REPORTER:  I am sorry, last

16        sentence there, what is it?

17   BY MR. BELL:

18        Q.      "If ACE American accepted coverage"; do

19   you see where I am at?

20        A.      Yes, I do.

21        Q.      It says:  ESIS then created a separate

22   claim file (the "conflict file") and assigned

23   the matter to a separate ESIS claim representative for

24   further handling of TSC's defense.

25        A.      Right, within -- within the deductible,

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1     that's right.
 2          Q.     Okay.  And what I am trying to understand
 3     is what -- what does that further handling TSC's
 4     defense, what does that entail?
 5          A.     Basically monitoring the activities of
 6     defense counsel and liaising with ACE to the extent any
 7     of that liaising will be of assistance to UniFirst with
 8     regard to the resolution of the claim.
 9          Q.     Gotcha.
10               The further handling of TSC's defense,
11     that is on behalf of UniFirst, right?
12          A.     Well, under the indemnity provisions of
13     the contract -- of the contract between UniFirst and
14     Tractor Supply.
15          Q.     Were you done?
16          A.     Yes.
17          Q.     Oh, okay, I am sorry.  I didn't know if
18     you had finished your answer.
19               Okay.  So -- so what do you mean with
20     respect to the indemnity obligations?
21          A.     There is an indemnity -- a mutual
22     indemnity provision within the contract for the Textile
23     Services Agreement of flat goods between UniFirst and
24     Tractor Supply.  And part of that would be UniFirst's
25     obligation to indemnify Tractor Supply in the event
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1        there was a defect or negligence with regard to any of
 2        its mats that were rented to Tractor Supply.
 3             Q.      I gotcha.
 4                     So let me ask you -- let me ask you this.
 5        Is the -- when you say for further handling of TSC's
 6        defense, are you talking about TSC's defense under the
 7        indemnity obligation or TSC's defense under the
 8        additional insured coverage?
 9             A.      Well, the additional --
10                     MR. WARRINGTON:  Form.
11                     THE WITNESS:  -- additional insured -- I
12             am not making any coverage determinations here or
13             interpreting the policy, but the way my
14             understanding worked -- is that the indemnity
15             provision of the Textiles Services Agreement of
16             flat goods required insurance provisions by
17             UniFirst in order to indemnify Tractor Supply for
18             various willful or other negligent activities of
19             UniFirst.  And in those circumstances where an --
20             an ESIS adjustor had conducted a liability
21             investigation on behalf of UniFirst and found that
22             there may have been a defect in a mat that had
23             been rented to Tractor Supply and an additional
24             insured tender by Tractor Supply to ACE, that's --
25             on those occasions is where the defense would then
```

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

```
 1          be provided under a reservation of rights.
 2     BY MR. BELL:
 3          Q.      Gotcha.
 4                  If you could turn with me to page 38 of
 5     your report.
 6          A.      Okay.
 7          Q.      I am talking to you about this bullet
 8     point in -- in the middle and then the first sub bullet
 9     point, "as noted above"; do you see that?
10          A.      Yes, I do.
11          Q.      It says:  As noted above, there was no
12     "arrangement" between ESIS and ACE American, and the
13     record does not indicate there being one.
14                  Do you see that?
15          A.      I do.
16          Q.      And what I am trying to understand, when
17     you say "there was no arrangement," what do you -- what
18     do you mean that there wasn't any arrangement?
19          A.      Right.  So what I -- what I am talking
20     about here in this section of the Report are my
21     responses to Mr. Fey's opinions.  And one of the things
22     that he commented on -- Mark, if you just go to the
23     bullet point above the sub bullet that you just
24     mentioned.
25          Q.      Sure.
```

Alpha Reporting                        800-556-8974
A Veritext Company                   www.veritext.com

```
 1           A.      It provides Mr. Fey's comment that there
 2    was an arrangement between UniFirst, ESIS and ACE on
 3    the large deductible program and there just wasn't.
 4    There was no arrangement between UniFirst, ESIS and
 5    ACE.  There was a contractual relationship between ACE
 6    and its policyholder, UniFirst.  There was a separate
 7    and independent relationship between UniFirst and ESIS
 8    to act as its TPA to conduct investigations and other
 9    activities in concert with those provisions of the Risk
10    Management Services Agreement in regard to those claims
11    from patrons that were going in and out of Tractor
12    Supply stores.
13               So I think what Mr. Fey was confused
14    about was I think he believed that there may have been
15    some kind of arrangement between UniFirst, ESIS and
16    ACE, and my comment on the sub bullet is, there simply
17    wasn't; there is no indication in the record that there
18    was; there is no indication in any of the deposition
19    testimony, other than from Mr. Fey, that there was; and
20    that, quite frankly, the RMS Agreement and the General
21    Liability Services Instructions were the only
22    contractual relationships that ESIS had with UniFirst.
23    It had none of those similar type duties or
24    responsibilities or arrangements with ACE, contrary to
25    Mr. Fey's perception.
```

Alpha Reporting                                    800-556-8974
A Veritext Company                            www.veritext.com

```
 1              Q.      I gotcha.
 2                      And so I guess maybe some of the
 3      confusion lies -- and this is maybe my own confusion,
 4      but ESIS -- or ACE -- ESIS is an affiliated company of
 5      ACE American, right?
 6              A.      That's my understanding.
 7              Q.      Okay.  And so I think part of the
 8      confusion, potentially my confusion, is around ESIS
 9      because ACE -- my understanding at least is that ACE
10      will sometimes hire ESIS to handle claims as a TPA on
11      ACE's behalf; is that -- is that your understanding?
12              A.      Yes.
13              Q.      Okay.  And so let's say, for instance,
14      that UniFirst had hired Gallagher Bassett, just so
15      that we -- just so that we don't have any confusion
16      about the parties.
17              A.      Okay.
18              Q.      Are you with me?
19              A.      I am.
20              Q.      So in that situation, Gallagher Bassett
21      in this hypothetical is UniFirst's TPA; are you with
22      me?
23              A.      Yes.
24              Q.      And so if -- and let's say they have the
25      same agreement between Gallagher Bassett as UniFirst --
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    as exists between ESIS and UniFirst; are you with me?

2         A.    Yes.

3         Q.    In that situation if a conflict file

4    needed -- needed to be opened, who would handle that

5    conflict file; would it be Gallagher Bassett that

6    handled the conflict file or would it be ESIS handling

7    the conflict file?

8              MR. PULLIAM:  Object to the form.

9              MR. WARRINGTON:  Same.

10             THE COURT REPORTER:  Wait, was that Mr.

11        Pulliam?

12             MR. BELL:  I think it was everyone.

13             MS. CHRISTOPHER:  We all object.

14             MR. PULLIAM:  Yes.

15             THE WITNESS:  It -- it -- it is a little

16        bit of an unwieldy question mark but let me see if

17        I can break it down and see if -- if we can

18        establish some agreement on an answer here.

19             If Gallagher Bassett was in the role of

20        ESIS and had been contracted by UniFirst, right --

21   BY MR. BELL:

22        Q.    Uh-huh.

23        A.    -- that was your question?

24        Q.    Yes.

25        A.    There would have to be a separate

                                           Page 60

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 60 of 179 PageID #:
10376

```
 1    adjustor already assigned and a separate firewall
 2    established, because Gallagher Bassett is also
 3    operating as a TPA of Tractor Supply Corporation.
 4    There is nothing wrong with a TPA handling a
 5    circumstance of two entities that find themselves
 6    involved in a contractual relationship and were under
 7    indemnity provision or an insurance provision, what
 8    have you, that one is tendering a defense request to
 9    the other.  But in those circumstances there has to be
10    a firewall between the claim professionals at Gallagher
11    Bassett.  And in that situation, yes, a conflict file
12    would also have to have been set up at Gallagher
13    Bassett, just as it was at ESIS, just as it was at ACE,
14    in order to handle that particular claim.
15         Q.     Yeah, and you -- Mr. Heinze, you can call
16    it -- one of the many inelegancies of the example I
17    used in that using Gallagher Bassett you have a sort of
18    different conflict that I wasn't trying to ask about
19    but you answered that more precisely than I had asked
20    it.
21              Let me use a different example.  Instead
22    of Gallagher Bassett, let's say that the same
23    hypothetical except UniFirst now has Sedgwick --
24         A.     Okay.
25         Q.     -- a separate independent TPA.
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
 1          A.      Okay.

 2          Q.      And in the situation -- so we have the

 3    same hypothetical, Sedgwick is UniFirst's TPA, they

 4    have the same agreement between UniFirst and Sedgwick

 5    as exists between Sedgwick and ESIS?

 6          A.      And who is the carrier?

 7          Q.      The carrier is ACE.

 8          A.      Okay.

 9          Q.      So same carrier ACE.  In that situation a

10    claim file -- a claim gets tendered to ACE and ACE --

11    and a conflict file is set up.  Is the conflict file

12    managed by Sedgwick in this situation or is it managed

13    by ESIS or some other TPA?

14          A.      It would be handled under ordinary

15    customs and practices in the same manner as it was

16    here, Mark.  There would be a conflict file that would

17    be set up by the TPA as well as by ACE in order to make

18    sure that that claim was handled appropriately --

19          Q.      Gotcha.

20          A.      -- and reasonably.

21          Q.      And just so I am clear, though, you said

22    there would be a conflict file set up by the TPA.  Is

23    that the TPA Sedgwick in this -- in this hypothetical?

24          A.      Yes, just as it was by ACE in real -- in

25    the real life.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1              Q.      I gotcha, okay.

 2                      So -- so the fact -- so my understanding

 3      of your position is that the fact that ESIS and ACE

 4      might have had some other independent relationship,

 5      where ESIS handled some claims on behalf of ACE, had

 6      nothing to do -- had no role whatsoever in a conflict

 7      file from ESIS being assigned to these claims; is that

 8      right?

 9              A.      I understand --

10                      MR. WARRINGTON:  Object to form.

11                      Excuse me.

12                      THE WITNESS:  That's quite all right, Al.

13                      Mark, I absolutely understand your

14              question and I understand where you are coming

15              from.  Let me see if I can explain it to you based

16              upon how TPAs work with insurance carriers.  You

17              are right, there was, based upon my understanding,

18              an affiliation between ESIS and ACE but that has

19              absolutely nothing to do with the facts and

20              circumstances of Plaintiff's Third Amended

21              Complaint here or any of ESIS's activities with

22              regard to its duties and responsibilities to its

23              principal, and its only principal, which was

24              UniFirst.  It undertook those responsibilities in

25              accordance with ordinary customs and practices of
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1              third-parties administrators that are under
 2              contract pursuant to a risk management services
 3              agreement.  I have written those agreements, I
 4              have seen them, I have implemented them, I have
 5              audited them, it is the same ones like the ones
 6              that we have.  And in those circumstances the
 7              ownership or the affiliation or the stock,
 8              whatever it may be, that ACE has with ESIS is
 9              totally separate and independent.  And there is
10              nothing, nothing that I have seen in this record
11              where ESIS was not honorable to its
12              responsibilities solely to UniFirst, and without
13              any kind of feeling that it owed anything to ACE
14              because it didn't, either contractually or in any
15              other way.
16      BY MR. BELL:
17              Q.      Got it.
18                      And let me -- let me ask you this way.
19      In the last paragraph there in that -- in that same
20      paragraph, it says:  ESIS had no independent obligation
21      to ACE American.  Likewise, ESIS had no obligation to
22      TSC.
23                      Do you see that?
24              A.      Yes.
25              Q.      And are you saying -- does this statement
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
 1      hold true even with respect to the conflict files?
 2           A.      Yes.
 3           Q.      So even in the conflict files ESIS had no
 4      obligation to TSC?
 5           A.      Its obligation was to UniFirst.
 6           Q.      And it had no obligation to TSC?
 7           A.      No.  The obligation to TSC was the
 8      defense that ACE provided under a reservation of
 9      rights.  TSC had its own independent third-party
10      administrator that was also looking at liability
11      investigations and other activities on TSC's behalf.
12           Q.      Now did -- did you see in the e-mails
13      there are a number of e-mails from ESIS where it says:
14      Esis Inc. is handling this -- this on behalf of Ace
15      American Insurance Company.
16                   Did you see those e-mails?
17           A.      Could you show me one?
18           Q.      Sure.  Let me do this.  This -- I know --
19      I know these documents have been marked previously but
20      I just don't -- I don't have them offhand, so we are
21      going to go ahead and mark them again.  At the next
22      break I will get them uploaded but I am just going to
23      show three of them here and I will give you all the
24      numbers.  And I am just going to share my screen if
25      that works for you.
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
1          A.      Yeah, sure.

2          Q.      I don't have them uploaded.

3          A.      Okay.

4          Q.      Share screen --

5                  Do you see -- do you see my screen,

6   Mr. Heinze?

7          A.      I do.

8          Q.      Okay.  This is -- on the bottom it says:

9   ESIS 007043.

10                 Do you see that?

11         A.      I don't see the bottom of it, Mr. Bell,

12  but I see everything else.

13         Q.      Do you see it now?

14         A.      No.

15                 It's all right.

16         Q.      I will mark it for reference as ESIS

17  7043, but do you see it is Marcia Flagg to Keith

18  Barnes?

19         A.      Yes.

20         Q.      And this will be Exhibit 426 and it is

21  ESIS 7043.

22              (Exhibit 426  -  November 17, 2020 E-Mail.)

23                 THE WITNESS:  Oh, there it is, okay; now

24         I see it at the bottom.

25
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    BY MR. BELL:
 2         Q.      And then see here it says:  Sincerely,
 3    Esis Inc.
 4                 And it says:  Esis Inc. is handling this
 5    on behalf of Ace American Insurance Company.
 6                 Do you see that?
 7         A.      I do.
 8         Q.      And this is for claimant Vicki Parsons?
 9         A.      Yes, it is.
10         Q.      Now when -- when you said they didn't
11    have any relationship with ACE, how do you explain this
12    language here, ESIS is handling this on behalf of ACE
13    American Insurance Company?
14         A.      In some states, Mark, there is a
15    requirement that a third-party administrator place
16    somewhere on its correspondence to the outside world
17    who the statutory underwriting entity is, and that is
18    what I believe this reference is to as well as in the
19    other e-mails in which that reference appears.  In my
20    understanding there was an opportunity of the ESIS
21    claim professionals to have a drop-down menu of their
22    signature line.  And I have the same thing in my
23    company where if you are operating on behalf of someone
24    and you are operating in a state which has those
25    requirements, you can click on the drop-down menu to
```

Alpha Reporting                    800-556-8974
A Veritext Company                www.veritext.com

```
 1      provide information transparently to the recipient of
 2      the communication that the statutory underwriting
 3      company is ACE American Insurance Company.
 4                   It is not correct that ESIS was handling
 5      the matter on behalf of ACE American Insurance Company,
 6      it is just what that signature line says as was
 7      statutorily, I think, required in some of the states.
 8      But from everything else in the record and from all of
 9      the testimony in the record, there was no indication
10      that ESIS ever did any handling of this claim or any
11      others on behalf of ACE American Insurance Company.
12      All of its duties and responsibilities flowed solely
13      and exclusively out of the Risk Management Services
14      Agreement and the General Liability Services
15      Instructions with UniFirst.
16           Q.     All right.  Mr. Heinze, we have been
17      going for an hour and a half, I think now may be a good
18      place to take a break.  Do you want to take -- what do
19      you want to take, five minutes, ten minutes?
20           A.     I will tell you what, can we go off the
21      record and we will have the discussion.
22           Q.     Sure.
23                   THE VIDEOGRAPHER:  We are going off the
24           record, the time is 10:28 a.m.
25                   (Whereupon a break was held.)
```

Alpha Reporting                           800-556-8974
A Veritext Company                      www.veritext.com

```
 1                    THE VIDEOGRAPHER:  We are returning to
 2          the record, the time is 10:42 a.m.
 3     BY MR. BELL:
 4          Q.      Hi, Mr. Heinze.
 5          A.      Hi, Mr. Bell.
 6          Q.      On page -- turn to page 39 of your
 7     Report.
 8          A.      Okay.
 9          Q.      There is the second -- there -- the last
10     sentence in that first bullet point of your language.
11                    MR. PULLIAM:  Graham, we are on page 39
12          of his Report.
13     BY MR. BELL:
14          Q.      Do you see that the last sentence of the
15     first bullet point from your -- from your statement?
16          A.      Yes.
17          Q.      "ESIS never assigned the same claims
18     handler to handle the claim against UniFirst and the
19     claim against TSC."
20                    Do you see that?
21          A.      Yes.
22          Q.      How -- how do you know that to be the
23     case?
24          A.      This refers to what I am saying in the
25     Report that -- where ACE American accepted Tractor
```

Page 69

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 69 of 179 PageID #:
10385

1     Supply's tender for a defense or coverage, that that
2     conflict was -- file was opened up.  So this is exactly
3     that conflict situation, Mark, where a separate ESIS
4     adjustor was continuing to do the liability
5     investigation and the conflict adjustor was there, as I
6     said, to monitor what was taking place in the defense
7     of the claim and to pay the bills -- the defense
8     counsel bills under the deductible program.  So those
9     are the -- what I am referring to there is the -- we
10    are not handling -- not using the same adjustor to
11    represent both entities in that type of a situation
12    where ACE has agreed under a reservation of rights to
13    accept the tender of defense and provide the tender.
14         Q.     Understood.  But how do you know that
15    they -- that they never assigned the same claims
16    handler to handle the claim against UniFirst and
17    the claim against TSC?
18         A.     Because from what I looked at in the
19    record I did not see a -- the conflict adjustors at
20    ESIS being the same person.
21         Q.     How did you know whether it was a
22    conflict -- whether the claim was being handled as a
23    conflict file or as the UniFirst file?
24         A.     Because it would have been in the claim
25    files of those eight matters, I think it was Alissa

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

1    Garrett; Barbara Holderness; Hathaway; Hammond; Munn --
2    sorry, not Munn; Hammond; Atkinson; Brown; I don't
3    remember the others, that where the tender of defense
4    was accepted and the separate claim file was
5    established for the purpose of the conflict file.
6         Q.     And did you look through all eight claims
7    from both the UniFirst claim handler and the ESIS -- or
8    I am sorry, the conflict file?
9         A.     Yes.
10        Q.     What format were those documents in that
11   you looked at?
12        A.     In the Relativity Database.
13        Q.     Did you look through any of the ACE claim
14   files?
15        A.     If they were in the Relativity Database,
16   yes.
17        Q.     Do you know what was in the Relativity
18   Database?
19        A.     I think it is everything that has been
20   produced during the course of pretrial discovery.
21        Q.     How long did that take you to go through
22   all of those?
23        A.     I think -- I -- I have not totalled up
24   all the time yet but it is probably close to 120, 130
25   hours by now.

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1          Q.      Now did ESIS assign adjustors that had
 2     handled UniFirst matters to conflict files?
 3          A.      I would have to go back and take a look,
 4     I don't recall.
 5          Q.      Would -- would there be anything wrong
 6     with that?
 7          A.      No.
 8          Q.      And, again, ESIS -- because I guess ESIS
 9     had no duties to TSC anyway, right?
10          A.      Right.  All of TSC's third-party
11     administrative activities were undertaken by Gallagher
12     Bassett, and its -- they also had separate defense
13     counsel on their behalf looking out for their
14     interests.
15          Q.      Who -- who opened a conflict file, ACE or
16     ESIS?
17          A.      Most of the time both.
18          Q.      So there were two separate conflict files
19     going on?
20          A.      That's my understanding, yes.
21          Q.      And then who -- who made the decision
22     that a conflict file was needed at ESIS?
23          A.      When there was an acceptance by ACE of
24     the tender under a reservation of rights.
25          Q.      And you would agree with me that ESIS was
```

Page 72

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 72 of 179 PageID #:
10388

```
 1      copied on communications with UniFirst about coverage
 2      decisions, right?
 3              A.      Yes.
 4              Q.      Did ESIS ever object to discussions
 5      between UniFirst and ACE concerning coverage decisions?
 6              A.      What do you mean by "object," Mark?
 7              Q.      Did they ever say, hey, guys -- you know,
 8      did they ever make any objection about, hey, this is,
 9      you know -- we shouldn't be having these conversations
10      or otherwise?
11              A.      No, I didn't see that.
12              Q.      Should ESIS have objected to discussions
13      between UniFirst and ACE concerning coverage decisions?
14                      MR. BELL:  Form.
15                      MR. WARRINGTON:  Object to the form.
16                      THE WITNESS:  There were no
17              communications that I recall, Mark, where there
18              were discussions of coverage.  ESIS was copied on
19              coverage determinations or drafts of coverage
20              letters that would be provided, but they were not
21              involved or engaged in making any of those
22              coverage determinations.
23      BY MR. BELL:
24              Q.      I want to show you a document that has
25      previously been marked Exhibit 344; it should be in
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1      your share file now if you open it.

 2                   THE COURT REPORTER:  What file -- what

 3           number is it?

 4                   MR. BELL:  Exhibit 344.

 5                   THE COURT REPORTER:  Thank you.

 6                   THE WITNESS:  Okay, I have it.

 7      BY MR. BELL:

 8           Q.      Do you see on this -- take as much time

 9      as you need to read it.  Let me know when you have had

10      a chance to review it.

11           A.      Okay.

12                   Okay, I have read it.

13           Q.      Okay.  So on the -- on the bottom of the

14      first page there is an e-mail from Francesca Rivela; do

15      you see that?

16           A.      I do.

17           Q.      And it says:  Please find attached

18      the denial letter for the above-referenced loss.

19      Please review and let me know if you would like me to

20      schedule a phone conference to discuss further with all

21      applicable parties for the coverage determination.

22                   Do you see that?

23           A.      I do.

24           Q.      So how do you say that there was not

25      any -- that there was not any discussion with the --
```

Page 74

Alpha Reporting                      800-556-8974
A Veritext Company                   www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 74 of 179 PageID #:
10390

```
 1     with UniFirst and ESIS concerning coverage
 2     determinations?
 3          A.     Well, all this tells me is that there is
 4     a question as to whether a telephone call should be
 5     scheduled, not that there was.  And particularly I
 6     don't recall in reviewing the entirety of this record,
 7     Mark, where ESIS got involved in any kind of coverage
 8     determinations other than to perhaps offer information
 9     with regard to outstanding liability investigations
10     that were taking place before a coverage letter would
11     be issued but they did not get involved in interpreting
12     the policy or in suggesting what should be or not be
13     included in a reservation of rights letter or in a
14     denial letter.
15          Q.     Did -- so you -- ESIS didn't get involved
16     in what should be in a reservation of rights letter or
17     a denial letter; is that right?
18          A.     That's right.
19          Q.     Was UniFirst involved in what should be
20     in a denial letter or a reservation of rights letter?
21               MR. PULLIAM:  Object to the form.
22               THE WITNESS:  I think this letter speaks
23          for itself in terms of what Ms. Rivero is
24          referring to but, again, this is more a comment
25          with regard to a liability situation as opposed to
```

Page 75

Alpha Reporting                          800-556-8974
A Veritext Company                      www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 75 of 179 PageID #:
10391

```
 1            interpreting whether a particular coverage grant

 2            or insuring agreement or exclusion or endorsement

 3            applies.

 4      BY MR. BELL:

 5            Q.      But this -- this is also speaking to the

 6      liability issue, is it not?

 7            A.      Yes.

 8                    MR. PULLIAM:  Object to form.

 9                    THE WITNESS:  I mean, the letter speaks

10            for itself but it basically has Ms. Rivela sending

11            a denial letter to the recipients and asking

12            whether there should be a telephone call.

13      BY MR. BELL:

14            Q.      Right.  And if we scroll up to the next

15      e-mail, it is an e-mail from Ms. Rivero to Ms. Rivela,

16      right?

17            A.      Right.

18            Q.      And Ms. Rivero is at UniFirst?

19            A.      Right.

20            Q.      And she says:  Under "The Claim":  We

21      cannot say that "It is our understanding UniFirst

22      delivered the mat in question...".  I would suggest

23      replacing this by saying something to the effect that

24      UniFirst had completed a delivery of mats to Tractor

25      Supply 9/04/18 prior to the alleged accident [sic].  If
```

Page 76

1    the mat at issue is later determined to be a UniFirst

2    mat, it would have been in...

3                    And then below it says:  Again, we cannot

4    admit this involves our mat and as such would not want

5    to make any admission of facts that we would find

6    ourselves later having to defend because of this error.

7                    Do you see all of that?

8         A.      I do.

9         Q.      And so this is -- you would agree with

10    me, this is related to UniFirst's liability; is that

11    right?

12                    MR. PULLIAM:  Object to the form.

13                    THE WITNESS:  Yes.

14    BY MR. BELL:

15         Q.      And is it ESIS's job to determine the

16    liability of UniFirst?

17         A.      ESIS is the collection of information

18    after which a review of a liability determination can

19    be made, so they are involved in the process of

20    collecting the facts, undertaking the investigation and

21    making a recommendation in their responsibilities under

22    the Services Agreement to UniFirst.

23         Q.      The changes here, would you not agree

24    with me, that this has an impact on coverage for

25    Tractor Supply?

Alpha Reporting                              800-556-8974
A Veritext Company                        www.veritext.com

```
 1                    MR. PULLIAM:  Object to the form.
 2                    MR. WARRINGTON:  Join.
 3                    THE WITNESS:  No.  The letter --
 4            the e-mail and the letter and the wording that is
 5            used speak for themselves, but the way I reviewed
 6            it when I read it was that this was information
 7            that Ms. Rivero was communicating to Ms. Rivela in
 8            terms of what should be included in the letter as
 9            respects any potential liability of UniFirst based
10            upon the demands that were made and the
11            information that had been collected.
12    BY MR. BELL:
13            Q.    So you don't think that this letter has
14    an impact on coverage?
15                    MR. PULLIAM:  Object to the form.
16                    THE WITNESS:  I don't believe this letter
17            has an impact on coverage standing in itself.  The
18            coverage issues and the facts pertaining to
19            liability are two separate things.  The facts
20            pertaining to liability had been -- had
21            collected -- collected by ESIS and provided to
22            UniFirst.  Once the tender was received, ACE then
23            took that information, reviewed it, and wanted to
24            have a letter denying coverage set forth, but this
25            particular language here relates to a potential
```

Alpha Reporting                                800-556-8974
A Veritext Company                         www.veritext.com

1          liability and not with regard to coverage.

2          Coverage is separate and distinct from liability.

3     BY MR. BELL:

4          Q.     All right.  The next document I want to

5     show you is Exhibit -- it has been previously marked

6     Exhibit 343, you should have it in your folder.

7          A.     I do.

8          Q.     Do you see it okay?

9          A.     Yes.

10         Q.     Okay.  Just let me know after you have

11    had a chance to review it.

12         A.     Okay.

13         Q.     I am not going to ask you the details of

14    what Marcia Flagg said in all of her writings, so I am

15    not -- it is not a memory quiz on that, but I just want

16    you to be able to review it.

17         A.     All right.  So we are going to look at

18    the second page, then, as opposed to the first, right?

19         Q.     We are going to look at both pages.

20         A.     Okay.  Where would you like me to start?

21         Q.     Just on this -- this Marcia Flagg e-mail,

22    April 12th, 2018.

23         A.     Okay.

24         Q.     The subject:  NEW carrier referral to

25    address tender, our client:  UniFirst Corporation,

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

1      Claim --

2                   -- claim number, date of loss, et cetera,

3      et cetera.

4             A.     Right, the Patricia Padgett claim.

5             Q.     Yeah.  And then there is a description of

6      the accident, right?

7             A.     Yes.

8             Q.     There is a result of investigation

9      and liability assessment.

10            A.     Correct.

11            Q.     And then there is some additional notes

12     and details and descriptions of the incident.

13            A.     Pertaining to the video that was

14     reviewed.

15            Q.     Right.

16            A.     Yes.

17            Q.     Okay.  And then the next e-mail is an

18     e-mail from Gregg Aronson to Marcia Flagg.  And Marcia

19     Flagg is at ESIS, right?

20            A.     Yes.

21            Q.     Okay.  And he says, "Chubb file is" --

22     that claim number.  "I'll send you a proposed letter.

23     Contact me with any questions."

24                   Do you see that?

25            A.     I do.

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 80 of 179 PageID #:
10396

1        Q.      And then it says -- the next e-mail is
2    Marcia and Margarita, "Please see attached proposed
3    response to the tender.  Let me know your thoughts.
4    Thanks."
5             And then Ms. Rivero responds, "We agree
6    with the attached response to the tender, please
7    proceed as outlined.  Can you please add Barbara
8    Christman to the distribution list?"
9             Do you see all of that?
10       A.      I do.
11       Q.      So in this situation we are -- was
12   there -- was ACE influenced by any investigation of the
13   incident conducted by ESIS?
14             MR. PULLIAM:  Object to the form.
15             THE WITNESS:  To whatever extent a
16         coverage determination was made by Mr. Aronson
17         with regard to information that he had received
18         pursuant to the liability investigation ESIS had
19         conducted for UniFirst would have to be a question
20         that would be asked to Mr. Aronson.  I did not see
21         in my review of the record that any of the
22         liability investigation adversely or prospectively
23         caused ACE to make a determination as to what its
24         coverage grant provided coverage for or did not
25         provide coverage for to Tractor Supply; those were

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          separate decisions that were made.

 2

 3     BY MR. BELL:

 4          Q.     So do you think that -- that the -- did

 5     the -- that investigation and report and description by

 6     ESIS, did that have any bearing on ACE's determination

 7     on liability?

 8          A.     It may have.

 9          Q.     Okay.  And so if I can go back to your

10     Report to page -- back to page 39 on Exhibit 425; are

11     you with me?

12          A.     Yes.

13          Q.     Okay.  On the second bullet point there

14     of what you have written, you said:  There is no

15     indication in any of the claim files that the actions

16     and decisions by the claim professionals at ACE

17     American were influenced by any conduct, activity or

18     factual investigation of the incident conducted by

19     ESIS.

20                 Do you see that?

21          A.     I do.

22          Q.     How do you square that statement with,

23     for instance, that e-mail that we just looked at?

24          A.     Because what ACE is doing is responding

25     to a tender of defense and making a coverage
```

Page 82

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 82 of 179 PageID #:
10398

```
 1    determination based upon the information they have
 2    before them.  The information that they have was
 3    collected under the generally accepted customs and
 4    practices of third-party administrators and claim
 5    professionals in trying to determine through video
 6    evidence, interviewing of witnesses, information
 7    received from Gallagher Bassett and Tractor Supply with
 8    regard to how this incident occurred; that information
 9    is then provided and a coverage determination is then
10    made.
11              I did not see anything in the liability
12    investigation conducted by ESIS on behalf of UniFirst
13    that influenced or in any other way caused ACE to take
14    a particular coverage position.  That was something
15    that ACE did on their own based upon the clear and
16    express language of the coverage grants, endorsements
17    and exclusions and definitions of their policy.
18         Q.    Okay.  So -- but the statement you said
19    here is that:  There is no indication in any of the
20    claim files that the actions and decisions by the claim
21    professionals at ACE American were influenced by any
22    conduct, activity or factual investigation in the
23    incident conducted by ESIS.
24              Do you see that?
25         A.    Correct.  I do.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
1          Q.      How -- how do you -- what do you mean
2     that ESIS' factual investigations didn't impact any
3     decision made by ACE?
4          A.      What I am saying is that they did not
5     influence the conduct, activity that ACE undertook with
6     regard to determining whether or not to accept the
7     tender under a reservation of rights pursuant to the
8     terms, conditions and exclusions of its policies.
9          Q.      Okay.  So -- so would you -- would you
10    qualify or clarify this paragraph to say that this as
11    it relates to coverage decisions?
12         A.      Yes.
13         Q.      Okay.
14         A.      That's what I -- that's what I am
15    responding to here.  That if you look at Mr. Fey's
16    initial bullet point at the top, it talks about ACE
17    denying Tractor Supply's additional insured status and
18    that those were based upon ESIS's claim investigation
19    and directly influenced by UniFirst as evidenced by the
20    communications.  He doesn't cite to any but it is
21    something that is related back to the report that he
22    has provided.  And as I looked at this, Mark, I did not
23    see any factual investigation that was conducted by the
24    ESIS claim professionals on behalf of UniFirst that
25    adversely or proactively influenced ACE to make a
```

Page 84

Alpha Reporting                 800-556-8974
A Veritext Company            www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 84 of 179 PageID #:
10400

1    coverage determination based upon their independent

2    evaluation of the information they had before them at

3    the time.

4         Q.    You are talking about the independent

5    investigation; the information for that independent

6    investigation that ACE conducted, where did that

7    information come from?

8         A.    Well, it came from a variety of sources.

9    It came from Gallagher Bassett, it came from Tractor

10   Supply and it came from ESIS.

11        Q.    And do you see any communications about

12   individual claims and background from Tractor Supply to

13   ACE directly?

14        A.    No, everything went through Gallagher

15   Bassett and ESIS.  But when you asked me what

16   information they reviewed, that is a collection of

17   information that they took from the sources from which

18   it was received.

19        Q.    Let me ask you this.  In Relativity,

20   going through all of those documents, did you see

21   anywhere in -- in the documents any investigation into

22   liability conducted by an ACE representative?

23        A.    I would have to go back and take a look,

24   Mark, I honestly don't recall.

25        Q.    You don't recall any sitting here today,

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1      right?

 2             A.      Right.

 3             Q.      But you do recall --

 4             A.      There are 60 claims that were tendered

 5      and 50 -- over 50,000 documents that I reviewed.  I

 6      would have to go back and take a look to research your

 7      question.

 8             Q.      But you -- you do recall seeing that

 9      there was investigations into liability conducted by

10      ESIS for the files -- or for the claims?

11             A.      That was conducted by ESIS as well as by

12      Gallagher Bassett on behalf of Tractor Supply, that's

13      correct.

14             Q.      Sure, okay.

15                     So if you don't recall any investigation

16      being conducted by ACE --

17             A.      I didn't say that.

18             Q.      Oh, what did you say?

19             A.      I just -- I just said I don't recall

20      sitting here today whether there were any.

21             Q.      Okay.  So you don't recall sitting here

22      today whether there was any investigation by ACE into

23      the liability for each of these individual claims?

24             A.      Whether there was or there wasn't, I just

25      don't recall sitting here at the moment.  I would have
```

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

1    to go back through the record and take a look.

2        Q.     Let me ask you this.  Should ACE have

3    done its own investigation into the liability?

4        A.     It depends upon whether the ACE adjustor

5    making a determination in response to the tender of

6    defense by Tractor Supply believed that additional

7    information was necessary or whether it had independent

8    information from the investigation that had been

9    collected on which to make that determination.

10       Q.     And the information it would have -- the

11   independent information would have come from either, I

12   think you said, and correct me if I am wrong, Gallagher

13   Bassett or ESIS?

14       A.     Or Tractor Supply.

15       Q.     Or Tractor Supply.

16       A.     Right.  I mean, I did not see any

17   objection by Tractor Supply in regard to the underlying

18   facts and circumstances pertaining to the claims that

19   were asserted due to the mats in the record documents

20   that I reviewed.

21       Q.     Would you agree with me that ACE then, at

22   least in some of the claims, relied on information

23   provided to it from ESIS?

24       A.     I think ACE took into consideration --

25   and, again, this would have to be something that would

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

1    be asked of the ACE representatives, but from what I

2    reviewed I believe that the ACE claim professionals

3    certainly considered the information they had before

4    them at the time in making their coverage

5    determinations.

6         Q.    And so, I guess, taking that as true, I

7    don't understand how you can say that -- that the

8    actions and decisions by ACE weren't influenced by

9    ESIS?

10        A.    Because ACE is making its own coverage

11   determination separate and apart from the information

12   that is receiving -- that it is receiving based upon

13   the liability investigation that has been conducted.

14        Q.    What impact did the liability decisions

15   have on coverage decisions?

16        A.    The investigation and the facts and

17   circumstances that were obtained were reviewed by the

18   ACE claim professionals in reaching -- among other

19   things, in making their determinations as to coverage.

20        Q.    In certain -- in certain letters from

21   ACE, in tender response letters, there is information

22   in there that says the mat was in the care, custody

23   and control of Tractor Supply for a certain number of

24   days; do you agree with me on that?

25        A.    I do.

                        Alpha Reporting                800-556-8974
                        A Veritext Company             www.veritext.com

```
 1            Q.      That information came from ESIS, did it
 2    not?
 3            A.      No, the information -- well, the
 4    information came either from Tractor Supply, which
 5    would had recorded the receipt of a mat based upon its
 6    delivery by UniFirst, or from UniFirst having made the
 7    delivery to that particular Tractor Supply retail
 8    location.
 9                    Again, as I said, ESIS did not have any
10    skin in the game with regard to coverage decisions
11    here.  It collected the facts, as was its duty and
12    responsibility under its Risk Management Services
13    Agreement with UniFirst, and conducted its activities
14    in accordance with that contract.
15            Q.      Because you said that ESIS had no duties,
16    obligations or otherwise with respect to ACE?
17            A.      Right.
18            Q.      On page 42 of the Report, the conclusion,
19    it says --
20            A.      Yes.
21            Q.      -- it says:  The most appropriate manner
22    in which to examine the appropriateness of the
23    challenged conduct of third-party administrators and
24    its insurance professionals in the handling of
25    insurance claims is not to selectively base an opinion
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1      upon individual e-mails, random facts or attempting to
 2      interpret selective provisions of an insurance policy
 3      without placing everything in context under -- excuse
 4      me -- the totality of circumstances.
 5                    Do you see that?
 6           A.      I do.
 7           Q.      What -- what does that -- what do you
 8      mean "the totality of circumstances"?
 9           A.      Looking at everything in a whole as
10      opposed to selectively -- with all due respect to
11      Mr. Fey, in reading his report and his deposition
12      transcript, it appeared as though there were selective
13      things that Mr. Fey was concentrating on or picking out
14      -- cherry picking to make a point.
15                    In my view the more appropriate way of
16      doing this is on a more objective basis, to let the
17      chips fall where they may and to examine the entirety
18      of the record as a whole, and under those totality of
19      all the circumstances, to then be able to render an
20      opinion as I have in my Report.
21           Q.      Would you agree with Mr. Fey that there
22      are some e-mails that appear problematic?
23           A.      No --
24                    MR. WARRINGTON:  Form.
25                    THE WITNESS:  -- not -- not when --
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1                    I am sorry, Al.
 2                    -- not when you look at everything in the
 3           totality of circumstances, no, I do not.
 4      BY MR. BELL:
 5           Q.      Without looking at everything, if you
 6      were to pick and choose sort of those random e-mails
 7      and things, would you agree that some of those do have
 8      the appearance of impropriety?
 9                    MR. WARRINGTON:  Same objection.
10                    THE WITNESS:  That is a good question,
11           Mark, and here is how I would respond to it.
12                    In -- in these type of circumstances you
13           can't look at things in a vacuum, you have to give
14           context and definition to them.  I can look at
15           anything that I want and make a determination on
16           something but based upon what is before it or
17           after it, it is entirely wrong.  So I have to go
18           and look at everything that I have seen and then
19           be able to render an objective opinion
20           accordingly.
21      BY MR. BELL:
22           Q.      Did you -- and did -- you didn't see any
23      e-mails that appeared problematic in your -- in your
24      view?
25           A.      No, not under the totality of
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    circumstances or when placed into their proper context.

2         Q.      Okay.  But taking them out of

3    the totality of the circumstances, just the e-mails

4    standing alone, anything that seemed problematic?

5         A.      Again, Mark, as I have testified, I -- I

6    can't do that.  I -- I -- I can't just look at one

7    thing and say, oh, this is good or this is bad.  I

8    could have equally have said, well, this is wonderful,

9    this explains everything in just looking at that one

10   single document when, in fact, there are a legion of

11   things that came afterwards that give that an entirely

12   different perspective.  So, no, in looking at it from a

13   totality of circumstances objectively, I did not see

14   any e-mails that to me were problematic.

15        Q.      When looked at in the context of the

16   totality of the circumstances?

17        A.      Correct.

18        Q.      So let me ask you this.  Who -- who

19   should investigate liability determinations on behalf

20   of ACE?

21        A.      Well, I think as I have testified, those

22   liability determinations on behalf of a claim that was

23   tendered by Tractor Supply was first and foremost

24   undertaken by ESIS claim professionals in accordance

25   with their duties and responsibilities under the Risk

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
1       Service Management Agreement.
2                   In the event additional information with
3       regard to the acceptance of a tender of defense were
4       required, the ACE claim professional would in all
5       likelihood then undertake that investigation on their
6       own or work through the appointed defense counsel under
7       reservation of rights to further make those
8       investigations and determinations.
9           Q.      And then who should make decisions on --
10      based -- or settlement authority -- or sorry let me ask
11      it this way.
12                  Who should make settlement decisions
13      involving Tractor Supply as an additional insured?
14                  MR. WARRINGTON:  Form.
15                  THE WITNESS:  That would be done by an
16          ACE representative because that is something that
17          had then been tendered and defended under a
18          reservation of rights.
19      BY MR. BELL:
20          Q.      And what role would ESIS have in -- in --
21      related to settlement of a Tractor Supply claim as an
22      additional insured?
23          A.      In the event there were such a
24      settlement, the ESIS conflict adjustor would pay the
25      defense bills and the liability adjustor in all
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

1  likelihood would pay the settlement amount in

2  accordance with the instructions and the claims fund

3  that was established by UniFirst.

4       Q.    And you said a defense -- I thought you

5  said the conflict adjustor and then the liability

6  adjustor; is that what you said?

7       A.    Yes.

8       Q.    And the liability adjustor, is that the

9  UniFirst adjustor?

10      A.    There are people at UniFirst, like

11  Barbara Christman, who were involved in these type of

12  situations on the denials of claims, but what I am

13  talking about are the ESIS adjustors that are acting on

14  behalf of UniFirst.

15      Q.    I gotcha.  I gotcha, okay; ESIS adjustor

16  on behalf of UniFirst.  All right.

17            So -- so, for instance, if we had a claim

18  -- for instance, there was a settlement involving

19  Mr. -- Mr. Maynard.  Are you familiar with

20  the Mr. Maynard claim?

21      A.    What was his first name?

22      Q.    Jerry?

23      A.    Jerry?  Jerry Maynard.  I remember the

24  name, yes.

25      Q.    There was ultimately a settlement that

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 94 of 179 PageID #:
10410

```
 1    was issued to Mr. Maynard; are you -- are you familiar
 2    with that?
 3           A.      Yes.
 4           Q.      Okay.  So -- and some of the settlement
 5    was paid by Tractor Supply, some of it was paid by
 6    UniFirst; are you -- are you familiar with that?
 7           A.      There were joint settlements, yes; there
 8    were a number of those, uh-huh.
 9           Q.      So in that situation, how -- what role --
10    and, for instance, the Maynard case, what role did ESIS
11    have in obtaining settlement dollars for Tractor Supply
12    as an additional insured?
13           A.      I would have to go back and look at the
14    file, Mark, and see what the communications were and
15    what the instructions were.
16           Q.      How should it have worked?
17                   MR. WARRINGTON:  Form.
18                   THE WITNESS:  It depends upon what was
19           known at the time and the settlement decisions
20           that were being conducted at the time.
21    BY MR. BELL:
22           Q.      I understand that but as far as under the
23    -- whether it be the -- RMS Agreement or otherwise,
24    how -- how should it -- how should it play out in
25    getting settlement dollars or settlement authority for
```

Alpha Reporting                        800-556-8974
A Veritext Company                   www.veritext.com

1    Tractor Supply as an additional insured?

2         A.     If the amount of money --

3                MR. PULLIAM:  Object to the form.

4                THE WITNESS:  Sorry.

5                -- if the amount of money that was used

6         to settle was within the deductible of UniFirst,

7         the money would be paid out of that deductible

8         fund.

9    BY MR. BELL:

10        Q.     And who controls that deductible fund?

11        A.     UniFirst.

12        Q.     So does the settlement -- the settlement

13   dollars on behalf of Tractor Supply, do they have to

14   come from UniFirst?

15        A.     If it is within the $500,000 or million

16   dollar deductible depending upon the year, it would

17   come out of that claims fund established by UniFirst.

18        Q.     And who would make the decision to -- to

19   settle a case for under that $500,000 deductible

20   amount?

21        A.     It depends on the nature of the claim and

22   what was being tendered.

23        Q.     In the -- in this situation, in the

24   Maynard situation?

25        A.     Again, I would have to go back and take a

Alpha Reporting                      800-556-8974
A Veritext Company                   www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 96 of 179 PageID #:
10412

1    look at the claim file and see.  I don't want to make

2    any suppositions of something that I know exists and

3    will be easily explainable by the documents within the

4    claim file itself.

5         Q.     What information would you need to see to

6    be able to make the determination on the Maynard file?

7         A.     It is not a determination, it is actual

8    -- just reciting what the facts are from the file of

9    what actually happened.

10        Q.     Like -- and when you say "facts from the

11   file," what -- what file are you talking about?

12        A.     The Maynard file that we are talking

13   about.

14        Q.     Gotcha.  But what I am asking is, like,

15   are you talking about the ESIS claim file notes, the

16   ACE claim file notes, the conflict file notes; what are

17   you talking about when you are talking about "the

18   Maynard file"?

19        A.     I would look at the documents in the

20   Relativity database and see what the instructions were

21   and how that settlement was agreed to and how it was

22   funded.

23        Q.     Okay.  And when you say "what the

24   instructions were," what do you mean "what the

25   instructions were"?

                        Alpha Reporting              800-556-8974
                        A Veritext Company           www.veritext.com

1      A.      I believe under that -- under the Maynard
2    file that ACE was defending Tractor Supply under a
3    reservation of rights, and in that circumstance the ACE
4    adjustor and the Tractor Supply/Gallagher Bassett
5    folks, if this indeed was one that was settled with
6    joint dollars, would work out who was paying how much
7    and under what circumstances.  The releases would then
8    be prepared and exchanged and the dollars would be
9    paid.
10     Q.      You said the -- I thought you said the
11   ACE adjustor and Tractor Supply would work out who was
12   paying what; is that what you said?
13     A.      Again, I would have to take a look to see
14   in the actual claim file to see how it worked out.  All
15   I know from what I remember now is that this was a
16   claim that had been tendered under the additional
17   insured demand by Tractor Supply to ACE which accepted
18   it under a reservation of rights.
19     Q.      And when I ask -- and I am not trying to
20   be difficult but when you say you would need to see the
21   claim file, I -- I am wondering what document -- when
22   you say "I need to see the claim file," what -- what
23   claim file do you need to see?
24     A.      I wanted to see the entire claim notes
25   and file relating to Mr. Maynard's claim.

Alpha Reporting                     800-556-8974
A Veritext Company              www.veritext.com

1          Q.     So the entire claim notes and file from

2     ESIS, UniFirst, Tractor Supply or from whom?

3          A.     From what I recall there are -- there

4     were three claims that were set up in Mr. Maynard's

5     situation:  One from ESIS, one from ACE and one by

6     Gallagher Bassett.  I would go back to each of those

7     individual claim files and take a look to answer your

8     question as to how that claim was amicably resolved and

9     what the instructions were and how much each of the

10    parties paid to fully indemnify his claim, in addition

11    to the conflict file.

12         Q.     So -- so you have some recollection of

13    the Maynard file?

14         A.     Only that it exists.  And from what I

15    have just told you, that's the best recollection I have

16    for you.

17         Q.     And do you have any recollection of it

18    being settled ultimately for $600,000?

19         A.     Not off the top of my head, sorry, I

20    don't.

21         Q.     Okay.  Assuming for the sake of argument

22    it was settled for $600,000; 300,000 paid by UniFirst,

23    300,000 paid by Tractor Supply, how -- what -- what

24    role would ESIS have in getting money from ACE to pay

25    that settlement amount?

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1                    MS. CHRISTOPHER:  Objection, form.

 2                    MR. WARRINGTON:  Same.

 3                    THE WITNESS:  I don't know that ESIS had

 4            money that was paid by ACE because that $300,000

 5            would still fall within the UniFirst deductible

 6            but, again, I can't make any speculations without

 7            taking a look at the file itself and giving you a

 8            proper answer.

 9                    MR. BELL:  Let's -- if we can, can we go

10            off the record for five minutes; come back at

11            11:30?

12                    THE WITNESS:  Sure.

13                    THE VIDEOGRAPHER:  We are off

14            the record -- off the record at 11:24.

15                    (Whereupon a break was held.)

16                    THE VIDEOGRAPHER:  We are returning to

17            the record, the time is 11:34 a.m.

18    BY MR. BELL:

19       Q.      Thanks -- thanks for staying with us,

20    Mr. Heinze.

21       A.      Sure, Mr. Bell.

22       Q.      A question for you, on the -- did you

23    review the expert report of Mr. Rambin?

24       A.      Yes, as well as his deposition.

25       Q.      Okay.  He takes the position that if
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    something is rented then there is no coverage under the
2    CGL policy, did you -- did you see that?
3          A.     I did.
4          Q.     What is -- what is your thought related
5    to that position?
6          A.     I don't have a thought on the position
7    because I was not requested to review any kind of
8    coverage determinations or interpret the policy, so I
9    have no opinion on that at all.
10         Q.     But as a, you know, guy who has been
11   doing this for 30-plus years, what are your -- what are
12   your thoughts on it?
13         A.     It is outside the scope of my retention,
14   Mark, with respect -- and, therefore, I don't have any
15   comment or opinion on it.
16         Q.     Have you ever seen that position taken
17   before by an insurer, that if something is rented there
18   is no CGL coverage and it is not your product?
19              MR. WARRINGTON:  Object to the form.
20              MR. PULLIAM:  It mischaracterizes the
21         testimony.
22              THE WITNESS:  It would require me to look
23         at coverage interpretations and the different
24         wordings of different policies written by
25         different insurers at different times based upon

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1              different claims and facts of those claims and the
 2              allegations that are made within the complaints of
 3              additional insured tenders that are being made.
 4              So it would depend upon a variety of factors that
 5              I just don't have before me and I am not able to
 6              make any further comment or opinion on that.
 7    BY MR. BELL:
 8         Q.      Well, it -- it wouldn't require you to
 9    look at a bunch of different forms or anything, I don't
10    think --
11         A.      Well, you have asked me if I have seen it
12    before so --
13         Q.      Yeah.
14         A.      -- again, under various circumstances
15    over the past 40 years I don't -- I don't know whether
16    it is something that I would have seen before but it is
17    nothing that I have been asked to opine upon and it is
18    beyond the scope of my retention.
19         Q.      Okay.  Because you agree with me that
20    this is a standard ISO CG 00 01 form, right, that's at
21    issue?
22         A.      00 01 CGL ISO form, that is the one that
23    is at issue, yes.
24              THE COURT REPORTER:  CG, I am sorry,
25         what?
```

Page 102

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 102 of 179 PageID #:
10418

```
 1                   THE WITNESS:  CG 00, and then a space,
 2          and then 01.
 3                   THE COURT REPORTER:  Thank you.
 4                   THE WITNESS:  Uh-huh.
 5      BY MR. BELL:
 6          Q.      And -- and the your-product language is
 7      unmodified standard ISO CGL language, right?
 8          A.      Again, I'll have to go back and take a
 9      look to see what endorsement was used with regard to
10      the your-product and your-work exclusions but there are
11      definitions within the policy that are standard ISO
12      wordings.
13          Q.      And I am just -- and I -- I am just
14      asking if you have ever seen that -- that or a similar
15      position taken before, that a rented product is not
16      your product under the ISO CGL definition?
17                   MR. PULLIAM:  Object to the form.
18                   THE WITNESS:  Again, Mark, respectfully
19          it is not anything that I have been asked to
20          comment or opine upon and is beyond the scope of
21          my retention, so I don't have any comment or
22          opinion upon that at this time.
23      BY MR. BELL:
24          Q.      I am just asking in 30 years if you have
25      ever seen it before, I am not asking you whether you
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    agree -- and this question is not asking whether you
 2    agree with Mr. Rambin or otherwise, I am just asking
 3    you if you have ever seen that position taken
 4    previously.
 5              MR. WARRINGTON:  Form.
 6              THE WITNESS:  Again, it is outside the
 7         scope of my Report and opinion, outside the scope
 8         of my retention, and I don't have any comment or
 9         opinion further with regard to over the past 40
10         years whether I have ever seen a position like
11         that taken before.
12    BY MR. BELL:
13         Q.    So you have reserved the right to
14    supplement the Report based on coverage
15    interpretations, right?
16         A.    I have reserved my right to supplement or
17    amend my Report based upon any item that counsel may
18    wish me to opine upon.
19         Q.    And you mentioned that one of the things
20    that you had reserved your right to supplement your
21    Report is if Mr. Fey is allowed to testify as to
22    coverage, right?
23         A.    Correct.
24         Q.    Okay.  And so what I am asking you is if
25    you are to supplement your Report based -- and to opine
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    on the opinion of Mr. Rambin, what would your position

2    be?

3            A.      I have not been asked to render that

4    opinion at this time and it is outside the scope of my

5    retention, so I would have to go back and take a look

6    and conduct that research and make that determination

7    based upon my experience, training and knowledge.

8            Q.      What research would you need to do?

9            A.      I would need to take a look at what

10   Mr. Rambin had said, take a look at the policy

11   interpretation, conduct some legal research as to

12   whether the common law of Florida or Tennessee have had

13   any other types of interpretations of that wording and

14   put it into the context of how Mr. Rambin has used it

15   in his opinion and in his deposition testimony.

16           Q.      And you said you would rely on your

17   30-plus years of experience?

18           A.      Yes.

19           Q.      And that's what I am asking you, based

20   upon your 30-plus years of experience, nothing is going

21   to change between whether you have been asked to opine

22   on that or not.  But based on your experience, what is

23   your -- what is your position with respect to whether a

24   rented product is your work?

25           A.      As I have testified, Mark, I don't have

Page 105

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 105 of 179 PageID #:
10421

```
 1    any opinion on that at this time.  I would have to go
 2    back and formulate those opinions based upon a more
 3    intensive review of the information and the documents
 4    that would enable me to support that opinion under the
 5    totality of circumstances.
 6              Q.    Do you know Mr. Rambin?
 7              A.    Yes.
 8              Q.    And how do you know Mr. Rambin?
 9              A.    By reputation.
10              Q.    Do you know him personally?
11              A.    No.
12              Q.    How -- how do you know him by reputation?
13              A.    As a coverage counsel who is known in the
14    insurance industry.
15              Q.    I assume a positive impression?
16              A.    Yes.
17              Q.    I put into your folder Exhibit 415.  Can
18    you open that up and take a look.
19              A.    Sure.  Do you want me to page all the way
20    to the bottom, or what would you like --
21              Q.    Yeah, if you would just so you are
22    familiar with it.  Let me ask you if -- and let me know
23    if you remember that document when you are reviewing
24    it.
25              A.    I do remember the document.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          Q.     Okay.

 2                 MR. WARRINGTON:  Excuse me, Mark, sorry

 3          to interrupt, I don't see a sticker on it.  Is

 4          it --

 5                 MR. BELL:  There is not a sticker on it.

 6                 MR. WARRINGTON:  Oh, okay.

 7                 MR. BELL:  You are right.  It had been

 8          previously marked Exhibit 415 but it does not

 9          appear that there is a sticker on it, but it is

10          ESIS 19202.

11                 THE WITNESS:  I remember seeing this,

12          Mark.

13     BY MR. BELL:

14          Q.     You do?

15          A.     Yes.

16          Q.     Okay.  And what -- what do you remember

17     about it?

18          A.     That I have seen it.

19          Q.     Okay.  This is on the Downey claim; are

20     you familiar with the Downey claim?

21          A.     I am familiar with the fact that

22     Mr. Downey made a claim, yes.

23          Q.     Are you familiar with the settlement of

24     the Downey claim?

25          A.     Not off the top of my head but I do
```

Alpha Reporting                          800-556-8974
A Veritext Company                      www.veritext.com

1    recall that Mr. Downey's claim did resolve.

2         Q.     Then this one -- the -- I think I

3    mentioned -- I mentioned Maynard earlier but Maynard

4    was also settled but Downey is a different claim that

5    was settled.  And do you recall that Downey was settled

6    for $600,000?

7         A.     Not specifically, no.

8         Q.     Okay.  Please scroll down to the bottom

9    of page 19207.

10        A.     Yes.

11        Q.     And that's the first e-mail, it is an

12   e-mail from Steve Beach to Bill Ruskin; do you see

13   that?

14        A.     Yes, yes.

15               THE COURT REPORTER:  I am sorry, to who?

16               MR. BELL:  Bill Ruskin.

17   BY MR. BELL:

18        Q.     And do you -- do you know who Mr. Beach

19   is?

20        A.     A senior claims representative at ESIS.

21        Q.     And is he handling the conflict file?

22        A.     I don't recall.

23        Q.     And, again, we see Steve Beach's e-mail,

24   Senior AGL Claims Representative, and it says:  ESIS on

25   behalf of ACE American Insurance.

                          Alpha Reporting                    800-556-8974
                          A Veritext Company               www.veritext.com

```
 1                    Do you see that?
 2        A.      I do.
 3        Q.      And why did Mr. -- why would this
 4   language be on there, ACE on behalf of -- or "ESIS on
 5   behalf of ACE American Insurance"?
 6        A.      I think just like in the e-mail we saw a
 7   little bit earlier with regard to Ms. Flagg, it was
 8   either based upon a regulatory requirement to advise
 9   what statutory insurer is insuring the entities or it
10   was just a mistake.
11        Q.      And do you know who Mr. Ruskin is?
12        A.      I believe he was the attorney on the
13   case.
14        Q.      That's right, yeah.  The attorney for
15   Tractor Supply?
16        A.      I believe that's correct, yes.
17        Q.      And then the first e-mail says:  Bill,
18   try Chubb rep below, Nicholas D. Maxymuik, Esq.
19                    Do you see that?
20        A.      Yes.
21        Q.      Okay.  All right.  Then if you scroll up
22   to the next e-mail, it starts on -- on 19205.  Let me
23   know when you are there.
24        A.      I am there.
25        Q.      Okay.  It is an e-mail from Bill Ruskin
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1        to Nick Maxymuik at Chubb.
 2             A.      Yes.
 3             Q.      Okay.  So this is on June 20th, 2023?
 4             A.      Yes.
 5             Q.      So --
 6             A.      2022.
 7             Q.      What did I say?
 8             A.      '23.
 9             Q.      Ah, thank you, yes, 2022.
10                     Do you see the second paragraph there?
11             A.      Yes.
12             Q.      It says:  The purpose of our call will be
13        to discuss whether Chubb would be willing to contribute
14        to a settlement of the case without prejudice to its
15        reservation of rights and its coverage position.
16                     And it says, the next paragraph:
17        The co-defendant in the case in UniFirst Corporation,
18        which is also being defended by Chubb but with no
19        reservation of rights.  Plaintiff's demand in the case
20        is an inflated 1.25 million to both defendants.
21                     Do you see that?
22             A.      Okay, sorry, you -- you skipped to the
23        next paragraph; is that right?
24             Q.      That's right, yes.
25             A.      Okay, yes.
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 110 of 179 PageID #:
10426

```
 1            Q.       And so this would be the -- the demand
 2     would exceed the self-insured retention, right?
 3            A.       There is no self-insured retention --
 4            Q.       Sorry.
 5            A.       -- it was a high deductible program.
 6            Q.       Correct, thank you.  But it would exceed
 7     the deductible, right?
 8            A.       That's right.
 9            Q.       Okay.  And so when a claim like this is
10     exceeding the deductible, what role does ESIS have with
11     respect to obtaining settlement dollars for, for
12     instance, the Downey claim on behalf of Tractor Supply?
13            A.       Well, that's -- if -- if this is a tender
14     that has been accepted as it appears, the defense was
15     under reservation of rights, it would be ACE that is
16     making that determination with regard to whether the
17     matter can be amicably resolved based upon the
18     allegations that are contained within the plaintiff's
19     complaint, which is why they would have accepted the
20     tender under reservation of rights in the first place.
21            Q.       So -- so would ACE make the decision as
22     to the amount of settlement dollars to pay?
23            A.       Well, I --
24                     MR. WARRINGTON:  Form.
25                     THE WITNESS:  I am sorry, Al.
```

Alpha Reporting                                800-556-8974
A Veritext Company                          www.veritext.com

```
 1              MR. WARRINGTON:  Object to the form.
 2              THE WITNESS:  It would be something --
 3         again, I would have to take a look at the entirety
 4         of the file, Mark, but it would be something that
 5         in all likelihood would have been done in
 6         conjunction with also defense counsel that was
 7         appointed under the reservation of rights and a
 8         review of the demands that were being made and the
 9         various specials in the claim that are being
10         asserted and whether a matter could be amicably
11         resolved based on those circumstances.
12    BY MR. BELL:
13         Q.     And then as far as if the settlement was
14    below $500,000, who would determine the amount of money
15    to pay on behalf of Tractor Supply towards that
16    settlement?
17         A.     Again, I would have to take a look at the
18    claim file to see what the discussions were among the
19    parties, but if Tractor Supply in conjunction with
20    Gallagher Bassett decided what they would want to
21    contribute, if anything, or -- and/or if they wanted to
22    have the ACE adjustor -- a conflict adjustor determine
23    in the ongoing discussions with counsel what the
24    appropriate amount would be, those would be the types
25    of communications that would be taking place.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          Q.      Okay.  And what role would ESIS have in
 2     those discussions, if any?
 3          A.      I am not aware that they would have any
 4     role in those discussions because their duties and
 5     responsibilities run to UniFirst with regard to the
 6     review of the liability that UniFirst might have with
 7     regard to Mr. Downey's claim.
 8          Q.      And what I am trying to understand is, I
 9     thought you had said earlier, and I might have just
10     misunderstood, that UniFirst makes the decisions for
11     amounts under $500,000; is that -- is that right?
12          A.      It depends --
13               MR. PULLIAM:  Object --
14               THE WITNESS:  I am sorry.
15               MR. PULLIAM:  Objection to form.
16               THE WITNESS:  -- it depends on whether
17          there is a tender of an additional insured status
18          that is being requested by Tractor Supply.  ESIS
19          has a certain amount of monetary settlement
20          authority under the RMS Agreement that it can use
21          to settle claims on behalf of UniFirst.  Over
22          those amounts, and within its deductible, UniFirst
23          makes those determinations.
24               In this situation where it appears there
25          has been a tender of an additional insurance
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 113 of 179 PageID #:
10429

```
 1              status request and accepted by ACE under a
 2              reservation of rights, ACE would certainly be
 3              involved in making those discussions with regard
 4              to how much to contribute on behalf of UniFirst
 5              towards settlement.
 6     BY MR. BELL:
 7          Q.     Okay -- but I hear what you are saying.
 8     And, again, assuming the situation is a tender of AI
 9     status, it has been defended under reservation of
10     rights, I thought you had said that -- that ACE would
11     be involved with respect to the settlement as to
12     UniFirst?
13          A.     Yes.
14          Q.     But what about --
15               MR. PULLIAM:  Object to the form.
16               THE COURT REPORTER:  Who just said that?
17               MR. PULLIAM:  Andy Pulliam.
18     BY MR. BELL:
19          Q.     But with respect to Tractor Supply, what
20     role would UniFirst have?
21          A.     If the additional insured tender has been
22     accepted by ACE under a reservation of rights, ACE
23     would be involved in making those decisions, and in its
24     discussions with UniFirst as I have seen within the
25     file where those communications are taking place.
```

Alpha Reporting                         800-556-8974
A Veritext Company                    www.veritext.com

```
 1        Q.      ACE would discuss with UniFirst the
 2   amount to pay on behalf of Tractor Supply in a
 3   settlement?
 4                MR. PULLIAM:  Object to the form.
 5                THE WITNESS:  Again, I have to go back
 6         into the file and see exactly what was done in
 7         this situation and who made settlement
 8         communications and where the authorities were and
 9         to whom they were given.
10   BY MR. BELL:
11        Q.      Okay.  So looking at this -- so in
12   Downey -- let's just talk about Downey specifically.
13   Downey is a case where ACE is defending under a
14   reservation of rights, right?
15        A.      Pursuant to the allegations set forth in
16   Mr. Downey's Complaint.
17        Q.      Right.  So in the Downey situation, what
18   role would ESIS have in determining the settlement
19   amount payable on behalf of Tractor Supply by ACE?
20                MR. WARRINGTON:  Object to the form.
21                THE WITNESS:  Again, to answer the
22         question specifically, I would go back to the file
23         and determine what the file shows with regard to
24         the communications between the parties that are
25         involved.  In this situation, however, since
```

Page 115

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 115 of 179 PageID #:
10431

```
 1          ESIS's responsibilities under the RMS Agreement
 2          run solely to UniFirst corporation, in all
 3          likelihood it would not be involved in making
 4          determinations as to how much settlement authority
 5          should be contributed on behalf of Tractor Supply
 6          in its role as a prospective additional insured
 7          under the ACE policy under a reservation of
 8          rights.
 9     BY MR. BELL:
10          Q.      And, again, you would need to see the
11     file from ESIS and the file from Tractor Supply?
12          A.      And from ACE.
13          Q.      And from ACE.
14          A.      And in all likelihood, since it relates
15     to Tractor Supply, I believe, if I am not mistaken,
16     there was also a Gallagher Bassett file that was also
17     established.
18          Q.      All right.  So scrolling up in this
19     e-mail, go to the next e-mail from Bill Ruskin, June
20     24th at 4:12; do you see that?
21          A.      Yes.
22          Q.      It says:  Hi Nicholas, I am available
23     this coming Monday or --
24               THE COURT REPORTER:  I am sorry.  I am
25          sorry, Mark, I am having a really tough time with
```

Alpha Reporting                    800-556-8974
A Veritext Company            www.veritext.com

```
 1              those.

 2                    MR. BELL:  Yeah.

 3      BY MR. BELL:

 4         Q.      He says, the second sentence:  If there

 5      is someone else at ACE -- Chubb/ACE that I should be

 6      speaking with about the settlement of this matter on

 7      behalf of Tractor Supply Company, an additional named

 8      insured on your policy, kindly advise me.

 9                    Do you to see that?

10         A.      I do.

11         Q.      So Mr. Ruskin here is asking the Chubb

12      representative for settlement authority, right?

13                    MR. WARRINGTON:  Form.

14                    THE WITNESS:  No, what he is saying is

15              that he is available to speak with him on either a

16              following Monday or Tuesday afternoon since

17              e-mails were written on a Friday.  But if there

18              was someone else at the insurance company that he

19              should be speaking with about the settlement on

20              behalf of Tractor Supply, that he would like to be

21              informed of that.

22      BY MR. BELL:

23         Q.      The next e-mail is from Mr. Maxymuik to

24      Mr. Beach.

25         A.      Yes.
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
 1            Q.      Do you see that?

 2            A.      Yes.

 3            Q.      He says:  Steve, I need to talk to you

 4      about -- first about this claim before speaking with

 5      Mr. Ruskin.  I have called and left a message on your

 6      voicemail.  Call me Monday so I can discuss this newly

 7      assigned claim to me first and then I will reach out to

 8      Mr. Ruskin depending upon our conversation.  Depending

 9      upon my initial conversation with Steve, it may be

10      beneficial for the three of us to have a phone call.

11                    Do you see that?

12            A.      I do.

13            Q.      Why -- if ESIS's role is just monitoring

14      the claim, as you said it was in a conflict file,

15      right?

16            A.      And to -- and also for the conflict

17      adjustor to pay the bills.

18            Q.      Pay the bills, okay.

19                    Why would Chubb need to speak with ESIS's

20      conflict adjustor in this matter?

21            A.      Well, I think you need to read the second

22      -- the next part of the e-mail here where he says:

23      Steve - is this case still well within the $500KSIR --

24      which is not correct -- and if so, what is the reason

25      for my involvement at this stage.  I was just
```

Alpha Reporting                   800-556-8974
A Veritext Company              www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 118 of 179 PageID #:
10434

```
 1    reassigned this claim and want to get the "lay of the
 2    land" by my conversation first with the insured's TPA,
 3    close quote.
 4              So here Mr. Maxymuik is clearly stating
 5    that he wants to get more information, get the lay of
 6    the land, understand a little bit more before he has
 7    the conversation with Gallagher Bassett.
 8         Q.    And if the claim was within the $500,000
 9    SIR, who would make the determination as to settlement
10    dollars on behalf of Tractor Supply in the Downey case?
11              MR. PULLIAM:  Object to the form.
12              THE WITNESS:  Again, as I have testified
13         before, Mark, my understanding is that where ACE
14         has agreed to accept a tender of an additional
15         insured under a reservation of rights based upon
16         the allegations set forth within that claimant's
17         complaint, the decision with regard to settlement
18         and the nature and extent of settlement would be
19         undertaken by ACE.
20    BY MR. BELL:
21         Q.    Okay.  Got it.
22              So that -- that -- that's the case even
23    if the amount of settlement to be paid is within the
24    $500,000 deductible?
25              MR. PULLIAM:  Object to the form.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1              THE WITNESS:  In the event that there has
 2         been an additional insured tender, an acceptance
 3         of that tender under a reservation of rights,
 4         that is my understanding.
 5    BY MR. BELL:
 6         Q.    And that's your understanding of -- of
 7    what happened or what should have happened or both?
 8         A.    That's my understanding of what happened.
 9         Q.    And what -- what -- from industry
10    perspective, what should happen?
11         A.    Well, that depends upon what the nature
12    and extent of the contractual responsibilities and
13    duties are of the third-party administrator and any of
14    the general liability special handling instructions
15    they may have been provided, and the instructions they
16    have been given.  It also depends upon the nature and
17    extent of the coverage evaluation that is conducted by
18    the insurance carrier based upon the allegations set
19    forth in the claimant's complaint and whether or not
20    they wish to accept that tender based upon a
21    reservation of rights.
22         Q.    Okay.  But you -- you said that the
23    contractual obligations and everything, you know what
24    all of those contractual obligations are in this case,
25    right?
```

Alpha Reporting                    800-556-8974
A Veritext Company               www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 120 of 179 PageID #:
10436

```
 1              A.      Yes.

 2              Q.      Okay.  And so, what -- so what -- I am

 3      asking again, what -- that is -- you described what did

 4      happen in this situation, and then what I am asking is

 5      what should happen in the typical -- the typical

 6      situation involving this type -- in this type of

 7      situation?

 8              A.      Exactly what happened here.

 9              Q.      Okay.  All right.  And then the next

10      e-mail is from Mr. Ruskin to Mr. Maxymuik on June 25th,

11      2022; are you with me on that one?

12              A.      I am.

13              Q.      So the second paragraph says:  As I

14      understand it, the applicable ACE policy does not have

15      an SIR, but rather has a deductible under the policy

16      that applies to this 1/26/18 date of loss.

17              And it continues, and then it picks up

18      again:  Regardless, it is a deductible...

19              Do you -- do you see that?

20              A.      I do.

21              Q.      "Regardless, it is a deductible to be

22      reimbursed solely by UniFirst after the claim is over,

23      not a self-insured retention as you referenced below.

24      I just wanted to clear that up and make sure that you

25      appreciate that ACE's obligations to Tractor Supply
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 121 of 179 PageID #:
10437

1    Company exists now and they are not in any way affected

2    by any deductible that UniFirst owes as reimbursement

3    under the policy."

4              Do you see all of that?

5         A.    I do.

6         Q.    Do -- do you agree with Mr. Ruskin's

7    statement there?

8         A.    As to what, that this is not a

9    self-insured retention?  I do agree with that and

10   that it is a deductible and that the obligations of ACE

11   are not affected by the deductible program.  It is just

12   a matter that, as he says in that last sentence:  In

13   other words, Tractor Supply Company is entitled to

14   additional insured coverage from ACE as determined by

15   ACE, not UniFirst.

16        Q.    Got it, okay.

17              And then he concludes it by saying:  I am

18   requesting settlement authority from ACE on behalf of

19   Tractor Supply Company.

20              Do you see that?

21        A.    I do.

22        Q.    And ultimately -- ultimately ACE then

23   would make the decision of what dollars to pay on

24   behalf of Tractor Supply in a settlement under

25   the policy; is that right?

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
 1          A.      Yes.
 2          Q.      Okay.  And ESIS would not have any role
 3     in that; is that right?
 4          A.      First of all, let me just go back.  Under
 5     a reservation of rights they would do that, correct.
 6          Q.      Sure.
 7          A.      And ESIS would have no role in that.
 8          Q.      Okay.  Got it, all right.
 9                  Did you -- in your Report, did you -- do
10     you have any opinions with respect to the claims
11     handling done by ACE?
12          A.      No, I was not asked to look at that and
13     that would be beyond the scope of my retention.  My
14     retention was specifically, as I described in my
15     report, to look at the entirety of the record and to
16     render an objective view as to whether the actions and
17     conduct of ESIS and its claim professionals were within
18     the generally accepted insurance industry customs and
19     practices and the standard of care.
20          Q.      Okay.  All right.  And so, then -- then
21     if I ask you any questions about the -- ACE's handling,
22     would you -- what would be your response?
23          A.      That it would be beyond the scope of my
24     retention.
25          Q.      And if I asked you, hey, based on your
```

Alpha Reporting                          800-556-8974
A Veritext Company                      www.veritext.com

1    experience of 30 years and everything else, would that

2    be your -- your response?

3         A.     Yes.

4         Q.     Okay.  You had mentioned earlier the

5    right to supplement your Report.  Is there -- based on

6    our discussions is there anything that you intend to

7    supplement?

8         A.     As a matter of fact there is; thank you

9    for asking.

10              If -- can I refer you, Mark, to page 40

11   of my Report.

12        Q.     Yes.

13        A.     Let me know when you are there.

14        Q.     I am there.

15        A.     Okay.  That first large bullet point,

16   there is a sub bullet that starts "the record

17   documents"; do you see that?

18        Q.     I do.

19        A.     If I go down to the sentence that starts

20   on the left-hand margin "that the ACE policy with

21   Tractor Supply," Tractor Supply should say UniFirst.

22        Q.     I gotcha, okay.  That the ACE policy --

23   yeah, understood.

24        A.     I made a typographical error there, I am

25   sorry.

Alpha Reporting                     800-556-8974
A Veritext Company                www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 124 of 179 PageID #:
10440

1          Q.       No worries.

      2                   Is there anything else that you would

      3      like to supplement as of now?

      4          A.       Not at this time, thank you.

      5          Q.       Do you anticipate supplementing your

      6      report?

      7          A.       It would depend upon my further

      8      conversations with counsel and what they would ask me

      9      to do, and if that were to happen then I am sure we

     10      would have the opportunity of seeing one another again.

     11          Q.       Okay.  And as of now you are not going to

     12      be opining on anyone else's potential liabilities other

     13      than ESIS; is that correct?

     14          A.       Correct.

     15          Q.       And you are not going to be opining on

     16      the strength of anyone else's defenses against Tractor

     17      Supply or the strength of the claims by Tractor Supply

     18      by other defendants; is that correct?

     19          A.       Correct.

     20          Q.       Okay.  So everything -- all of your

     21      testimony is going to be exclusively limited to ESIS's

     22      role and what they did, right or wrong; is that right?

     23          A.       That's correct.

     24          Q.       And it is not going to be related to

     25      policy interpretation, unless supplemented?

                            Alpha Reporting                    800-556-8974
                            A Veritext Company              www.veritext.com

```
 1           A.      Correct.
 2           Q.      And it is not going to be related to
 3    ACE's claims handling?
 4           A.      Correct.
 5           Q.      And it is not going to be related to
 6    UniFirst's conduct?
 7           A.      Correct.
 8           Q.      Or anything related to UniFirst's
 9    Counterclaim?
10           A.      Correct.
11                   MR. BELL:  All right.  Then that is --
12           Mr. Heinze, I appreciate the time, that is
13           everything that I believe I have.
14                   THE WITNESS:  Pleasure being with you,
15           Mark.  Thank you for your courtesies.
16                   MR. BELL:  Thank you.
17                   We will do the swearing off the record.
18                   THE VIDEOGRAPHER:  Any other questions?
19                   MR. PULLIAM:  Yeah, I have got some.
20
21                          EXAMINATION
22    BY MR. PULLIAM:
23           Q.      Mr. Heinze, this is Andy Pulliam.  I
24    represent UniFirst, and I have got some questions,
25    hopefully it won't be that long but --
```

Page 126

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 126 of 179 PageID #:
10442

```
 1          A.       Hi, Andy.
 2          Q.       Mr. Bell just asked you about you are not
 3     going to testify about policy interpretations but he
 4     asked you a lot of questions that involved policy
 5     interpretations, so I think that would negate a lot of
 6     those answers.
 7                Let me -- including the following:  He
 8     asked you a lot of questions about settlement
 9     authority, and you testified, and correct me if I am
10     wrong, that settlement authority would come from ACE
11     whenever a reservation of rights letter -- after a
12     tender but a reservation of rights letter was issued;
13     is that correct what you said?
14          A.       That's my understanding, yes.
15          Q.       Wouldn't settlement authority only come
16     from ACE after the duty to indemnify was found by ACE?
17          A.       Of course.
18          Q.       Okay.  So if the duty to indemnify was
19     never found by ACE regarding any of these 61 claims,
20     ACE would never have had any duty to provide any
21     settlement authority, correct?
22          A.       Correct.
23          Q.       Okay.  So in this Downey case he was just
24     asking you about, the Maynard case he asked you about,
25     are you aware of whether or not a duty to indemnify was
```

Alpha Reporting                           800-556-8974
A Veritext Company                        www.veritext.com

1    ever found -- a duty to indemnify Tractor Supply was

2    ever found?

3          A.      I don't recall seeing that in the files.

4          Q.      Okay.  If I represent to you that a duty

5    to indemnify was not found in any of the 61 underlying

6    claims, including the two that weren't in fact tendered

7    so obviously there could be no indemnity, but if I

8    represent to you in the 59 claims that Tractor Supply

9    actually did tender that a duty to indemnify was never

10   found by ACE -- take that assumption, that a duty to

11   indemnify was never found by ACE regarding any of those

12   59 claims that were tendered, would ACE have had any

13   responsibility to pay any settlement funds, even if it

14   was in the deductible?

15         A.      No.

16         Q.      All right.  Let's see.  I believe you

17   said that in litigation matters -- you referenced

18   eight, I'll say, are you aware that the eight

19   involved -- included the Earlene Brown one that was

20   never tendered?

21         A.      That is correct, yes.

22                 THE COURT REPORTER:  I am sorry, what was

23         the name of that?

24                 MR. PULLIAM:  Earlene Brown.

25                 THE WITNESS:  Earlene Brown,

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          E A R L E N E, Brown.

 2                 THE COURT REPORTER:  Thank you.

 3      BY MR. PULLIAM:

 4          Q.      So the -- in the litigation matters where

 5      ACE provided a defense under a reservation of rights,

 6      the liability investigation by ESIS in all of those

 7      indicated that UniFirst was not liable; are you aware

 8      of that?

 9          A.      Yes, I believe Ms. Brown's claim was

10      settled by Tractor Supply without a tender.

11          Q.      Right, but I am talking about the ones --

12      the other seven, and just FYI, Maynard, Padaway,

13      Atkinson, Perryman, Bell, Downey, Holderness --

14          A.      And what is your question with regard to

15      them, Andy, again?

16          Q.      I am about to get to it.

17          A.      Okay.

18          Q.      In those seven litigation matters where

19      ACE provided defense under a reservation of rights, are

20      you aware that ESIS found no liability on behalf of

21      UniFirst?

22          A.      I believe that is correct, yes.

23          Q.      All right.  I thought you testified that

24      the reservation of rights was issued because the

25      liability investigation by ESIS indicated that damages
```

Page 129

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 129 of 179 PageID #:
10445

```
 1    may have resulted from UniFirst mats?
 2         A.     No, if I -- if I testified to that,
 3    that's incorrect.
 4         Q.     Okay.
 5         A.     The reservation of rights, as I think I
 6    have testified, was based upon the allegations set
 7    forth within the claimant's complaint.
 8         Q.     Right.  In fact, are you aware that none
 9    of ESIS's investigations of these underlying claims
10    found any potential liability of UniFirst?
11         A.     I believe that is also correct based upon
12    my review of the claim files.
13         Q.     Mr. Bell had asked you if -- who did the
14    investigations of claims, and he asked you if the
15    investigation of claims was done by ESIS and I believe
16    you said yes, you said yes on behalf of UniFirst?
17         A.     Correct.
18         Q.     Wasn't there also another TPA, i.e.,
19    Gallagher Bassett, who did investigations of Tractor
20    Supply's claims?
21         A.     Yes.  As I have testified, there was a
22    collection of information that ESIS would have
23    collected both from Gallagher Bassett and its own
24    investigations.
25         Q.     And -- and Tractor Supply either directly
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    or through Gallagher Bassett could have provided any
2    facts it wanted to to ACE, correct?
3         A.     Yes, but I don't remember seeing, as I
4    have testified, any objection or any declaratory
5    judgement action or anything else filed by Tractor
6    Supply with regard to any of those matters.
7         Q.     Well, do -- do you recall seeing any
8    response by Gallagher -- do you recall the tender --
9    tender letters -- or I am sorry, the tender response
10   letters from ACE going to Gallagher Bassett; do you
11   recall those?
12        A.     I do.
13        Q.     Do you recall those, all of them, in
14   fact, saying we are aware of no negligence or defect
15   which caused or contributed to the incident?
16        A.     That's correct.
17        Q.     Are you aware of any Gallagher Bassett or
18   Tractor Supply claim to ACE after any of those tender
19   response letters saying here is additional facts which
20   we think shows the negligence or defect of the mat?
21        A.     I have not seen any of those
22   communications in the claims files that I have
23   reviewed.
24        Q.     But Tractor Supply through Gallagher
25   Bassett was invited to provide such facts, was it not?

                    Alpha Reporting              800-556-8974
                    A Veritext Company        www.veritext.com
Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 131 of 179 PageID #:
                                  10447

```
 1              A.      It was, yes.
 2              Q.      All right, last topic I am going to ask
 3      about is -- Mr. Bell asked you about "resulted from"
 4      means -- and if I am not mistaken, you originally said
 5      that it means that it caused the incident or accident;
 6      do you recall that?
 7              A.      I do.
 8              Q.      Then he and you talked about the
 9      difference between a mat precipitating an incident or a
10      mat being involved in an incident; do you recall that
11      discussion?
12              A.      I do.
13              Q.      Now I want to ask you to be clear because
14      I am confused by your prior testimony.  If a mat
15      precipitated an incident, would that be "resulting
16      from"?
17              A.      No.
18              Q.      Well, if a mat was involved in an
19      incident --
20              A.      It potentially could be.  But, again,
21      that would require me to render a legal opinion which I
22      have not been asked to do.
23              Q.      Okay.  Okay.  So all of those questions
24      about what "resulting from" means, that is actually --
25      you would consider that to be a legal opinion?
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
 1          A.      I would, yes.

 2                  MR. PULLIAM:  Okay.  That's all I have.

 3                  THE WITNESS:  Thanks, Andy; good to see

 4          you.

 5                  MR. BELL:  Quick follow-up if I can,

 6          Andy.

 7

 8                          REEXAMINATION

 9   BY MR. BELL:

10          Q.      I just -- just want to make sure I -- I

11   am clear.  I thought you had testified earlier that

12   "resulting from" means involved in precipitating the

13   result?

14                  MR. PULLIAM:  Object to the form, that is

15          the confusion that I was testifying -- I was

16          asking about.

17                  THE WITNESS:  And if I was confusing, I

18          apologize, counsel.  It is not my intent to render

19          legal opinion here.  I want to stay away from the

20          legal opinions and leave that discussion to you

21          all to undertake with the Court.

22   BY MR. BELL:

23          Q.      All right.  I am with you -- I am just

24   trying -- I guess -- I guess -- I guess we have got the

25   record but I guess maybe I am equally confused then,
```

Page 133

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 133 of 179 PageID #:
10449

```
 1      but that's all I have got.

 2                  MR. PULLIAM:  Nothing further from me.

 3                  MS. CHRISTOPHER:  Nothing from me.

 4                  MR. WARRINGTON:  Mr. Heinze, I have

 5          nothing either, thank you very much.

 6                  THE WITNESS:  Thank you, Al; good to see

 7          you.

 8                  MR. BELL:  Thanks, guys.

 9                  THE WITNESS:  Kelly, David, thank you

10          very much for your help today.

11                  THE VIDEOGRAPHER:  That concludes today's

12          testimony.  We are off the record at 12:14 p.m.

13

14                  (Off the Record at 12:14 p.m.)

15

16

17

18

19

20

21

22

23

24

25
```

Page 134

Alpha Reporting                    800-556-8974
A Veritext Company                www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 134 of 179 PageID #:
10450

```
1                  C E R T I F I C A T E
2       STATE OF TENNESSEE
3
4       COUNTY OF KNOX
5              I, Kelly Forfar, LCR #833, Licensed Court
6       Reporter in and for the State of Tennessee, do hereby
7       certify that the above deposition was reported by me
8       and that the foregoing 134 pages of the transcript are
9       a true and accurate record to the best of my knowledge,
10      skills, and ability.
11             I further certify that I am not related to nor
12      an employee of counsel or any of the parties to the
13      action, nor am I in any way financially interested in
14      the outcome of this case.
15             I further certify that I am duly licensed by
16      the Tennessee Board of Court Reporting as a Licensed
17      Court Reporter as evidenced by the LCR number and
18      expiration date following my name below.
19
20                        Kelly Forfar
21
                          Kelly Forfar, LCR# 833
22                        Expiration Date:  6/30/24
23
24
25
```

Page 135

```
 1    1  Alissa K. Christopher

 2    2  akchristopher@cozen.com

 3    3                       February 13, 2023

 4    4  RE:    Tractor Supply Company  v. Ace American Insurance Company
      Et Al

 5    5      2/8/2023, Bernd G. Heinze (#5672897)

 6    6      The above-referenced transcript is available for

 7    7  review.

 8    8      Within the applicable timeframe, the witness should

 9    9  read the testimony to verify its accuracy. If there are

10   10  any changes, the witness should note those with the

11   11  reason, on the attached Errata Sheet.

12   12      The witness should sign the Acknowledgment of

13   13  Deponent and Errata and return to the deposing attorney.

14   14  Copies should be sent to all counsel, and to Veritext at

15   15  errata-tx@veritext.com.

16   16

17   17   Return completed errata within 30 days from

18   18  receipt of testimony.

19   19    If the witness fails to do so within the time

20   20  allotted, the transcript may be used as if signed.

21   21

22   22                    Yours,

23   23                    Veritext Legal Solutions

24   24

25   25
```

Alpha Reporting                                800-556-8974
A Veritext Company                          www.veritext.com

```
 1    Tractor Supply Company  v. Ace American Insurance Company Et Al

 2    Bernd G. Heinze (#5672897)

 3                    E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____    _____

24    Bernd G. Heinze                             Date

25

                                                  Page 137
```

Alpha Reporting                          800-556-8974
A Veritext Company                       www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 137 of 179 PageID #: 10453

```
1    Tractor Supply Company  v. Ace American Insurance Company Et Al

2    Bernd G. Heinze (#5672897)

3                   ACKNOWLEDGEMENT OF DEPONENT

4        I, Bernd G. Heinze, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____   _____

12   Bernd G. Heinze                         Date

13   *If notary is required

14                   SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                   _____ DAY OF _____, 20___.

16

17

18                   _____

19                   NOTARY PUBLIC

20

21

22

23

24

25

                                            Page 138
```

Alpha Reporting                          800-556-8974
A Veritext Company                       www.veritext.com
Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 138 of 179 PageID #:
10454

| **&** |
|---|
| **&** 1:16,23 2:3,7 |

| **0** |
|---|
| **00** 102:20,22 103:1 |
| **00619** 1:9 4:20 |
| **007043** 66:9 |
| **01** 102:20,22 103:2 |

| **1** |
|---|
| **1** 4:13 136:1 |
| **1.25** 110:20 |
| **1/26/18** 121:16 |
| **10** 136:10 |
| **10,000** 37:7,8 |
| **1050** 1:24 |
| **1099** 17:16 |
| **10:28** 68:24 |
| **10:42** 69:2 |
| **11** 136:11 |
| **110** 7:19 |
| **115** 7:19 |
| **11:24** 100:14 |
| **11:30** 100:11 |
| **11:34** 100:17 |
| **12** 136:12 |
| **120** 71:24 |
| **1221** 2:3 |
| **126** 3:6 |
| **12:14** 134:12 134:14 |
| **12th** 79:22 |
| **13** 136:3,13 |

| **130** 71:24 |
|---|
| **133** 3:7 |
| **134** 135:8 |
| **14** 42:7 136:14 |
| **15** 136:15 |
| **16** 136:16 |
| **1600** 2:4 |
| **17** 3:16 66:22 136:17 |
| **1717** 2:17 |
| **17751** 135:21 |
| **18** 136:18 |
| **19** 51:1 136:19 |
| **1900** 2:13 |
| **19202** 107:10 |
| **19205** 109:22 |
| **19207** 108:9 |
| **1983** 24:13 |

| **2** |
|---|
| **2** 136:2 |
| **2/8/2023** 136:5 |
| **20** 21:10 38:24 42:6 136:20 138:15 |
| **2000** 14:21 |
| **2002** 14:15 |
| **2016** 40:1 |
| **2018** 79:22 |
| **2020** 3:16 40:2 66:22 |
| **2022** 110:6,9 121:11 |
| **2023** 1:2 4:5 110:3 136:3 |

| **20th** 110:3 |
|---|
| **21** 136:21 |
| **214** 2:19 |
| **22** 3:15 136:22 |
| **23** 110:8 136:23 |
| **24** 136:24 |
| **244-6380** 1:18 |
| **24th** 116:20 |
| **25** 136:25 |
| **250** 2:12 |
| **251-5583** 2:14 |
| **251-6675** 1:25 |
| **25th** 121:10 |
| **2700** 1:17 |

| **3** |
|---|
| **3** 136:3 |
| **30** 54:11 101:11 103:24 105:17,20 124:1 136:17 |
| **300,000** 99:22 99:23 100:4 |
| **305** 2:5 |
| **31** 43:19 54:8 54:11 |
| **3100** 2:18 |
| **32** 43:5 54:9 |
| **321** 4:20 |
| **329-1799** 2:5 |
| **3310** 2:8 |
| **33131** 2:4 |
| **333** 1:23 |
| **343** 79:6 |

| **344** 73:25 74:4 |
|---|
| **37201** 1:24 2:13 |
| **37203** 2:9 |
| **37219** 1:18 |
| **38** 57:4 |
| **39** 69:6,11 82:10 |
| **3:21** 1:9 |
| **3rd** 2:12 |

| **4** |
|---|
| **4** 136:4 |
| **40** 102:15 104:9 124:10 |
| **415** 106:17 107:8 |
| **42** 89:18 |
| **425** 3:15 22:2,6 22:18,23 41:24 82:10 |
| **426** 3:16 66:20 66:22 |
| **462-3036** 2:19 |
| **4:12** 116:20 |

| **5** |
|---|
| **5** 3:5 7:20 20:18 136:5 |
| **50** 19:5,6,7,9 50:25 86:5 |
| **50,000** 26:5 86:5 |
| **500,000** 36:4 96:15,19 112:14 113:11 |

Alpha Reporting
A Veritext Company

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 139 of 179 PageID #: 10455

119:8,24
**500ksir** 118:23
**511** 1:17
**550** 2:8
**5672897** 136:5
137:2 138:2
**59** 128:8,12

**6**

**6** 22:11 136:6
**6/30/24** 135:22
**60** 43:17 44:8,9
44:17 50:23
86:4
**600** 7:20
**600,000** 99:18
99:22 108:6
**61** 127:19
128:5
**615** 1:18,25 2:9
2:14
**66** 3:16

**7**

**7** 136:7
**7043** 66:17,21
**75201** 2:18

**8**

**8** 1:2 136:8
**833** 135:5,21
**8th** 4:4

**9**

**9** 136:9
**9/04/18** 76:25
**921-5224** 2:9

**9:08** 4:1,4

**a**

**a.m.** 4:1,4
68:24 69:2
100:17
**ability** 7:23
135:10
**able** 79:16
90:19 91:19
97:6 102:5
**above** 57:9,11
57:23 74:18
135:7 136:6
138:7
**absolutely**
22:12,17 63:13
63:19
**accept** 20:12
70:13 84:6
119:14 120:20
**acceptance**
33:15 72:23
93:3 120:2
**accepted** 8:8
10:12 12:5
23:22 34:1
36:24 45:20,22
46:19 54:14,18
69:25 71:4
83:3 98:17
111:14,19
114:1,22
123:18
**accident** 29:5
44:4,5,13 45:5

45:12,14 76:25
80:6 132:5
**accidents** 38:10
44:17
**accordance**
63:25 89:14
92:24 94:2
**accredited** 19:7
19:8
**accuracy** 136:9
**accurate** 135:9
**ace** 1:10 4:16
5:6 7:2 28:9,11
28:12 29:11,15
29:17 30:16,18
30:20,23 31:6
31:10,12,25
32:5 33:15,18
33:25 34:10
35:11,19 36:17
37:1,14,21,24
38:6,7,9 39:16
39:17 40:2,22
44:20 46:20,24
47:20,23 48:12
49:13,15 50:2
50:9,13,18
51:7,8,13,19,22
52:2,4,7 53:14
54:5,14,18
55:6 56:24
57:12 58:2,5,5
58:16,24 59:4
59:5,9,9 61:13
62:7,9,10,10,17

62:24 63:3,5
63:18 64:8,13
64:21 65:8,14
67:5,11,12
68:3,5,11
69:25 70:12
71:13 72:15,23
73:5,13 78:22
81:12,23 82:16
82:24 83:13,15
83:21 84:3,5
84:16,25 85:6
85:13,22 86:16
86:22 87:2,4
87:21,24 88:1
88:2,8,10,18,21
89:16 92:20
93:4,16 97:16
98:2,3,11,17
99:5,24 100:4
108:25 109:4,5
111:15,21
112:22 114:1,2
114:10,22,22
115:1,13,19
116:7,12,13
117:5,5 119:13
119:19 121:14
122:10,14,15
122:18,22
123:11 124:20
124:22 127:10
127:16,16,19
127:20 128:10
128:11,12

Case 3:21-cv-00619 Document 187-11 Filed 03/01/23 Page 140 of 179 PageID #: 10456

129:5,19 131:2
131:10,18
136:4 137:1
138:1
**ace's** 29:13
32:1 52:20
53:17 59:11
82:6 121:25
123:21 126:3
**acknowledge...**
138:3
**acknowledg...**
136:12
**act** 13:22,24
25:1,2 33:8
58:8
**acting** 10:22
13:12 31:25
49:2 94:13
**action** 131:5
135:13
**actions** 48:9
82:15 83:20
88:8 123:16
**activities** 10:22
12:7 14:12
18:2 19:3,5
24:3 25:18
27:8 29:21
30:22 31:1,15
31:20 33:25
34:7 35:10
36:6,17 48:4
49:3,5 53:24
55:5 56:18

58:9 63:21
65:11 72:11
89:13
**activity** 82:17
83:22 84:5
**acts** 25:5,13
**actual** 97:7
98:14
**actually** 22:6,9
23:25 39:16
97:9 128:9
132:24
**add** 6:18 81:7
**addition** 99:10
**additional**
13:20 28:22
29:11,18,23
30:1,15,23
33:16 34:1
36:1,24 37:12
39:7 48:5,9,24
51:14,20 52:2
52:10 56:8,9
56:11,23 80:11
84:17 87:6
93:2,13,22
95:12 96:1
98:16 102:3
113:17,25
114:21 116:6
117:7 119:14
120:2 122:14
131:19
**additions** 138:6

**address** 79:25
**adhered** 43:9
**adjustor** 34:5
35:6 47:22,24
48:11,12,16,19
48:21 50:11,12
51:17,24 52:4
52:14,21,22
53:3 56:20
61:1 70:4,5,10
87:4 93:24,25
94:5,6,8,9,15
98:4,11 112:22
112:22 118:17
118:20
**adjustors** 15:23
15:24 47:11,14
47:16 70:19
72:1 94:13
**administered**
26:13
**administrative**
12:7 14:12
72:11
**administrator**
10:15,23 13:10
13:13 14:5,13
27:6,10 28:6
29:2 33:8 36:9
38:14 65:10
67:15 120:13
**administrators**
64:1 83:4
89:23

**admission** 77:5
**admit** 77:4
**adverse** 9:20
**adversely**
81:22 84:25
**advise** 109:8
117:8
**affect** 7:23
**affected** 122:1
122:11
**affiliated** 59:4
**affiliation**
63:18 64:7
**afford** 46:25
47:21
**afforded** 29:22
40:2 52:9
**afternoon**
117:16
**agency** 20:22
21:1,3
**agl** 108:24
**agree** 4:11
40:25 41:4
45:19,25 46:2
46:6 72:25
77:9,23 81:5
87:21 88:24
90:21 91:7
102:19 104:1,2
122:6,9
**agreed** 44:20
70:12 97:21
119:14

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 141 of 179 PageID #: 10457

Alpha Reporting
A Veritext Company

800-556-8974
www.veritext.com

**agreement**
  10:10,10 12:8
  33:9 35:22
  37:19,19 49:7
  54:3 55:23
  56:15 58:10,20
  59:25 60:18
  62:4 64:3
  68:14 76:2
  77:22 89:13
  93:1 95:23
  113:20 116:1
**agreements**
  64:3
**ah**  110:9
**ahead**  22:1
  65:21
**ai**  18:17 114:8
**akchristopher**
  2:19 136:2
**aktiengesells...**
  16:17 17:2
**al**  4:17 5:6 30:6
  63:12 91:1
  111:25 134:6
  136:4 137:1
  138:1
**alfred**  2:2
**alfred.warrin...**
  2:5
**alissa**  2:15 5:8
  6:10 70:25
  136:1
**allegations**
  12:2,10 25:9

42:25 102:2
  111:18 115:15
  119:16 120:18
  130:6
**alleged**  76:25
**allegedly**  29:5
**allotted**  136:20
**allow**  39:12
**allowed**  104:21
**amend**  104:17
**amended**  12:3
  25:10 43:1
  63:20
**american**  1:10
  4:16 5:7 9:2
  54:14,18 57:12
  59:5 64:21
  65:15 67:5,13
  68:3,5,11
  69:25 82:17
  83:21 108:25
  109:5 136:4
  137:1 138:1
**amicably**  23:7
  50:23 99:8
  111:17 112:10
**amount**  94:1
  96:2,5,20
  99:25 111:22
  112:14,24
  113:19 115:2
  115:19 119:23
**amounts**
  113:11,22

**andrew**  1:15,21
  5:12
**andy**  5:10
  11:10,13 32:13
  114:17 126:23
  127:1 129:15
  133:3,6
**answer**  34:17
  55:18 60:18
  99:7 100:8
  115:21
**answered**
  61:19
**answers**  127:6
**anticipate**
  125:5
**anybody**  25:15
  26:3
**anyway**  72:9
**apart**  88:11
**apologize**  30:20
  133:18
**appear**  90:22
  107:9
**appearance**
  91:8
**appearances**
  1:13 2:1 4:25
**appeared**  90:12
  91:23
**appears**  67:19
  111:14 113:24
**appended**
  138:7

**applicable**
  11:20,22 13:3
  74:21 121:14
  136:8
**applied**  41:9
**applies**  11:4
  76:3 121:16
**apply**  11:22
**appointed**  93:6
  112:7
**appreciate**
  121:25 126:12
**appropriate**
  7:2 32:22
  89:21 90:15
  112:24
**appropriately**
  62:18
**appropriaten...**
  89:22
**approved**  19:8
**approximately**
  4:1
**april**  79:22
**apulliam**  1:25
**area**  13:7
**argue**  41:14
**argument**
  99:21
**arising**  46:2
**aronson**  80:18
  81:16,20
**arrangement**
  57:12,17,18
  58:2,4,15

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 142 of 179 PageID #: 10458

**arrangements** 58:24
**asked** 9:21 13:21 41:11,16 41:17 61:19 81:20 85:15 88:1 102:11,17 103:19 105:3 105:21 123:12 123:25 127:2,4 127:8,24 130:13,14 132:3,22
**asking** 31:8 76:11 97:14 103:14,24,25 104:1,2,24 105:19 117:11 121:3,4 124:9 127:24 133:16
**aspect** 40:18
**aspects** 48:22 50:13 54:4
**asserted** 87:19 112:10
**assessment** 80:9
**assign** 72:1
**assigned** 47:23 54:22 61:1 63:7 69:17 70:15 118:7
**assist** 18:1 36:8
**assistance** 42:17 55:7

**association** 18:2,7,22,25 20:2,3
**association's** 9:2
**associations** 18:10 19:6,11 19:17,20,24
**assume** 106:15
**assuming** 99:21 114:8
**assumption** 128:10
**atkinson** 71:2 129:13
**attached** 74:17 81:2,6 136:11
**attempting** 90:1
**attention** 13:21
**attorney** 1:16 1:22 2:2,7,11 2:16 24:15,18 109:12,14 136:13
**atypical** 26:2 32:21
**audio** 4:10
**audited** 64:5
**audits** 17:16,18
**auspices** 35:22 36:1
**authorities** 115:8

**authority** 36:21 36:22,25 37:4 37:5,8,13,16,17 37:23 39:17 50:24 51:4,5 93:10 95:25 113:20 116:4 117:12 122:18 127:9,10,15,21
**available** 41:1 116:22 117:15 136:6
**ave** 2:12
**avenue** 2:3,8
**aware** 113:3 127:25 128:18 129:7,20 130:8 131:14,17
**axa** 16:12,13,17 17:1
**axis** 16:7,10

**b**

**b** 2:16 3:12 8:13
**back** 16:20 18:24 21:9,11 21:21,22 22:25 26:6 34:15,16 34:22 35:5,6 39:9 40:23 43:18 72:3 82:9,10 84:21 85:23 86:6 87:1 95:13 96:25 99:6

100:10 103:8 105:5 106:2 115:5,22 123:4
**background** 85:12
**bad** 6:20 7:3 92:7
**bar** 9:2 19:5
**barbara** 71:1 81:7 94:11
**barnes** 66:18
**base** 89:25
**based** 13:12 30:11 46:20 52:16 63:15,17 78:9 83:1,15 84:18 85:1 88:12 89:5 91:16 93:10 101:25 104:14 104:17,25 105:7,19,22 106:2 109:8 111:17 112:11 119:15 120:18 120:20 123:25 124:5 130:6,11
**basically** 23:18 52:5 55:5 76:10
**basis** 14:6 20:17 90:16
**bassett** 38:13 59:14,20,25 60:5,19 61:2

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 143 of 179 PageID #: 10459

61:11,13,17,22
72:12 83:7
85:9,15 86:12
87:13 98:4
99:6 112:20
116:16 119:7
130:19,23
131:1,10,17,25
**battle** 50:1,3,4
50:6
**beach** 108:12
108:18 117:24
**beach's** 108:23
**bearing** 82:6
**beat** 11:11,15
**becoming** 29:7
**beginning**
22:11
**behalf** 5:4 12:7
14:13 17:8
27:14 28:8,17
28:18 29:14
31:5,10 32:1
35:19,20 37:7
37:9,13 39:17
43:23 46:22
47:4 48:15,19
49:2,9,12
52:21 53:17
55:11 56:21
59:11 63:5
65:11,14 67:5
67:12,23 68:5
68:11 72:13
83:12 84:24

86:12 92:19,22
94:14,16 96:13
108:25 109:4,5
111:12 112:15
113:21 114:4
115:2,19 116:5
117:7,20
119:10 122:18
122:24 129:20
130:16
**behaviors** 9:1
**believe** 13:11
30:24 37:6
40:7,23 67:18
78:16 88:2
98:1 109:12,16
116:15 126:13
128:16 129:9
129:22 130:11
130:15
**believed** 58:14
87:6
**bell** 1:15 3:5,7
5:3,3,23 6:4,14
6:21 7:5,8 8:12
10:2,21 11:6
11:13,17,18,23
17:6 18:16,18
18:20 22:20
23:5 29:12
30:17 32:18
34:20 35:1
54:17 57:2
60:12,21 64:16
66:11 67:1

69:3,5,13
73:14,23 74:4
74:7 76:4,13
77:14 78:12
79:3 82:3 91:4
91:21 93:19
95:21 96:9
100:9,18,21
102:7 103:5,23
104:12 107:5,7
107:13 108:16
108:17 112:12
114:6,18
115:10 116:9
117:2,3,22
119:20 120:5
126:11,16
127:2 129:13
130:13 132:3
133:5,9,22
134:8
**beneficial**
118:10
**bernd** 1:1 3:4
5:17 136:5
137:2,24 138:2
138:4,12
**bernie** 4:14
**best** 53:2 99:15
135:9
**beyond** 10:20
102:18 103:20
123:13,23
**big** 18:12,16

**bill** 108:12,16
109:17,25
116:19
**bills** 70:7,8
93:25 118:17
118:18
**bit** 60:16 109:7
119:6
**board** 135:16
**book** 27:5
**boot** 44:2
**bottom** 42:3
53:23 54:11
66:8,11,24
74:13 106:20
108:8
**box** 32:24
**break** 16:23
21:18 35:2
41:2 60:17
65:22 68:18,25
100:15
**brickell** 2:3
**bring** 41:24
**broad** 23:18
**brooke** 30:21
**brown** 2:12
71:2 128:19,24
128:25 129:1
**brown's** 129:9
**bullet** 57:7,8,23
57:23 58:16
69:10,15 82:13
84:16 124:15
124:16

Alpha Reporting
A Veritext Company

800-556-8974
www.veritext.com

**bunch** 102:9
**business** 14:7
17:18 27:5

**c**

**c** 2:2 17:2,3
135:1,1
**california** 20:2
**call** 61:15 75:4
76:12 110:12
118:6,10
**called** 20:10
22:20 27:16
118:5
**camera** 4:7
**cane** 44:2
**care** 8:9 51:10
51:10 88:22
123:19
**career** 42:22
**carrier** 14:5
16:2 27:4 62:6
62:7,9 79:24
120:18
**carriers** 15:21
15:22 19:13
63:16
**case** 4:19 6:23
9:24 12:24
20:23 21:17
23:1 28:4 31:4
48:23 69:23
95:10 96:19
109:13 110:14
110:17,19
115:13 118:23

119:10,22
120:24 127:23
127:24 135:14
**cases** 8:2,14
12:11
**catch** 11:9
**caught** 34:12
**cause** 32:23
**caused** 44:4
45:5,7 46:3
81:23 83:13
131:15 132:5
**ceo** 17:14
**certain** 41:2
44:9 88:20,20
88:23 113:19
**certainly** 39:13
42:20,23,24
48:1 50:20
51:12 88:3
114:2
**certified** 19:5
**certify** 135:7,11
135:15
**cetera** 80:2,3
**cg** 102:20,24
103:1
**cgl** 101:2,18
102:22 103:7
103:16
**challenged**
89:23
**chance** 74:10
79:11

**change** 105:21
137:4,7,10,13
137:16,19
**changes** 77:23
136:10 138:6
**charged** 38:3
**cherry** 90:14
**chips** 90:17
**choose** 91:6
**christensen**
38:21
**christensen's**
39:11
**christman**
38:19 81:8
94:11
**christopher**
2:15 5:8,8 6:15
28:24 60:13
100:1 134:3
136:1
**chubb** 80:21
109:18 110:1
110:13,18
117:5,11
118:19
**circumstance**
61:5 98:3
**circumstances**
29:4 32:16,21
32:22 33:2
41:2 47:1
53:21,22 56:19
61:9 63:20
64:6 87:18

88:17 90:4,8
90:19 91:3,12
92:1,3,13,16
98:7 102:14
106:5 112:11
**cite** 84:20
**claim** 21:2
23:24 27:4
31:20 33:17
35:18,19 44:17
54:22,23 55:8
61:10,14 62:10
62:10,18 67:21
68:10 69:18,19
70:7,16,17,22
70:24 71:4,7
71:13 76:20
80:1,2,4,22
82:15,16 83:4
83:20,20 84:18
84:24 88:2,18
92:22,24 93:4
93:21 94:17,20
96:21 97:1,4
97:15,16 98:14
98:16,21,22,23
98:24,25 99:1
99:7,8,10
107:19,20,22
107:24 108:1,4
111:9,12 112:9
112:18 113:7
118:4,7,14
119:1,8 121:22
123:17 129:9

Alpha Reporting
A Veritext Company

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 145 of 179 PageID #: 10461

130:12 131:18
**claimant** 44:15
67:8
**claimant's**
44:23 119:16
120:19 130:7
**claimants**
39:24 40:22
**claims** 6:19,20
6:23 7:2,3 8:7
11:24 14:12,14
15:5 23:21
24:2,5,8,11,17
24:25 25:2,5
25:13 26:2,12
27:7 28:8
29:23 30:12
37:9 40:3,10
42:21 43:17,25
44:9,9 58:10
59:10 63:5,7
69:17 70:15
71:6 85:12
86:4,10,23
87:18,22 89:25
94:2,12 96:17
99:4 102:1,1
108:20,24
113:21 123:10
125:17 126:3
127:19 128:6,8
128:12 130:9
130:14,15,20
131:22

**clarify** 84:10
**clear** 48:8
62:21 83:15
121:24 132:13
133:11
**clearly** 43:10
43:15 44:7
119:4
**click** 67:25
**client** 79:25
**close** 26:5
71:24 119:3
**closed** 51:2,3
**clyde** 2:3
**clydeco.us** 2:5
**code** 9:2
**collected** 78:11
78:21,21 83:3
87:9 89:11
130:23
**collecting**
77:20
**collection**
77:17 85:16
130:22
**cologne** 16:18
**combs** 1:23
**come** 13:20
25:22 26:1
37:1 85:7
87:11 96:14,17
100:10 127:10
127:15
**coming** 11:21
13:14 63:14

116:23
**comment** 10:24
12:10 58:1,16
75:24 101:15
102:6 103:20
103:21 104:8
**commented**
9:20 57:22
**commenting**
25:8 32:24
**commerce** 1:23
**common** 11:25
12:11,23 42:12
42:23 105:12
**commonwealth**
13:14
**communicating**
50:6,9,11,13,18
51:7 78:7
**communication**
68:2
**communicati...**
49:21,24 50:7
51:17 73:1,17
84:20 85:11
95:14 112:25
114:25 115:8
115:24 131:22
**companies**
17:19 19:6,9
19:13 20:12
**company** 1:7
1:10 4:16,17
16:7,13,21
30:16 59:4

65:15 67:5,13
67:23 68:3,3,5
68:11 117:7,18
122:1,13,19
136:4,4 137:1
137:1 138:1,1
**complaint** 12:3
25:10 43:1
63:21 111:19
115:16 119:17
120:19 130:7
**complaints**
102:2
**complete** 138:8
**completed**
76:24 136:17
**completely**
31:12
**compliance**
25:12 26:8
**complicated**
31:24
**concentrating**
90:13
**concerned**
25:14,16
**concerning**
73:5,13 75:1
**concert** 49:5
58:9
**concludes**
122:17 134:11
**conclusion** 40:6
89:18

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 146 of 179 PageID #: 10462

Alpha Reporting
A Veritext Company

**conclusions**
11:21 25:22
**conditions** 84:8
**conduct** 58:8
82:17 83:22
84:5 89:23
105:6,11
123:17 126:6
**conducted** 4:6
28:14,15 46:21
48:23 51:16,23
56:20 81:13,19
82:18 83:12,23
84:23 85:6,22
86:9,11,16
88:13 89:13
95:20 120:17
**conducting**
49:4
**conference**
74:20
**confine** 48:3
**conflict** 20:13
33:13,14,17,19
34:4 35:18
36:13,21,23
37:11 47:10,14
47:22,24 48:11
48:12,21,25
49:8,16 50:12
50:17 52:3,4
52:14,14,15,22
53:3,10,17
54:22 60:3,5,6
60:7 61:11,18

62:11,11,16,22
63:6 65:1,3
70:2,3,5,19,22
70:23 71:5,8
72:2,15,18,22
93:24 94:5
97:16 99:11
108:21 112:22
118:14,16,20
**confused** 58:13
132:14 133:25
**confusing**
133:17
**confusion** 59:3
59:3,8,8,15
133:15
**conjunction**
112:6,19
**connection** 4:8
**consider**
132:25
**consideration**
42:24 87:24
**considered**
88:3
**consistent**
29:19,20 39:15
**cont'd** 2:1
**contact** 14:11
80:23
**contacting** 38:9
**contained** 12:2
25:9 111:18
**context** 43:19
46:12 90:3

91:14 92:1,15
105:14
**continue** 4:10
**continues**
121:17
**continuing**
19:4,4 70:4
**contract** 16:2
31:12 36:2,8
37:18 55:13,13
55:22 64:2
89:14
**contracted**
31:15 60:20
**contracts** 26:11
**contractual**
10:9 13:11
37:20 58:5,22
61:6 120:12,23
120:24
**contractually**
64:14
**contrary** 58:24
**contribute**
110:13 112:21
114:4
**contributed**
116:5 131:15
**control** 51:11
88:23
**controls** 96:10
**conversation**
118:8,9 119:2
119:7

**conversations**
73:9 125:8
**copied** 73:1,18
**copies** 136:14
**copy** 22:4
**corner** 42:3
**corporate**
19:25 38:18
**corporation**
1:10 5:11 61:3
79:25 110:17
116:2
**correct** 7:11
13:18,19 18:13
21:16 24:16
25:2 27:24
28:19 36:16
38:1 39:5,19
41:19 49:14
53:13 68:4
80:10 83:25
86:13 87:12
92:17 104:23
109:16 111:6
118:24 123:5
125:13,14,18
125:19,23
126:1,4,7,10
127:9,13,21,22
128:21 129:22
130:11,17
131:2,16 138:8
**corrections**
138:6

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 147 of 179 PageID #: 10463

correctly 37:6
51:2
corresponden...
40:21 67:16
counsel 4:15,25
8:22 9:19,20
13:21 20:1,8
55:6 70:8
72:13 93:6
104:17 106:13
112:6,23 125:8
133:18 135:12
136:14
counsel's 9:1
counterclaim
126:9
country 8:14
county 135:4
couple 6:5
course 43:24
71:20 127:17
court 1:3 4:18
4:23 5:2,12,15
6:22 7:4 8:18
9:15,17,18,22
11:5,8 16:19
16:24 17:4
18:14,17,19
22:18,22 30:5
30:8 32:11
42:18 54:15
60:10 74:2,5
102:24 103:3
108:15 114:16
116:24 128:22

129:2 133:21
135:5,16,17
court's 6:20
courtesies
126:15
coverage 8:15
10:17,18 29:18
30:2 31:2,10
32:2 34:8 35:7
35:10 38:4
40:4,15 41:10
41:12,12 44:11
46:16 47:21
50:14 52:7,9
52:19 53:7,11
53:13 54:5,14
54:18 56:8,12
70:1 73:1,5,13
73:18,19,19,22
74:21 75:1,7
75:10 76:1
77:24 78:14,17
78:18,24 79:1
79:2 81:16,24
81:24,25 82:25
83:9,14,16
84:11 85:1
88:4,10,15,19
89:10 101:1,8
101:18,23
104:14,22
106:13 110:15
120:17 122:14
cozen 2:17

cozen.com 2:19
136:2
cradle 19:10
created 54:21
crossover
35:14
ct 4:1
current 23:9
currently 14:3
19:21,22,23
23:12
custody 51:10
51:11 88:22
customs 8:8
10:13 12:5
23:22 42:22
62:15 63:25
83:3 123:18
cv 1:9 4:20

**d**

d 3:1 109:18
dallas 2:18
damages 46:23
129:25
database 71:12
71:15,18 97:20
date 80:2
121:16 135:18
135:22 137:24
138:12
david 2:21 4:22
134:9
davis 1:16
day 138:15

days 88:24
136:17
dealing 8:8
23:23
decided 46:24
112:20
decision 72:21
84:3 96:18
111:21 119:17
122:23
decisions 53:14
73:2,5,13 82:1
82:16 83:20
84:11 88:8,14
88:15 89:10
93:9,12 95:19
113:10 114:23
declaratory
131:4
declare 138:4
deductible
26:10,20,23,25
27:13 28:12
36:3,7 51:5
54:25 58:3
70:8 96:6,7,10
96:16,19 100:5
111:5,7,10
113:22 119:24
121:15,18,21
122:2,10,11
128:14
deemed 138:6
defect 56:1,22
131:14,20

**defend** 44:20
77:6
**defendant**
110:17
**defendants**
1:12,20 110:20
125:18
**defended** 93:17
110:18 114:9
**defending**
33:16 98:2
115:13
**defense** 19:25
34:2,8 35:8,10
36:18 39:2,8
39:15 46:25
48:4,9,23,24
54:24 55:4,6
55:10 56:6,6,7
56:25 61:8
65:8 70:1,6,7
70:13 71:3
72:12 82:25
87:6 93:3,6,25
94:4 111:14
112:6 129:5,19
**defenses**
125:16
**definition**
45:21 91:14
103:16
**definitions**
83:17 103:11
**delivered** 76:22

**delivery** 76:24
89:6,7
**demand** 98:17
110:19 111:1
**demands** 78:10
112:8
**demarcation**
35:13
**denial** 74:18
75:14,17,20
76:11
**denials** 94:12
**denying** 78:24
84:17
**department**
27:4,8
**departments**
19:7
**depend** 102:4
125:7
**depending**
96:16 118:8,8
**depends** 4:6
27:1,3,6 87:4
95:18 96:21
113:12,16
120:11,16
**deponent** 7:16
7:18 136:13
138:3
**deposing**
136:13
**deposition** 1:1
4:5,14,21 7:13
22:7,13 23:2,4

30:22,25 38:17
38:25 39:2
58:18 90:11
100:24 105:15
135:7
**depositions**
7:15,16 29:20
**describe** 23:18
**described**
121:3 123:14
**describing**
14:17
**description**
3:13 80:5 82:5
**descriptions**
80:12
**design** 20:1
**designations**
24:22
**details** 79:13
80:12
**determination**
31:22 43:23
47:20 74:21
77:18 81:16,23
82:6 83:1,9
85:1 87:5,9
88:11 91:15
97:6,7 105:6
111:16 119:9
**determinations**
41:11 56:12
73:19,22 75:2
75:8 88:5,19
92:19,22 93:8

101:8 113:23
116:4
**determine** 11:6
29:4,22 77:15
83:5 112:14,22
115:23
**determined**
77:1 122:14
**determining**
84:6 115:18
**developed**
43:22
**development**
19:2
**difference**
132:9
**different** 8:13
16:13 28:25
33:5,23 46:7
46:13 51:21
61:18,21 92:12
101:23,24,25
101:25 102:1,9
108:4
**difficult** 98:20
**directly** 10:19
84:19 85:13
130:25
**directors** 8:10
**disagreement**
7:6
**disclosure** 22:9
22:10
**discovery**
71:20

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 149 of 179 PageID #: 10465

Alpha Reporting
A Veritext Company

800-556-8974
www.veritext.com

**discuss** 74:20
110:13 115:1
118:6
**discussion** 39:1
43:21 68:21
74:25 132:11
133:20
**discussions**
73:4,12,18
112:18,23
113:2,4 114:3
114:24 124:6
**dismissed** 7:3
**dismissing** 6:20
**dispute** 11:4
**distinct** 79:2
**distribution**
81:8
**district** 1:3,4
4:18,18
**division** 1:5
4:19 16:10
**document**
73:24 79:4
92:10 98:21
106:23,25
**documents**
22:15 65:19
71:10 85:20,21
86:5 87:19
97:3,19 106:3
124:17
**doing** 5:25 6:2
15:19 17:7
19:11 28:21

35:19,20,21
38:4 52:23
53:3 82:24
90:16 101:11
**dollar** 96:16
**dollars** 36:5
95:11,25 96:13
98:6,8 111:11
111:22 119:10
122:23
**domestic** 14:16
14:21 15:2,11
16:5
**domestically**
16:16
**domiciled**
16:14
**dortch** 1:16
**downey** 107:19
107:20,22,24
108:4,5 111:12
115:12,12,13
115:17 119:10
127:23 129:13
**downey's** 108:1
113:7 115:16
**drafts** 73:19
**drew** 5:5
**drop** 67:21,25
**drumel** 2:21
4:22
**due** 87:19
90:10
**duly** 5:18
135:15

**duties** 10:13
13:9 31:11
42:13 49:5
54:1 58:23
63:22 68:12
72:9 89:15
92:25 113:4
120:13
**duty** 8:7 23:23
89:11 127:16
127:18,20,25
128:1,4,9,10

**e**

**e** 3:1,12,16 17:2
17:2,3,3 26:15
29:21 40:21
65:12,13,16
66:22 67:19
74:14 76:15,15
78:4 79:21
80:17,18 81:1
82:23 90:1,22
91:6,23 92:3
92:14 108:11
108:12,23
109:6,17,22,25
116:19,19
117:17,23
118:22 121:10
129:1,1,1
135:1,1 137:3
137:3,3
**earlene** 128:19
128:24,25

**earlier** 14:17
42:10 108:3
109:7 113:9
124:4 133:11
**easily** 97:3
**education** 19:4
19:4
**effect** 12:9
76:23
**eight** 17:24,25
18:1 44:20
46:18 70:25
71:6 128:18,18
**either** 8:23
25:12 64:14
87:11 89:4
109:8 117:15
130:25 134:5
**elliot** 2:6
**else's** 25:18
125:12,16
**employee** 50:18
135:12
**employees**
17:20 29:15,17
30:24 38:8
**enable** 106:4
**endorsement**
51:15 76:2
103:9
**endorsements**
83:16
**engaged** 73:21
**engagements**
23:9,17

Page 12

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 150 of 179 PageID #:
10466

entail 18:23
55:4
entire 42:22
46:12 98:24
99:1
entirely 91:17
92:11
entirety 75:6
90:17 112:3
123:15
entities 61:5
70:11 109:9
entitled 122:13
entity 67:17
equally 92:8
133:25
errata 136:11
136:13,15,17
error 77:6
124:24
esis 1:11 5:9,9
10:14,21,25
12:3,6,11
13:10 22:10
25:14,18 26:3
28:14,16 29:25
30:20 31:5,9
32:4 33:5,12
33:18,22 34:3
35:17 36:8
37:5,23 39:17
39:23 40:21
43:8 46:21
47:5,6,9,11,13
47:16,23 48:11

48:15,19 49:1
49:9,15,25
50:2,8,9,17,24
51:4,7,8,17,23
52:3,14,21
53:2,10,11,16
53:19,24 54:21
54:23 56:20
57:12 58:2,4,7
58:15,22 59:4
59:4,8,10 60:1
60:6,20 61:13
62:5,13 63:3,5
63:7,18 64:8
64:11,20,21
65:3,13,14
66:9,16,21
67:3,4,12,20
68:4,10 69:17
70:3,20 71:7
72:1,8,8,16,22
72:25 73:4,12
73:18 75:1,7
75:15 77:17
78:21 80:19
81:13,18 82:6
82:19 83:12,23
84:2,24 85:10
85:15 86:10,11
87:13,23 88:9
89:1,9,15
92:24 93:20,24
94:13,15 95:10
97:15 99:2,5
99:24 100:3

107:10 108:20
108:24 109:4
111:10 113:1
113:18 115:18
116:11 123:2,7
123:17 125:13
129:6,20,25
130:15,22
esis's 35:25
36:2,10,12
37:2,3 38:17
43:22 44:11
63:21 77:15
84:18 116:1
118:13,19
125:21 130:9
esq 1:15,15,21
1:22 2:2,6,11
2:15,16 109:18
essentially
18:24
establish 16:1
60:18
established
33:14 61:2
71:5 94:3
96:17 116:17
estimates 15:19
et 4:17 80:2,3
136:4 137:1
138:1
europe 16:15
evaluate 16:1
evaluation 34:8
35:7 85:2

120:17
evaluations
41:12
event 33:15
55:25 93:2,23
120:1
evidence 38:8
83:6
evidenced
84:19 135:17
exact 39:10
exactly 20:24
21:3 32:15
39:10 70:2
115:6 121:8
examination
3:5,6 5:22
126:21
examinations
3:2
examine 89:22
90:17
examined 5:18
25:8 42:25
52:20
examining 31:2
example 61:16
61:21
exceed 111:2,6
exceeding
111:10
except 61:23
exceptional
32:22

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 151 of 179 PageID #: 10467

exchanged  98:8
excluded  9:4,22
exclusion  76:2
exclusions
  83:17 84:8
  103:10
exclusively
  48:21 68:13
  125:21
excuse  29:1
  40:13 63:11
  90:3 107:2
exhibit  3:15,16
  8:13 22:1,2,23
  41:24 66:20,22
  73:25 74:4
  79:5,6 82:10
  106:17 107:8
exists  60:1 62:5
  97:2 99:14
  122:1
experience
  13:12 24:17
  105:7,17,20,22
  124:1
expert  3:15 8:2
  8:18 9:5,16
  11:25 17:21
  20:9 22:21,23
  42:15 100:23
experts  17:17
expiration
  135:18,22
explain  63:15
  67:11

explainable
  97:3
explaining
  34:13
explains  92:9
explanation
  42:10
express  10:5,18
  83:16
extent  10:8
  52:8 55:6
  81:15 119:18
  120:12,17

**f**

f  17:3 135:1
facility  23:25
fact  21:25 33:3
  46:21 54:11
  63:2,3 92:10
  107:21 124:8
  128:6 130:8
  131:14
factors  102:4
facts  29:3
  32:25 33:2
  43:10,15,22,25
  44:7 63:19
  77:5,20 78:18
  78:19 87:18
  88:16 89:11
  90:1 97:8,10
  102:1 131:2,19
  131:25
factual  82:18
  83:22 84:2,23

fails  136:19
failure  20:23
  21:2
fair  8:8 23:23
faith  6:20 7:3
  8:7 23:23
fall  90:17 100:5
fallen  29:7
familiar  39:21
  94:19 95:1,6
  106:22 107:20
  107:21,23
far  10:16 11:19
  25:14,15 95:22
  112:13
fault  44:13
fbtlaw.com
  2:14
february  1:2
  4:4 136:3
federation
  19:25
feeling  64:13
fey  10:2 35:14
  42:18 58:13,19
  90:11,13,21
  104:21
fey's  57:21 58:1
  58:25 84:15
file  33:14,17
  34:4 35:18
  36:13,21,23
  37:12 47:10,14
  48:25 49:8,16
  49:19,19 50:17

50:17 52:3,15
  53:10 54:22,22
  60:3,5,6,7
  61:11 62:10,11
  62:11,16,22
  63:7 70:2,23
  70:23 71:4,5,8
  72:15,22 74:1
  74:2 80:21
  95:14 97:1,4,6
  97:8,11,11,12
  97:15,16,16,18
  98:2,14,21,22
  98:23,25 99:1
  99:11,13 100:7
  108:21 112:4
  112:18 114:25
  115:6,22,23
  116:11,11,16
  118:14
filed  4:17 131:5
files  33:13,19
  40:21 44:16,17
  53:17 65:1,3
  70:25 71:14
  72:2,18 82:15
  83:20 86:10
  99:7 128:3
  130:12 131:22
financially
  135:13
find  22:19
  25:11 44:16
  61:5 74:17
  77:5

Case 3:21-cv-00619  Document 187-11  Filed 03/01/23  Page 152 of 179 PageID #: 10468

**fine** 22:17
**finished** 55:18
**fire** 23:24
**firewall** 35:15
  61:1,10
**first** 5:18 6:6
  7:9 15:13,14
  15:16 22:14
  36:4 43:5 57:8
  69:10,15 74:14
  79:18 92:23
  94:21 108:11
  109:17 111:20
  118:4,7 119:2
  123:4 124:15
**fisher** 2:7
**fisher.com** 2:10
**five** 21:21,22
  23:1,14,15
  68:19 100:10
**flagg** 30:16,18
  30:24 66:17
  79:14,21 80:18
  80:19 109:7
**flat** 10:11 55:23
  56:16
**florida** 2:4 11:3
  12:1,14 24:25
  105:12
**flowed** 68:12
**folder** 79:6
  106:17
**folks** 10:25
  29:6 38:6 98:5

**follow** 133:5
**followed** 5:1
**following** 47:12
  117:16 127:7
  135:18
**follows** 5:19
**footnote** 42:7
**foregoing**
  135:8 138:5
**foremost** 92:23
**forfar** 4:24
  135:5,21
**form** 6:8 11:7
  11:11 28:23,24
  30:3,5 32:8
  56:10 60:8
  63:10 73:14,15
  75:21 76:8
  77:12 78:1,15
  81:14 90:24
  93:14 95:17
  96:3 100:1
  101:19 102:20
  102:22 103:17
  104:5 111:24
  112:1 113:15
  114:15 115:4
  115:20 117:13
  119:11,25
  133:14
**formal** 10:16
**format** 71:10
**forms** 102:9
**formulate**
  106:2

**forth** 78:24
  115:15 119:16
  120:19 130:7
**found** 41:12
  56:21 127:16
  127:19 128:1,2
  128:5,10,11
  129:20 130:10
**four** 36:4
**france** 16:14
**francesca**
  74:14
**frankly** 58:20
**friday** 117:17
**front** 22:15
**frost** 2:12
**fully** 99:10
**function** 18:3,4
  19:12
**fund** 94:2 96:8
  96:10,17
**funded** 97:22
**funds** 128:13
**furnishings**
  20:1
**further** 54:24
  55:3,10 56:5
  74:20 93:7
  102:6 104:9
  125:7 134:2
  135:11,15
**fyi** 129:12

**g**

**g** 1:1 3:4 5:17
  17:2,3 136:5
  137:2,24 138:2
  138:4,12
**gallagher** 38:13
  59:14,20,25
  60:5,19 61:2
  61:10,12,17,22
  72:11 83:7
  85:9,14 86:12
  87:12 98:4
  99:6 112:20
  116:16 119:7
  130:19,23
  131:1,8,10,17
  131:24
**game** 89:10
**gamut** 8:12
**garrett** 71:1
**general** 8:10
  10:11 15:23
  45:3 53:25
  58:20 68:14
  120:14
**generally** 8:8
  10:12 12:5
  23:22 45:20,22
  83:3 123:18
**georgia** 14:16
  14:22 15:2
  16:6
**germany** 16:18
**getting** 51:9
  95:25 99:24

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 153 of 179 PageID #: 10469

give  16:22,22
36:21 42:11
65:23 91:13
92:11
given  6:19
115:9 120:16
138:9
gives  29:16
giving  100:7
go  4:11 16:20
18:4 21:8 22:1
39:9 40:23
42:6 43:4,18
57:22 65:21
68:20 71:21
72:3 82:9
85:23 86:6
87:1 91:17
95:13 96:25
99:6 100:9
103:8 105:5
106:1 115:5,22
116:19 123:4
124:19
going  4:4 7:21
16:20 21:9,11
22:2,18 40:15
41:14,24 42:2
45:9 58:11
65:21,22,24
68:17,23 72:19
79:13,17,19
85:20 105:20
125:11,15,21
125:24 126:2,5

127:3 131:10
132:2
good  4:3 5:3,21
5:24 6:3,7 8:7
23:23 68:17
91:10 92:7
133:3 134:6
goods  10:11
55:23 56:16
goolsby  2:11
gotcha  9:23
11:17 14:19
15:4,17 16:4
18:6 19:15
20:19 25:19
35:16 37:15
41:22 44:6,24
45:15,24,24
46:17 47:2
48:13 55:9
56:3 57:3 59:1
62:19 63:1
94:15,15 97:14
124:22
graham  1:22
5:10,14 69:11
grant  76:1
81:24
granted  9:17
grants  83:16
grave  19:10
gregg  80:18
ground  7:13
15:24

group  17:9,12
guess  21:1
39:14 46:10
59:2 72:8 88:6
133:24,24,24
133:25
guy  101:10
guys  73:7 134:8

**h**

h  3:12 17:2,3
137:3
half  68:17
hammond  71:1
71:2
hand  124:20
handle  14:17
24:5 59:10
60:4 61:14
69:18 70:16
handled  26:20
60:6 62:14,18
63:5 70:22
72:2
handler  69:18
70:16 71:7
handling  6:19
6:23 7:2 8:7
23:21 24:2,7,9
24:11,17 26:2
27:16 28:8
35:18,18 54:24
55:3,10 56:5
60:6 61:4
65:14 67:4,12
68:4,10 70:10

89:24 108:21
120:14 123:11
123:21 126:3
hands  50:1,5
happen  120:10
121:4,5 125:9
happened  28:4
38:14 97:9
120:7,7,8
121:8
happy  53:1
hard  22:4
harper  2:16 5:9
hathaway  71:1
head  99:19
107:25
hear  11:14
37:22 114:7
heard  4:9
hearing  35:5
heinze  1:1 3:4
3:15 4:14 5:17
5:24 6:10 7:9
11:1 17:8,12
22:3,20,23
34:13 61:15
66:6 68:16
69:4 100:20
126:12,23
134:4 136:5
137:2,24 138:2
138:4,12
heinze's  11:12
11:14

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 154 of 179 PageID #: 10470

**held** 4:21 68:25 100:15
**help** 43:18 134:10
**hereto** 138:7
**hey** 5:24 73:7,8 123:25
**hi** 69:4,5 116:22 127:1
**high** 26:9,19,23 26:24,25 27:13 28:12 51:5 111:5
**higher** 27:17 54:11
**hire** 59:10
**hired** 59:14
**history** 20:21 49:21
**hold** 65:1
**holder** 21:15
**holderness** 71:1 129:13
**honestly** 7:24 26:7 85:24
**honorable** 64:11
**hopefully** 126:25
**hour** 68:17
**hours** 71:25
**howell** 2:7,10
**huh** 60:22 95:8 103:4

**hypothetical** 32:25 59:21 61:23 62:3,23

### i

**i.e.** 130:18
**idea** 39:14
**iiaba** 18:11,18
**imagine** 22:15
**impact** 77:24 78:14,17 84:2 88:14
**implemented** 64:4
**impression** 106:15
**improper** 29:25 53:19
**impropriety** 91:8
**inappropriate** 31:9,17 32:5
**incident** 43:10 43:15 44:7 45:18 80:12 81:13 82:18 83:8,23 131:15 132:5,9,10,15 132:19
**incidental** 44:5 45:13
**included** 75:13 78:8 128:19
**includes** 22:10
**including** 37:8 127:7 128:6

**incorrect** 27:22 27:23 130:3
**indemnify** 55:25 56:17 99:10 127:16 127:18,25 128:1,5,9,11
**indemnity** 55:12,20,21,22 56:7,14 61:7 128:7
**independent** 15:23 35:13 58:7 61:25 63:4 64:9,20 65:9 85:1,4,5 87:7,11
**indicate** 57:13
**indicated** 46:22 129:7,25
**indication** 44:22 58:17,18 68:9 82:15 83:19
**individual** 31:20 38:10 85:12 86:23 90:1 99:7
**industry** 8:9 23:22 42:23 106:14 120:9 123:18
**inelegancies** 61:16

**inflated** 110:20
**influence** 25:5 84:5
**influenced** 81:12 82:17 83:13,21 84:19 84:25 88:8
**inform** 10:12
**information** 15:25 50:21 51:9 52:18 53:7 68:1 75:8 77:17 78:6,11 78:23 81:17 83:1,2,6,8 85:2 85:5,7,16,17 87:7,8,10,11,22 88:3,11,21 89:1,3,4 93:2 97:5 106:3 119:5 130:22
**informed** 42:23 117:21
**informing** 12:4
**initial** 84:16 118:9
**injured** 29:7
**injuries** 44:14 44:23
**inquiry** 7:1
**instance** 36:20 41:8 59:13 82:23 94:17,18 95:10 111:12

Case 3:21-cv-00619 Document 187-11 Filed 03/01/23 Page 155 of 179 PageID #: 10471

| | | | |
|---|---|---|---|
| **instances** 28:1 | 33:16 34:1 | **interests** 72:14 | 47:19,25 48:14 |
| **instructed** 8:22 | 36:1,24 37:12 | **international** | 48:18 51:16,23 |
| **instructions** | 39:7 48:5,9,24 | 20:1 | 53:16 56:21 |
| 9:19 10:12 | 51:15,20 52:2 | **internet** 4:7 | 70:5 77:20 |
| 53:25 54:1 | 52:10 56:8,11 | **interpret** 9:25 | 80:8 81:12,18 |
| 58:21 68:15 | 56:24 84:17 | 90:2 101:8 | 81:22 82:5,18 |
| 94:2 95:15 | 93:13,22 95:12 | **interpretation** | 83:12,22 84:18 |
| 97:20,24,25 | 96:1 98:17 | 8:24,24 9:8,12 | 84:23 85:5,6 |
| 99:9 120:14,15 | 102:3 111:2,3 | 10:6,16 42:11 | 85:21 86:15,22 |
| **instructor** 19:9 | 113:17 114:21 | 42:12 45:9 | 87:3,8 88:13 |
| **insurance** 1:10 | 116:6 117:8 | 105:11 125:25 | 88:16 93:5 |
| 4:17 8:9,15,15 | 119:15 120:2 | **interpretations** | 129:6,25 |
| 12:5 14:5 16:7 | 121:23 122:9 | 46:16 101:23 | 130:15 |
| 16:13 17:19 | 122:14 | 104:15 105:13 | **investigations** |
| 19:6,7,9,16 | **insured's** 28:21 | 127:3,5 | 15:19,25 30:10 |
| 20:2,12 23:22 | 119:2 | **interpreting** | 30:14 53:16 |
| 24:1,2,21 | **insureds** 30:23 | 39:25 56:13 | 54:4 58:8 |
| 26:10 27:3 | **insurer** 14:16 | 75:11 76:1 | 65:11 75:9 |
| 30:16 42:22 | 14:21 15:2,12 | **interrupt** 37:17 | 84:2 86:9 93:8 |
| 45:4,11,22 | 16:5 24:18 | 107:3 | 130:9,14,19,24 |
| 46:4 56:16 | 26:24 28:1,8,9 | **interviewing** | **invited** 131:25 |
| 61:7 63:16 | 28:10 101:17 | 83:6 | **involved** 15:1 |
| 65:15 67:5,13 | 109:9 | **introduce** 22:1 | 35:6 44:22 |
| 68:3,5,11 | **insurers** 17:8 | **investigate** | 45:12,17 47:19 |
| 89:24,25 90:2 | 21:6 101:25 | 92:19 | 52:19 61:6 |
| 106:14 108:25 | **insuring** 76:2 | **investigating** | 73:21 75:7,11 |
| 109:5 113:25 | 109:9 | 29:10 | 75:15,19 77:19 |
| 117:18 120:18 | **intend** 124:6 | **investigation** | 94:11 114:3,11 |
| 123:18 136:4 | **intensive** 106:3 | 28:7,13,15,22 | 114:23 115:25 |
| 137:1 138:1 | **intent** 133:18 | 29:3,13,17 | 116:3 127:4 |
| **insured** 26:24 | **interactions** | 30:1,10 31:5,9 | 128:19 132:10 |
| 26:25 27:5,7 | 49:15 52:3 | 32:1,4 34:6 | 132:18 133:12 |
| 27:12,15 28:5 | **interested** | 38:4 43:23,24 | **involvement** |
| 28:22 29:11,18 | 135:13 | 44:12 46:21 | 118:25 |
| 29:23 30:1,15 | | 47:4,5,5,9,15 | |

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 156 of 179 PageID #:
10472

Alpha Reporting                                                      800-556-8974
A Veritext Company                                              www.veritext.com

**involves** 77:4
**involving** 8:10
  20:11 24:2
  30:14 34:8
  38:1 44:19
  48:4 93:13
  94:18 121:6
**iso** 102:20,22
  103:7,11,16
**issue** 8:23 13:1
  27:13 29:10
  76:6 77:1
  102:21,23
**issued** 43:1
  53:8 75:11
  95:1 127:12
  129:24
**issues** 6:19 8:6
  10:19 12:10,12
  30:14 31:2
  37:21 52:7,19
  78:18
**item** 104:17
**items** 6:5 9:8

**j**

**j** 1:21,22
**james** 2:16 5:9
**jeremy** 2:11
**jerry** 94:22,23
  94:23
**jgoolsby** 2:14
**job** 77:15
**john** 21:12
**join** 78:2

**joined** 5:4,7
**joint** 95:7 98:6
**judgement**
  131:5
**june** 110:3
  116:19 121:10

**k**

**k** 2:15 17:3
  136:1
**keep** 50:13
**keeping** 9:1
  25:12
**keith** 66:17
**kelly** 4:23
  16:23 34:15
  134:9 135:5,21
**kept** 35:13
**kind** 26:9 46:15
  50:21 58:15
  64:13 75:7
  101:7
**kindly** 117:8
**know** 13:2
  21:17 41:16
  55:17 65:18,19
  69:22 70:14,21
  71:17 73:7,9
  74:9,19 79:10
  81:3 97:2
  98:15 100:3
  101:10 102:15
  106:6,8,10,12
  106:22 108:18
  109:11,23
  120:23 124:13

**knowledge**
  105:7 135:9
**known** 95:19
  106:13
**knox** 135:4

**l**

**l** 17:3,3 129:1
**laid** 11:23
**land** 119:2,6
**language** 67:12
  69:10 78:25
  83:16 103:6,7
  109:4
**lansden** 1:16
**large** 13:7,8
  58:3 124:15
**law** 1:16,22 2:2
  2:7,11,16 11:3
  11:20,22,25
  12:11,23 42:12
  42:23 105:12
**lay** 119:1,5
**layer** 36:7
**lcr** 135:5,17,21
**leads** 40:5
**leave** 9:17
  133:20
**left** 118:5
  124:20
**legal** 8:23 19:4
  45:8 105:11
  132:21,25
  133:19,20
  136:23

**legion** 92:10
**letter** 74:18
  75:10,13,14,16
  75:17,20,20,22
  76:9,11 78:3,4
  78:8,13,16,24
  80:22 127:11
  127:12
**letters** 73:20
  88:20,21 131:9
  131:10,19
**level** 23:19
**liabilities**
  125:12
**liability** 8:11
  8:11 10:11
  15:15 29:4
  30:11 34:6
  35:7 36:13,15
  40:3,10,16
  43:23 46:21
  47:5,15,25
  48:14,18 49:21
  50:11,18 51:8
  51:16 52:21
  53:25 56:20
  58:21 65:10
  68:14 70:4
  75:9,25 76:6
  77:10,16,18
  78:9,19,20
  79:1,2 80:9
  81:18,22 82:7
  83:11 85:22
  86:9,23 87:3

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 157 of 179 PageID #: 10473

88:13,14 92:19
92:22 93:25
94:5,8 113:6
120:14 129:6
129:20,25
130:10
**liable** 129:7
**liaising** 55:6,7
**licensed** 135:5
135:15,16
**lies** 59:3
**life** 62:25
**liked** 22:13
**likelihood**
38:12 93:5
94:1 112:5
116:3,14
**likewise** 64:21
**limitations**
41:5
**limited** 8:17,21
9:12 20:17
30:10 53:24
125:21
**line** 14:7 53:23
67:22 68:6
137:4,7,10,13
137:16,19
**lines** 15:6,7,8
17:18 35:12
**list** 81:8
**listen** 34:18
**litigation** 46:19
49:4 51:1 52:6
52:17 128:17

129:4,18
**little** 26:16
54:10 60:15
109:7 119:6
**llc** 17:9,12
**lloyd's** 14:6,8
14:10,20,25
15:5
**llp** 1:16,23 2:3
2:12
**location** 29:9
89:8
**long** 20:13 24:7
24:9,10 40:18
51:9 71:21
126:25
**look** 8:12 12:19
12:22 21:5,22
21:24 23:13,20
25:17 31:19
32:14,20 33:1
39:9 40:24
41:23 46:11
48:22 53:1,21
71:6,13 72:3
79:17,19 84:15
85:23 86:6
87:1 91:2,13
91:14,18 92:6
95:13 97:1,19
98:13 99:7
100:7 101:22
102:9 103:9
105:5,9,10
106:18 112:3

112:17 123:12
123:15
**looked** 22:13
70:18 71:11
82:23 84:22
92:15
**looking** 20:20
20:21 21:21
22:25 40:1
54:8 65:10
72:13 90:9
91:5 92:9,12
115:11
**looks** 21:10
23:1
**loss** 74:18 80:2
121:16
**lot** 127:4,5,8

**m**

**m** 1:15
**made** 12:11
52:8,10 53:14
72:21 77:19
78:10 81:16
82:1 83:10
84:3 89:6
102:2,3 107:22
112:8 115:7
124:24 138:5
**mail** 3:16 66:22
74:14 76:15,15
78:4 79:21
80:17,18 81:1
82:23 108:11
108:12,23

109:6,17,22,25
116:19,19
117:23 118:22
121:10
**mails** 26:15
29:21 40:21
65:12,13,16
67:19 90:1,22
91:6,23 92:3
92:14 117:17
**main** 2:17
15:16 49:19
**maine** 13:25
14:18
**maintained**
35:15
**make** 6:11
31:21 32:22
34:5,23 35:6
35:12 47:20
48:7 52:17
53:6 62:17
73:8 77:5
81:23 84:25
87:9 90:14
91:15 93:7,9
93:12 96:18
97:1,6 100:6
102:6 105:6
111:21 119:9
121:24 122:23
133:10
**makes** 34:19
113:10,23

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 158 of 179 PageID #: 10474

making   19:3
41:10 46:15
56:12 73:21
77:21 82:25
87:5 88:4,10
88:19 111:16
114:3,23 116:3
managed   62:12
62:12
management
10:9 12:8 18:3
18:8,22 27:7
33:9 35:22
37:18 49:7
54:2 58:10
64:2 68:13
89:12 93:1
managing   19:1
manner   26:12
62:15 89:21
manufacturing
23:25
marcia   30:15
30:18 66:17
79:14,21 80:18
80:18 81:2
margarita   81:2
margin   124:20
mark   1:15 5:3
5:21 6:17
14:17 17:16
18:15 20:17
21:8 22:1,6
23:21 26:4
32:9,24 34:18

34:24 37:6
39:10 40:1
41:11 42:16
43:18 46:13
57:22 60:16
62:16 63:13
65:21 66:16
67:14 70:3
73:6,17 75:7
84:22 85:24
91:11 92:5
95:14 101:14
103:18 105:25
107:2,12 112:4
116:25 119:13
124:10 126:15
mark.bell   1:19
marked   65:19
73:25 79:5
107:8
massachusetts
12:16,20,23,25
13:3,14,17,23
mat   43:11,16
44:3,8,18 51:9
56:22 76:22
77:1,2,4 88:22
89:5 131:20
132:9,10,14,18
mat's   44:3
materials   25:22
26:1
matherne   1:22
5:11,14

mats   29:8 38:1
44:12,22 45:12
46:22,24 56:2
76:24 87:19
130:1
matter   4:15
14:15 26:10
37:21 39:2
54:23 68:5
111:17 112:10
117:6 118:20
122:12 124:8
matters   8:10,14
8:16 10:3
12:25 13:5,13
13:20 20:10
23:16 24:2
37:7,25 39:6
40:16 44:10,20
46:19 50:19,23
51:14 52:19
70:25 72:2
128:17 129:4
129:18 131:6
maxymuik
109:18 110:1
117:23 119:4
121:10
maynard   94:19
94:20,23 95:1
95:10 96:24
97:6,12,18
98:1 99:13
108:3,3 127:24
129:12

maynard's
98:25 99:4
mean   18:8 26:5
31:23 43:14
45:3,7 46:7,13
50:5,16 51:8
55:19 57:18
73:6 76:9 84:1
87:16 90:8
97:24
means   132:4,5
132:24 133:12
meant   50:6
media   4:13
medpay   39:20
39:21,23 40:4
40:9,12,15,22
41:1,5,9,15,18
meetings   19:1
membership
19:2
memory   37:6
51:2 79:15
mention   12:16
mentioned   9:7
9:8 12:13
26:18 47:3
52:12 57:24
104:19 108:3,3
124:4
menu   67:21,25
merely   33:24
44:5 45:13
message   118:5

Alpha Reporting   800-556-8974
A Veritext Company   www.veritext.com

| | | | o |
|---|---|---|---|

**mgas** 17:19
**miami** 2:4
**middle** 1:4 4:18
  57:8
**million** 36:5
  96:15 110:20
**mind** 21:24
  34:13
**minutes** 68:19
  68:19 100:10
**mischaracteri...**
  101:20
**mistake** 109:10
**mistaken**
  116:15 132:4
**misunderstood**
  113:10
**moment** 38:12
  38:15 86:25
**monday** 116:23
  117:16 118:6
**monetary**
  113:19
**money** 96:2,5,7
  99:24 100:4
  112:14
**monitor** 70:6
**monitoring**
  33:24 36:16
  49:3,9,12 52:5
  52:12,13 55:5
  118:13
**morning** 4:3
  5:3,21,24,25

**munn** 71:1,2
**mutual** 55:21

**n**

**n** 3:1 17:2,3
  129:1
**name** 4:22
  38:24 94:21,24
  128:23 135:18
**named** 28:21
  117:7
**nashville** 1:5
  1:18,24 2:9,13
  4:19
**nationwide**
  15:3
**nature** 96:21
  119:18 120:11
  120:16
**necessary** 87:7
  138:6
**need** 11:5 32:14
  32:19,20,21
  33:1 74:9 97:5
  98:20,22,23
  105:8,9 116:10
  118:3,19,21
**needed** 32:1
  60:4,4 72:22
**negate** 127:5
**negligence** 56:1
  131:14,20
**negligent** 56:18
**never** 69:17
  70:15 127:19
  127:20 128:9

128:11,20
**new** 7:22 79:24
**newly** 118:6
**newsletters**
  19:2
**nicholas** 109:18
  116:22
**nick** 110:1
**nine** 17:13,20
**non** 50:17
**nonprofit** 18:9
**norm** 26:16
**normal** 45:10
**notary** 138:13
  138:19
**note** 4:5 7:6
  10:2 30:25
  136:10
**noted** 7:5 57:9
  57:11 138:7
**notes** 80:11
  97:15,16,16
  98:24 99:1
**notice** 22:7,14
  51:13
**november** 3:16
  66:22
**number** 4:19
  18:9 42:4
  65:13 74:3
  80:2,22 88:23
  95:8 135:17
**numbers** 41:25
  42:3 65:24

**o'connor** 2:17
**oath** 5:19
**object** 11:7
  28:24 32:8
  60:8,13 63:10
  73:4,6,15
  75:21 76:8
  77:12 78:1,15
  81:14 96:3
  101:19 103:17
  112:1 113:13
  114:15 115:4
  115:20 119:11
  119:25 133:14
**objected** 73:12
**objecting** 11:11
**objection** 6:7
  6:18 7:1,6,7
  11:16 73:8
  87:17 91:9
  100:1 113:15
  131:4
**objections** 6:8
**objective** 90:16
  91:19 123:16
**objectively**
  92:13
**obligation**
  55:25 56:7
  64:20,21 65:4
  65:5,6,7
**obligations**
  55:20 89:16
  120:23,24

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 160 of 179 PageID #: 10476

**[obligations - outsourced]**

121:25 122:10
**obtained** 88:17
**obtaining**
   95:11 111:11
**obviously** 7:6
   128:7
**occasions** 56:25
**occurred** 44:5
   45:14 83:8
**occurrence**
   36:5,6
**odd** 26:1,8
**offer** 39:23
   75:8
**offered** 23:3
**offering** 34:2
**offhand** 13:2
   65:20
**office** 18:24
**officers** 8:10
**oh** 11:17 26:15
   55:17 66:23
   86:18 92:7
   107:6
**ohio** 14:1,18
**okay** 6:14 7:12
   7:15,21 8:1,17
   9:11 11:17
   12:13 13:16
   14:8,19,25
   15:10,14 16:4
   17:11,23 19:15
   19:19 20:19,25
   21:5,19,20
   22:22 23:6,12

23:15 24:4,14
24:21 25:25
26:14 27:19
28:7 31:3
33:22 35:24
36:10 37:15
38:7 39:14
41:8,20 42:1
43:8 45:20,24
46:9 47:2,8,13
48:17 49:8
51:21,25 52:12
53:4 54:12
55:2,17,19
57:6 59:7,13
59:17 61:24
62:1,8 63:1
66:3,8,23 69:8
74:6,11,12,13
79:8,10,12,20
79:23 80:17,21
82:9,13 83:18
84:9,13 86:14
86:21 92:2
94:15 95:4
97:23 99:21
100:25 102:19
104:24 107:1,6
107:16,19
108:8 109:21
109:25 110:3
110:22,25
111:9 113:1
114:7 115:11
118:18 119:21

120:22 121:2,9
122:16 123:2,8
123:20 124:4
124:15,22
125:11,20
127:18,23
128:4 129:17
130:4 132:23
132:23 133:2
**once** 78:22
**ones** 15:15 23:3
   51:18,19 52:1
   64:5,5 129:11
**ongoing** 112:23
**open** 39:2 74:1
   106:18
**opened** 39:7
   60:4 70:2
   72:15
**operated** 26:11
**operating** 16:3
   61:3 67:23,24
**operation** 18:5
**operations**
   14:14 16:14
**opine** 102:17
   103:20 104:18
   104:25 105:21
**opined** 13:6,8
   13:15
**opining** 125:12
   125:15
**opinion** 8:23,25
   9:16 10:5,24
   89:25 90:20

91:19 101:9,15
102:6 103:22
104:7,9 105:1
105:4,15 106:1
106:4 132:21
132:25 133:19
**opinions** 9:22
   10:6,19 25:6
   41:13 43:1
   57:21 106:2
   123:10 133:20
**opportunity**
   67:20 125:10
**opposed** 45:13
   75:25 79:18
   90:10
**order** 6:20
   31:21 56:17
   61:14 62:17
**ordinary** 62:14
   63:25
**originally**
   132:4
**outcome**
   135:14
**outlined** 49:6
   81:7
**outside** 26:8
   31:14 42:15
   67:16 101:13
   104:6,7 105:4
**outsource** 28:2
**outsourced**
   19:12 28:5

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

**outsourcing** 27:4,9

**outstanding** 75:9

**owed** 64:13

**owes** 122:2

**own** 27:4,9 59:3 65:9 83:15 87:3 88:10 93:6 130:23

**ownership** 64:7

## p

**p.m.** 134:12,14

**padaway** 129:12

**padgett** 80:4

**page** 3:2,13 22:11 41:25 42:3,6 43:5,18 54:8,11 57:4 69:6,6,11 74:14 79:18 82:10,10 89:18 106:19 108:9 124:10 137:4,7 137:10,13,16 137:19

**pages** 26:5 79:19 135:8

**paid** 95:5,5 96:7 98:9 99:10,22,23 100:4 119:23

**panelo** 5:7

**paragraph** 43:5 46:12 64:19,20 84:10 110:10,16,23 121:13

**paris** 16:14,17

**parlance** 45:4 45:11 46:15

**parsons** 67:8

**part** 16:12,12 20:9 55:24 59:7 118:22

**particular** 17:18 27:5,5 33:17 40:18 41:8 44:14 46:14 61:14 76:1 78:25 83:14 89:7

**particularly** 75:5

**parties** 4:11 6:7 14:22 25:23 26:11 59:16 64:1 74:21 99:10 112:19 115:24 135:12

**party** 6:7 9:20 10:15,22 13:10 13:13 14:4,11 15:13,14,16 26:3 27:6,9 28:6 29:2 33:8 36:9 38:14

65:9 67:15 72:10 83:4 89:23 120:13

**past** 19:21 22:24 102:15 104:9

**patricia** 80:4

**patrons** 58:11

**pause** 26:4

**pay** 70:7 93:24 94:1 99:24 111:22 112:15 115:2 118:17 118:18 122:23 128:13

**payable** 115:19

**paying** 98:6,12

**payment** 51:3

**pdf** 42:4

**pennsylvania** 13:24

**people** 17:11,16 17:17 20:11 30:20 94:10

**percent** 20:18

**perception** 58:25

**perform** 14:22 53:16

**permissible** 9:16

**permission** 9:17

**permitted** 10:3 42:18

**perryman** 129:13

**person** 70:20

**personally** 24:5 106:10

**perspective** 14:7 92:12 120:10

**pertain** 12:2,12

**pertaining** 52:18 53:7,7 78:18,20 80:13 87:18

**phone** 74:20 118:10

**phonetically** 16:25

**pick** 91:6

**picking** 90:13 90:14

**picks** 121:17

**place** 4:11 34:8 36:7 49:4,16 49:25 50:8 52:6,17 67:15 68:18 70:6 75:10 111:20 112:25 114:25

**placed** 51:13 92:1

**placing** 90:3

**plaintiff** 1:8,14 4:15

**plaintiff's** 63:20 110:19

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

111:18
**plan** 26:23,25
26:25
**play** 33:10
95:24
**played** 12:6
33:5,7
**playing** 33:23
**please** 4:5,25
6:13 21:25
27:23 34:16
74:17,19 81:2
81:6,7 108:8
**pleasure**
126:14
**pllc** 2:7
**plus** 101:11
105:17,20
**point** 46:16
57:8,9,23
69:10,15 82:13
84:16 90:14
124:15
**policies** 8:11
27:12,13 40:2
40:22 41:1,6
46:4 84:8
101:24
**policy** 8:24 9:9
9:12,25 10:6
10:17,17 21:14
26:19 28:22
39:25 40:8,9
40:14,16,17,19
41:5,17 42:12

56:13 75:12
83:17 90:2
101:2,8 103:11
105:10 116:7
117:8 121:14
121:15 122:3
122:25 124:20
124:22 125:25
127:3,4
**policyholder**
21:20 58:6
**policyholders**
20:4,7,11,16
21:7,23 23:10
**portfolio** 14:7
**position** 45:6
63:3 83:14
100:25 101:5,6
101:16 103:15
104:3,10 105:1
105:23 110:15
**positive** 106:15
**potential** 78:9
78:25 125:12
130:10
**potentially**
11:2,3 44:20
59:8 132:20
**practice** 20:15
**practices** 8:7,8
10:13 12:5
23:21,23 25:1
25:2,5,13
42:22 62:15
63:25 83:4

123:19
**precipitated**
132:15
**precipitating**
44:23 45:12,17
132:9 133:12
**precisely** 61:19
**prejudice**
110:14
**prepared** 98:8
**preparing**
15:19
**present** 2:21
**president** 17:14
**pretrial** 71:20
**pretty** 40:16
**previously**
65:19 73:25
79:5 104:4
107:8
**primarily**
16:16 18:3
37:17
**principal** 63:23
63:23
**prior** 76:25
132:14
**private** 19:13
20:15
**proactively**
84:25
**probably** 7:18
7:20 26:5
38:12 50:23
52:16 71:24

**problematic**
28:20 90:22
91:23 92:4,14
**proceed** 81:7
**process** 77:19
**processes** 43:9
**procure** 20:23
21:2
**produced**
71:20
**product** 40:3
40:10,15
101:18 103:6
103:10,15,16
105:24
**products** 8:11
**professional**
9:2 11:24
18:10,25 31:20
42:21 93:4
**professionals**
61:10 67:21
82:16 83:5,21
84:24 88:2,18
89:24 92:24
123:17
**program** 26:10
28:13 36:4
51:6 54:6 58:3
70:8 111:5
122:11
**programs**
27:17,18
**promotional**
19:3

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

| | | q | ranges 8:6 |
|---|---|---|---|

**proper** 92:1
100:8
**properly** 19:5
**property** 15:9
15:13,13,14,16
23:24
**proposed** 80:22
81:2
**propriety** 25:8
**prospective**
116:6
**prospectively**
81:22
**provide** 15:25
16:2 41:18
68:1 70:13
81:25 127:20
131:25
**provided** 10:17
10:18 34:9
47:20 57:1
65:8 73:20
78:21 81:24
83:9 84:22
87:23 120:15
129:5,19 131:1
**provider** 19:8
**provides** 58:1
**providing**
36:17
**provision** 8:25
9:9,13 40:7
55:22 56:15
61:7,7

**provisions** 9:25
10:7,9 40:17
55:12 56:16
58:9 90:2
**public** 138:19
**pulliam** 1:21
3:6 5:10,10,14
6:16 11:7,10
11:10,15 32:8
32:13,13 60:8
60:11,14 69:11
75:21 76:8
77:12 78:1,15
81:14 96:3
101:20 103:17
113:13,15
114:15,17,17
115:4 119:11
119:25 126:19
126:22,23
128:24 129:3
133:2,14 134:2
**purpose** 71:5
110:12
**purposes** 33:16
**pursuant** 12:8
64:2 81:18
84:7 115:15
**pursued** 51:1
**purview** 9:15
42:15
**put** 6:5 11:16
43:19 44:25
50:1,5,25
105:14 106:17

**q**

**qualified** 8:1,5
**qualify** 84:10
**quality** 4:6,7
**question** 24:10
29:1 34:15,17
41:3 49:17
60:16,23 63:14
75:4 76:22
81:19 86:7
91:10 99:8
100:22 104:1
115:22 129:14
**questions** 7:12
80:23 123:21
126:18,24
127:4,8 132:23
**quick** 23:13
133:5
**quite** 23:4
40:18 58:20
63:12
**quiz** 79:15
**quote** 43:10
119:3
**quotes** 45:1

**r**

**r** 2:11 17:2,2
129:1 135:1
137:3,3
**rambin** 100:23
104:2 105:1,10
105:14 106:6,8
**random** 90:1
91:6

**ranges** 8:6
**rather** 13:7
42:4 121:15
**reach** 118:7
**reached** 23:4
**reaching** 88:18
**read** 6:11 34:15
34:16,21 74:9
74:12 78:6
118:21 136:9
138:5
**reading** 35:5
90:11
**real** 62:24,25
**really** 8:11 9:14
10:23 33:5,23
35:2 42:14
44:3 116:25
**reason** 118:24
136:11 137:6,9
137:12,15,18
137:21
**reasonably**
62:20
**reassigned**
119:1
**recall** 38:11,15
39:4,10 40:11
40:18 72:4
73:17 75:6
85:24,25 86:3
86:8,15,19,21
86:25 99:3
108:1,5,22
128:3 131:7,8

Alpha Reporting
A Veritext Company
800-556-8974
www.veritext.com

131:11,13
132:6,10
**receipt** 89:5
136:18
**received** 78:22
81:17 83:7
85:18
**receiving** 88:12
88:12
**recent** 20:21
21:11
**recipient** 68:1
**recipients**
76:11
**reciting** 97:8
**recollection**
26:7 53:2
99:12,15,17
**recommendat...**
77:21
**record** 4:1,4,12
5:1 6:5 26:6
33:4 34:21
53:24 57:13
58:17 64:10
68:8,9,21,24
69:2 70:19
75:6 81:21
87:1,19 90:18
100:10,14,14
100:17 123:15
124:16 126:17
133:25 134:12
134:14 135:9

**recorded** 4:9
4:14 89:5
**recording** 4:6
4:10
**reexamination**
3:7 133:8
**refer** 124:10
**reference** 13:17
41:25 66:16
67:18,19
**referenced** 10:8
11:2 24:24
74:18 121:23
128:17 136:6
**referral** 79:24
**referring** 28:9
28:10 44:8,10
45:11 70:9
75:24
**refers** 69:24
**reflecting** 26:6
**regard** 8:6,12
10:22 12:6,24
13:4,5 18:4
22:24 23:24
25:8 26:9 29:4
29:10,21 30:11
31:2 32:24
33:25 37:20,25
37:25 38:5
43:21 44:12
50:14 52:8
54:4 55:8 56:1
58:10 63:22
75:9,25 79:1

81:17 83:8
84:6 87:17
89:10 93:3
103:9 104:9
109:7 111:16
113:5,7 114:3
115:23 119:17
129:14 131:6
**regarding**
127:19 128:11
**regardless**
121:18,21
**region** 15:1
**regulatory**
109:8
**reimbursed**
121:22
**reimbursement**
122:2
**relate** 8:15
23:21 24:1
**related** 12:19
12:22 13:17
17:21 23:17
24:2 25:22
77:10 84:21
93:21 101:4
125:24 126:2,5
126:8 135:11
**relates** 13:9
14:15 36:13,15
37:11 78:25
84:11 116:14
**relating** 10:11
30:23 98:25

**relationship**
37:20 58:5,7
61:6 63:4
67:11
**relationships**
58:22
**relativity** 71:12
71:15,17 85:19
97:20
**releases** 98:7
**relevant** 25:7
**reliance** 27:12
**relied** 87:22
**rely** 105:16
**remains** 9:14
**remember**
26:14 30:21
38:16 39:1
43:25 71:3
94:23 98:15
106:23,25
107:11,16
131:3
**render** 8:23
90:19 91:19
105:3 123:16
132:21 133:18
**rendered** 8:25
41:13
**rented** 56:2,23
101:1,17
103:15 105:24
**rep** 52:4 109:18
**replacing** 76:23

Alpha Reporting
A Veritext Company

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 165 of 179 PageID #: 10481

| | | | |
|---|---|---|---|
| **report** 3:15 | **reports** 16:2 | **research** 86:6 | 49:16 52:14 |
| 8:13 9:24 10:2 | **represent** 18:9 | 105:6,8,11 | 53:11,15 55:20 |
| 11:23 13:15,18 | 20:4,8,16 | **reservation** | 65:1 89:16 |
| 13:20 21:24 | 70:11 126:24 | 34:2,9 35:11 | 90:10 101:14 |
| 22:10,21,23 | 128:4,8 | 36:18,25 44:21 | 105:23 111:11 |
| 24:25 31:1 | **representative** | 46:20,25 47:21 | 114:11,19 |
| 41:23,25 42:4 | 38:18 54:23 | 48:5 50:14 | 123:10 |
| 42:6 43:4 | 85:22 93:16 | 52:9 57:1 65:8 | **respectfully** |
| 45:10 57:5,20 | 108:20,24 | 70:12 72:24 | 42:19 103:18 |
| 69:7,12,25 | 117:12 | 75:13,16,20 | **respective** |
| 82:5,10 84:21 | **representatives** | 84:7 93:7,18 | 26:11 |
| 89:18 90:11,20 | 88:1 | 98:3,18 110:15 | **respects** 8:20 |
| 100:23 104:7 | **representing** | 110:19 111:15 | 78:9 |
| 104:14,17,21 | 20:7 | 111:20 112:7 | **respond** 91:11 |
| 104:25 123:9 | **reputation** | 114:2,9,22 | **responding** |
| 123:15 124:5 | 106:9,12 | 115:14 116:7 | 27:14 82:24 |
| 124:11 125:6 | **request** 9:18 | 119:15 120:3 | 84:15 |
| **reported** 29:6 | 61:8 114:1 | 120:21 123:5 | **responds** 81:5 |
| 29:24 30:12 | **requested** | 127:11,12 | **response** 11:12 |
| 135:7 | 34:22 50:21 | 129:5,19,24 | 11:14,16 81:3 |
| **reporter** 4:23 | 51:13 101:7 | 130:5 | 81:6 87:5 |
| 5:2,12,15 6:22 | 113:18 | **reserve** 12:9 | 88:21 123:22 |
| 7:4 11:8 16:19 | **requesting** | **reserved** 6:9 | 124:2 131:8,9 |
| 16:24 17:4 | 42:19 122:18 | 10:1,4 13:19 | 131:19 |
| 18:14,17,19 | **requests** 53:22 | 42:16 104:13 | **responses** |
| 22:18,22 30:5 | **require** 45:8 | 104:16,20 | 57:21 |
| 30:8 32:11 | 46:11 101:22 | **reserves** 16:1 | **responsibilities** |
| 54:15 60:10 | 102:8 132:21 | **resolution** 55:8 | 10:14 13:9 |
| 74:2,5 102:24 | **required** 56:16 | **resolve** 108:1 | 18:4 31:12 |
| 103:3 108:15 | 68:7 93:4 | **resolved** 23:7 | 49:6 54:2 |
| 114:16 116:24 | 138:13 | 50:24 99:8 | 58:24 63:22,24 |
| 128:22 129:2 | **requirement** | 111:17 112:11 | 64:12 68:12 |
| 135:6,17 | 67:15 109:8 | **respect** 6:19 | 77:21 92:25 |
| **reporting** | **requirements** | 7:1 34:3 35:25 | 113:5 116:1 |
| 135:16 | 67:25 | 37:3,10,23 | 120:12 |

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 166 of 179 PageID #: 10482

| | | | |
|---|---|---|---|
| **responsibility** 9:3 44:4 89:12 128:13 | **review** 16:1 20:10 33:3 51:22 52:20 | 54:25 55:1,11 57:19 59:5 60:20 63:8,12 | 57:1 65:9 70:12 72:24 75:13,16,20 |
| **responsible** 46:23 | 74:10,19 77:18 79:11,16 81:21 | 63:17 66:15 68:16 72:9,10 | 84:7 93:7,18 98:3,18 110:15 |
| **rest** 51:3 | 100:23 101:7 | 73:2 75:17,18 | 110:19 111:15 |
| **result** 43:11,16 44:8,25 45:3 80:8 133:13 | 106:3 112:8 113:6 130:12 136:7 | 76:14,16,17,19 77:11 79:4,17 79:18 80:4,6 | 111:20 112:7 114:2,10,22 115:14 116:8 |
| **resulted** 44:18 46:23 130:1 132:3 | **reviewed** 25:7 26:5 53:23 78:5,23 80:14 | 80:15,19 86:1 86:2 87:16 89:17 94:16 | 119:15 120:3 120:21 123:5 127:11,12 |
| **resulting** 44:23 132:15,24 133:12 | 85:16 86:5 87:20 88:2,17 131:23 | 102:20 103:7 104:13,15,16 104:20,22 | 129:5,19,24 130:5 |
| **results** 45:7,16 45:17,22 46:2 | **reviewing** 25:21,25 44:16 | 107:7 109:14 109:21 110:23 | **risk** 10:9 12:8 27:7 33:9 35:22 37:18 |
| **retail** 21:3 89:7 | 75:6 106:23 | 110:24 111:2,7 | 49:6 54:2 58:9 |
| **retain** 15:23 | **right** 6:22 8:2 | 111:8 113:11 | 64:2 68:13 |
| **retained** 20:25 25:17,21 26:24 | 9:9 10:1,4 12:9 12:14 13:19 | 115:14,17 116:18 117:12 | 89:12 92:25 |
| **retention** 10:20 26:25 27:12 | 20:24 21:4 22:12 24:19 | 118:15 120:25 121:9 122:25 | **rivela** 74:14 76:10,15 78:7 |
| 101:13 102:18 103:21 104:8 | 26:20 28:2,18 31:7 32:2 | 123:3,8,20 124:5 125:22 | **rivero** 75:23 76:15,18 78:7 81:5 |
| 105:5 111:2,3 121:23 122:9 | 33:20 34:23 36:14 37:22 | 125:22 126:11 128:16 129:11 | **rms** 58:20 95:23 113:20 |
| 123:13,14,24 | 38:22 39:8,18 41:6,9,18 | 129:23 130:8 132:2 133:23 | 116:1 |
| **retentions** 20:21 | 42:17 43:17 | **rightly** 35:14 | **robert** 21:12 |
| **return** 136:13 136:17 | 45:1,25 46:4 47:6,11 48:10 | **rights** 34:2,9 35:12 36:18,25 | **rodeo** 7:9 |
| **returning** 69:1 100:16 | 49:10,13,22,23 50:4,19 51:7 53:8,12 54:9 | 44:21 46:20,25 47:22 48:6 50:15 52:9 | **role** 10:14 11:24 12:6 13:11 14:2 15:18,20 18:22 20:6 33:7,10 |

Alpha Reporting 800-556-8974
A Veritext Company www.veritext.com
Case 3:21-cv-00619 Document 187-11 Filed 03/01/23 Page 167 of 179 PageID #: 10483

34:3 35:25
36:10,12 37:2
37:3 44:3
48:25 49:2
53:6,11 54:5
60:19 63:6
93:20 95:9,10
99:24 111:10
113:1,4 114:20
115:18 116:6
118:13 123:2,7
125:22
**roles** 33:6,23
52:13
**roughly** 19:20
**rules** 7:13
**run** 16:16 18:3
113:5 116:2
**runs** 8:11 13:25
**ruskin** 108:12
108:16 109:11
109:25 116:19
117:11 118:5,8
121:10
**ruskin's** 122:6

**s**

**s** 2:12 3:12 16:8
17:2,3 137:3
**sake** 99:21
**saw** 26:8 29:21
49:20 109:6
**saying** 35:4
46:18 48:20
64:25 69:24
76:23 84:4

114:7 117:14
122:17 131:14
131:19
**says** 30:25
40:17 43:8
54:21 57:11
64:20 65:13
66:8 67:2,4
68:6 74:17
76:20 77:3
80:21 81:1
88:22 89:19,21
108:24 109:17
110:12,16
116:22 117:4
118:3,22
121:13 122:12
**scene** 15:19,24
**schedule** 74:20
**scheduled** 75:5
**scope** 10:20
15:20 101:13
102:18 103:20
104:7,7 105:4
123:13,23
**screen** 4:9 22:5
65:24 66:4,5
**scroll** 54:7,10
76:14 108:8
109:21
**scrolling**
116:18
**sebo** 21:12 23:1
**second** 6:8 69:9
79:18 82:13

110:10 117:4
118:21 121:13
**section** 57:20
**sedgwick** 61:23
62:3,4,5,12,23
**see** 34:19 38:8
38:16 39:13
40:20 43:12
46:14 51:12
53:1 54:13,19
57:9,14 60:16
60:17 63:15
64:23 65:12,16
66:5,5,10,11,12
66:13,17,24
67:2,6 69:14
69:20 70:19
73:11 74:8,15
74:22 77:7
79:8 80:24
81:2,9,20
82:20 83:11,24
84:23 85:11,20
87:16 90:5
91:22 92:13
95:14 97:1,5
97:20 98:13,14
98:20,22,23,24
101:2 103:9
107:3 108:12
108:23 109:1
109:19 110:10
110:21 112:18
115:6 116:10
116:20 117:9

118:1,11
121:19 122:4
122:20 124:17
128:16 133:3
134:6
**seeing** 26:14
35:9 86:8
107:11 125:10
128:3 131:3,7
**seem** 31:23
**seemed** 26:1
92:4
**seems** 26:15,15
**seen** 4:8 27:11
48:2 50:22
64:4,10 91:18
101:16 102:11
102:16 103:14
103:25 104:3
104:10 107:18
114:24 131:21
**selective** 90:2
90:12
**selectively**
89:25 90:10
**self** 26:25 27:12
111:2,3 121:23
122:9
**selliott** 2:10
**send** 80:22
**sending** 76:10
**senior** 108:20
108:24
**sense** 34:19,24

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 168 of 179 PageID #: 10484

| | | | |
|---|---|---|---|
| **sent** 136:14 | **settle** 37:9 96:6 | **short** 23:7 | 62:2,9,12 70:3 |
| **sentence** 46:12 | 96:19 113:21 | **show** 44:7 | 70:11 75:25 |
| 54:13,16 69:10 | **settled** 51:4 | 65:17,23 73:24 | 81:11 95:9 |
| 69:14 117:4 | 98:5 99:18,22 | 79:5 | 96:23,24 99:5 |
| 122:12 124:19 | 108:4,5,5 | **showed** 43:10 | 113:24 114:8 |
| **separate** 16:12 | 129:10 | 43:15 | 115:7,17,25 |
| 35:13 50:14 | **settlement** 25:1 | **shows** 19:2 | 121:4,6,7 |
| 54:21,23 58:6 | 25:2,13 36:20 | 115:23 131:20 | **situations** |
| 60:25 61:1,25 | 36:22,25 37:3 | **sic** 17:3 38:19 | 33:22 44:1 |
| 64:9 70:3 71:4 | 37:5,13,23 | 76:25 | 48:3 50:22 |
| 72:12,18 78:19 | 39:17 93:10,12 | **side** 15:9 17:16 | 51:15,25 94:12 |
| 79:2 82:1 | 93:21,24 94:1 | 36:12 | **skills** 135:10 |
| 88:11 | 94:18,25 95:4 | **sign** 6:11 | **skin** 89:10 |
| **serve** 14:4,12 | 95:11,19,25,25 | 136:12 | **skipped** 110:22 |
| 15:22 | 96:12,12 97:21 | **signature** 67:22 | **skolnik's** 30:21 |
| **serves** 37:6 | 99:25 107:23 | 68:6 135:21 | **slightly** 46:7 |
| 51:2 | 110:14 111:11 | **signed** 136:20 | **slow** 16:20 |
| **service** 10:11 | 111:22 112:13 | **similar** 13:1 | **slower** 16:25 |
| 54:1 93:1 | 112:16 113:19 | 37:19 58:23 | **solely** 31:13 |
| **services** 10:10 | 114:5,11 115:3 | 103:14 | 37:17 52:19 |
| 10:10 12:8 | 115:7,18 116:4 | **simply** 58:16 | 64:12 68:12 |
| 14:23 20:9 | 117:6,12,19 | **sincerely** 67:2 | 116:2 121:22 |
| 25:18 33:9 | 119:9,17,18,23 | **single** 92:10 | **solutions** |
| 35:22 37:18 | 122:18,24 | **sir** 7:14,25 8:3 | 136:23 |
| 49:7 54:3 | 127:8,10,15,21 | 9:6,10 12:15 | **somebody** |
| 55:23 56:15 | 128:13 | 12:18,21 24:20 | 31:25 |
| 58:10,21 64:2 | **settlements** | 25:24 27:17,17 | **sorry** 5:12 6:23 |
| 68:13,14 77:22 | 25:5 95:7 | 34:11 119:9 | 6:25 11:8,13 |
| 89:12 | **seven** 129:12 | 121:15 | 16:19 22:8,9 |
| **set** 33:18,20 | 129:18 | **sitting** 38:11,15 | 22:14 30:19,19 |
| 61:12 62:11,17 | **share** 50:20 | 85:25 86:20,21 | 32:12 34:12,12 |
| 62:22 78:24 | 65:24 66:4 | 86:25 | 37:16 39:16 |
| 99:4 115:15 | 74:1 | **situation** 47:10 | 47:4,13 54:15 |
| 119:16 120:18 | **sheet** 136:11 | 51:22 59:20 | 55:17 71:2,8 |
| 130:6 | | 60:3 61:11 | 91:1 93:10 |

Alpha Reporting                      800-556-8974
A Veritext Company              www.veritext.com

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 169 of 179 PageID #:
10485

96:4 99:19
102:24 107:2
108:15 110:22
111:4,25
113:14 116:24
116:25 124:25
128:22 131:9
**sort**  42:12
45:21 61:17
91:6
**sought**  9:17
10:24
**sources**  85:8,17
**space**  103:1
**speak**  78:5
117:15 118:19
**speaking**  76:5
117:6,19 118:4
**speaks**  40:14
75:22 76:9
**special**  53:25
120:14
**specialists**
17:17
**specials**  112:9
**specialty**  15:7,8
**specifically**
13:16 33:2
108:7 115:12
115:22 123:14
**speculation**
32:17
**speculations**
100:6

**spelling**  16:23
**square**  82:22
**stage**  23:4
118:25
**stand**  39:12
**standard**  8:9
102:20 103:7
103:11 123:19
**standards**  13:3
**standing**  6:18
7:1 78:17 92:4
**standpoint**
12:4
**start**  21:11
79:20
**started**  24:15
**starting**  21:10
**starts**  109:22
124:16,19
**state**  4:25
13:25 19:5,6,7
19:9 67:24
135:2,6
**statement**
64:25 69:15
82:22 83:18
122:7
**states**  1:3 4:18
12:1 14:14
16:16 67:14
68:7
**stating**  119:4
**status**  29:11,23
30:15 51:20
84:17 113:17

114:1,9
**statute**  8:24
**statutes**  11:25
42:14,24
**statutorily**  68:7
**statutory**  12:12
67:17 68:2
109:9
**stay**  133:19
**staying**  100:19
**sterling**  27:16
**steve**  108:12,23
118:3,9,23
**steven**  2:6
**stick**  45:9
**sticker**  107:3,5
107:9
**stipulations**  6:6
**stock**  64:7
**stores**  58:12
**street**  1:17,23
2:17
**strength**
125:16,17
**struck**  26:8
**stumbled**  44:3
**sub**  57:8,23
58:16 124:16
**subject**  35:7
41:4 79:24
**subjected**  34:7
35:9
**subscribed**
138:14

**subset**  44:9
**suggest**  76:22
**suggesting**
75:12
**suite**  1:17,24
2:4,8,13,18
**supplement**
13:20 104:14
104:16,20,25
124:5,7 125:3
**supplemented**
125:25
**supplementing**
125:5
**supply**  1:7 4:16
5:4 29:6,9,22
30:13 34:10
35:11 36:19
38:9 44:11
52:11 55:14,24
55:25 56:2,17
56:23,24 58:12
61:3 76:25
77:25 81:25
83:7 85:10,12
86:12 87:6,14
87:15,17 88:23
89:4,7 92:23
93:13,21 95:5
95:11 96:1,13
98:2,4,11,17
99:2,23 109:15
111:12 112:15
112:19 113:18
114:19 115:2

Case 3:21-cv-00619   Document 187-11   Filed 03/01/23   Page 170 of 179 PageID #: 10486

115:19 116:5
116:11,15
117:7,20
119:10 121:25
122:13,19,24
124:21,21
125:17,17
128:1,8 129:10
130:25 131:6
131:18,24
136:4 137:1
138:1
**supply's** 12:3
25:9 28:10
38:14 39:7
42:25 51:10
70:1 84:17
130:20
**support** 106:4
**supposed** 52:23
**suppositions**
97:2
**sure** 6:12 14:4
17:1 19:3
23:20 24:10
34:5,14,20
35:6,12 43:20
48:7 49:17,18
49:20 51:18
52:18 53:6
57:25 62:18
65:18 66:1
68:22 86:14
100:12,21
106:19 121:24

123:6 125:9
133:10
**sustained** 44:14
**swath** 13:8
**swearing** 5:2
126:17
**sworn** 5:18
138:14
**syndicate** 14:9
14:25 15:6
**syndicates** 14:6
14:10,21

**t**

**t** 3:12 17:3,3
135:1,1 137:3
137:3
**take** 4:10 8:12
23:13 31:19
32:14 33:1
40:24 49:16
52:25 53:21
68:18,18,19
71:21 72:3
74:8 83:13
85:23 86:6
87:1 96:25
98:13 99:7
103:8 105:5,9
105:10 106:18
112:3,17
128:10
**taken** 4:14
101:16 103:15
104:3,11

**takes** 100:25
**talk** 21:17
115:12 118:3
**talked** 42:9
132:8
**talking** 51:18
56:6 57:7,19
85:4 94:13
97:11,12,15,17
97:17 129:11
**talks** 84:16
**tarrant** 1:23
**telephone** 75:4
76:12
**tell** 7:21 14:2
18:21 20:6
34:16 68:20
**tells** 75:3
**ten** 68:19
**tender** 33:16
34:1 36:24
47:19 51:14,19
52:1,2,10
56:24 70:1,13
70:13 71:3
72:24 78:22
79:25 81:3,6
82:25 84:7
87:5 88:21
93:3 111:13,20
113:17,25
114:8,21
119:14 120:2,3
120:20 127:12
128:9 129:10

131:8,9,9,18
**tendered** 43:18
44:11 46:19
62:10 86:4
92:23 93:17
96:22 98:16
128:6,12,20
**tendering** 61:8
**tenders** 102:3
**tennessee** 1:4
1:18,24 2:9,13
4:19 11:3 12:1
12:14 25:1
105:12 135:2,6
135:16
**term** 45:22
**terms** 7:19
33:11 46:3
53:2 75:23
78:8 84:8
**terribly** 31:23
**territory** 13:25
14:16
**testified** 5:19
12:25 30:24
38:5 39:5 92:5
92:21 105:25
119:12 127:9
129:23 130:2,6
130:21 131:4
133:11
**testify** 7:23
10:3 41:16,17
42:18 104:21
127:3

Page 33

| | | | |
|---|---|---|---|
| **testifying** | 92:11 104:19 | 129:23 133:11 | **topic** 132:2 |
| 133:15 | **think** 7:17,18 | **thoughts** 81:3 | **topics** 8:4 |
| **testimony** | 9:7 11:2 24:24 | 101:12 | **totality** 90:4,8 |
| 22:25 23:3 | 26:4 27:20 | **three** 19:23 | 90:18 91:3,25 |
| 29:20 30:22 | 30:21 33:7 | 46:3 65:23 | 92:3,13,16 |
| 38:17,17 39:10 | 34:12 38:21,22 | 99:4 118:10 | 106:5 |
| 39:11,12 42:16 | 38:24 39:5 | **time** 14:11,11 | **totalled** 71:23 |
| 58:19 68:9 | 44:19 45:9 | 18:15 20:10,10 | **totally** 64:9 |
| 101:21 105:15 | 46:24 51:2 | 31:21 41:21 | **tough** 116:25 |
| 125:21 132:14 | 52:5,16 54:7 | 48:22,22 68:24 | **towards** 112:15 |
| 134:12 136:9 | 58:13,14 59:7 | 69:2 71:24 | 114:5 |
| 136:18 138:8 | 60:12 68:7,17 | 72:17 74:8 | **tp** 36:2 |
| **texas** 2:18 | 70:25 71:19,23 | 85:3 88:4 | **tpa** 13:22,24 |
| **textile** 10:10 | 75:22 78:13 | 95:19,20 | 14:2,22 15:5 |
| 55:22 | 82:4 87:12,24 | 100:17 103:22 | 15:18,20,22 |
| **textiles** 56:15 | 92:21 102:10 | 105:4 106:1 | 17:7,24 18:1 |
| **thank** 5:15 6:2 | 108:2 109:6 | 116:25 125:4 | 23:17 24:5,19 |
| 7:4 17:4 18:19 | 118:21 127:5 | 126:12 136:19 | 26:23,23 27:15 |
| 30:8 74:5 | 130:5 131:20 | **timeframe** | 28:2,21 33:12 |
| 103:3 110:9 | **third** 10:15,22 | 136:8 | 36:12 58:8 |
| 111:6 124:8 | 12:3 13:10,13 | **times** 27:15 | 59:10,21 61:3 |
| 125:4 126:15 | 14:4,11 25:9 | 38:24 101:25 | 61:4,25 62:3 |
| 126:16 129:2 | 27:6,9 28:6 | **today** 7:24 24:4 | 62:13,17,22,23 |
| 134:5,6,9 | 29:2 33:8 36:9 | 85:25 86:20,22 | 119:2 130:18 |
| **thanks** 81:4 | 38:14 43:1 | 134:10 | **tpas** 17:19 |
| 100:19,19 | 63:20 64:1 | **today's** 134:11 | 19:14 27:14 |
| 133:3 134:8 | 65:9 67:15 | **todd** 2:12 | 63:16 |
| **thing** 30:25 | 72:10 83:4 | **told** 40:21 | **tractor** 1:7 4:16 |
| 45:7 67:22 | 89:23 120:13 | 99:15 | 5:4 12:2 25:9 |
| 92:7 | **thought** 16:11 | **took** 41:12 | 28:10 29:6,9 |
| **things** 9:21 | 26:15 27:25 | 42:20,24 78:23 | 29:22 30:12 |
| 13:8 46:14 | 31:24 35:4,5 | 85:17 87:24 | 34:9 35:11 |
| 52:24 57:21 | 53:5 94:4 | **top** 84:16 99:19 | 36:18 38:9,13 |
| 78:19 88:19 | 98:10 101:4,6 | 107:25 | 39:7 42:25 |
| 90:13 91:7,13 | 113:9 114:10 | | 44:11 51:10 |

Case 3:21-cv-00619 Document 187-11 Filed 03/01/23 Page 172 of 179 PageID #: 10488

52:11 55:14,24
55:25 56:2,17
56:23,24 58:11
61:3 69:25
76:24 77:25
81:25 83:7
84:17 85:9,12
86:12 87:6,14
87:15,17 88:23
89:4,7 92:23
93:13,21 95:5
95:11 96:1,13
98:2,4,11,17
99:2,23 109:15
111:12 112:15
112:19 113:18
114:19 115:2
115:19 116:5
116:11,15
117:7,20
119:10 121:25
122:13,19,24
124:21,21
125:16,17
128:1,8 129:10
130:19,25
131:5,18,24
136:4 137:1
138:1
**trade** 18:10,25
19:2,11,16
**training** 105:7
**transcript**
90:12 135:8
136:6,20 138:5

138:8
**transparently**
68:1
**trial** 9:18 23:2
**tripped** 29:7
44:1
**true** 65:1 88:6
135:9 138:8
**truthfully** 7:24
**try** 35:2 109:18
**trying** 27:22
55:2 57:16
61:18 83:5
98:19 113:8
133:24
**tsc** 64:22 65:4,6
65:7,9 69:19
70:17 72:9
**tsc's** 54:24 55:3
55:10 56:5,6,7
65:11 72:10
**tuesday** 117:16
**turn** 57:4 69:6
**two** 6:5 15:21
23:25 33:5,23
47:11,11,13
61:5 72:18
78:19 128:6
**tx** 136:15
**type** 15:6 20:23
23:16,16 37:20
58:23 70:11
91:12 94:11
121:6,6

**types** 23:17
105:13 112:24
**typical** 26:19
27:2,11 121:5
121:5
**typically** 26:22
48:17
**typographical**
124:24

**u**

**u** 17:2
**uh** 60:22 95:8
103:4
**ultimately**
94:25 99:18
122:22,22
**under** 16:2
26:11 33:9
34:2,9 35:11
36:8,18,24
41:1 44:21
46:20,25,25
47:21 48:5
51:4,5 52:9
53:20 54:2
55:12 56:6,7
57:1 61:6
62:14 64:1
65:8 70:8,12
72:24 76:20
77:21 83:3
84:7 89:12
90:3,18 91:25
92:25 93:6,17
95:22 96:19

98:1,1,2,7,16
98:18 101:1
102:14 103:16
106:4 111:15
111:20 112:7
113:11,20
114:1,9,22
115:13 116:1,7
116:7 119:15
120:3 121:15
122:3,24 123:4
129:5,19
**underlying**
29:3 43:9 44:7
44:17 87:17
128:5 130:9
**understand**
6:10 7:10 9:19
10:4 11:24
25:20 31:3
49:17 55:2
57:16 63:9,13
63:14 88:7
95:22 113:8
119:6 121:14
**understanding**
29:17 38:2
39:16 40:1
56:14 59:6,9
59:11 63:2,17
67:20 72:20
76:21 119:13
120:4,6,8
127:14

Alpha Reporting
800-556-8974
A Veritext Company
www.veritext.com

Case 3:21-cv-00619 Document 187-11 Filed 03/01/23 Page 173 of 179 PageID #: 10489

| | | | |
|---|---|---|---|
| **understood** | 36:16 37:7,9 | 122:15 124:21 | **v** |
| 6:21 7:7 11:19 | 37:11 38:1 | 126:24 129:7 | **v** 2:2 17:2 |
| 42:5 70:14 | 40:3 43:11,16 | 129:21 130:1 | 136:4 137:1 |
| 124:23 | 43:24 44:8 | 130:10,16 | 138:1 |
| **undertake** | 46:22 48:15,19 | **unifirst's** 10:14 | **vacuum** 91:13 |
| 14:11 15:24 | 49:3,9,19 50:8 | 29:8 55:24 | **variety** 8:13 |
| 29:2 30:9 48:8 | 50:12,17 51:5 | 59:21 62:3 | 14:10 85:8 |
| 93:5 133:21 | 51:17 52:21 | 77:10 126:6,8 | 102:4 |
| **undertaken** | 54:3 55:7,11 | **union** 1:17 | **various** 10:9 |
| 30:15,23 48:15 | 55:13,23 56:17 | **unit** 4:13 | 14:6,20 17:19 |
| 54:5 72:11 | 56:19,21 58:2 | **united** 1:3 4:17 | 19:11 43:25 |
| 92:24 119:19 | 58:4,6,7,15,22 | 14:14 16:15 | 53:21 56:18 |
| **undertaking** | 59:14,25 60:1 | **unmodified** | 102:14 112:9 |
| 12:6 13:10 | 60:20 61:23 | 103:7 | **varney** 20:22 |
| 19:1 27:8 | 62:4 63:24 | **unquote** 43:11 | **verbatim** 39:11 |
| 33:25 34:6 | 64:12 65:5 | **unrelated** | **verify** 136:9 |
| 35:10 36:17 | 68:15 69:18 | 21:18 | **veritext** 4:23 |
| 48:4 77:20 | 70:16,23 71:7 | **unusual** 26:9 | 136:14,23 |
| **undertook** 31:1 | 72:2 73:1,5,13 | 29:1 48:2 | **veritext.com.** |
| 63:24 84:5 | 75:1,19 76:18 | **unwieldy** 60:16 | 136:15 |
| **underwriter** | 76:21,24 77:1 | **uploaded** 65:22 | **versicherung** |
| 54:6 | 77:16,22 78:9 | 66:2 | 16:17 17:1 |
| **underwriting** | 78:22 79:25 | **use** 17:15,16 | **versus** 4:16 |
| 67:17 68:2 | 81:19 83:12 | 45:23 61:21 | **vicki** 67:8 |
| **unfair** 24:25 | 84:19,24 89:6 | 113:20 | **video** 4:10,14 |
| 25:1,4,13 | 89:6,13 94:3,9 | **used** 46:3 61:17 | 80:13 83:5 |
| **unfamiliar** | 94:10,14,16 | 78:5 96:5 | **videographer** |
| 22:15 | 95:6 96:6,11 | 103:9 105:14 | 2:21 4:3,22 |
| **unifirst** 1:10 | 96:14,17 99:2 | 136:20 | 68:23 69:1 |
| 5:11 10:23 | 99:22 100:5 | **using** 22:4 | 100:13,16 |
| 12:7 13:11 | 110:17 113:5,6 | 61:17 70:10 | 126:18 134:11 |
| 19:13 28:17,18 | 113:10,21,22 | **usually** 27:17 | **videotaped** 1:1 |
| 30:11 31:13,16 | 114:4,12,20,24 | **utilize** 27:16 | **view** 90:15 |
| 33:8 34:6 | 115:1 116:2 | | 91:24 123:16 |
| 35:23 36:2,8 | 121:22 122:2 | | |

**virginia** 14:1
14:18
**virtually** 4:6
**voicemail**
118:6
**vs** 1:9

**w**

**w** 2:6
**wait** 30:5 60:10
**walk** 34:11,11
**walking** 44:2
**waller** 1:16
**wallerlaw.com**
1:19
**want** 6:4,11,11
32:23 35:12
49:25 68:18,19
73:24 77:4
79:4,15 91:15
97:1 106:19
112:20 119:1
132:13 133:10
133:19
**wanted** 78:23
98:24 112:21
121:24 131:2
**wants** 119:5
**warrington** 2:2
5:6,6 6:17,25
28:23 30:3,7
56:10 60:9
63:10 73:15
78:2 90:24
91:9 93:14
95:17 100:2

101:19 104:5
107:2,6 111:24
112:1 115:20
117:13 134:4
**warth** 1:15 5:5
**way** 16:20
28:12 36:11
45:16 56:13
64:15,18 78:5
83:13 90:15
93:11 106:19
122:1 135:13
**ways** 27:11
**website** 19:1
**welcome** 17:5
**went** 85:14
**west** 2:8 14:1
14:18
**whatsoever**
31:2 53:11
63:6
**wholesalers**
20:2
**willful** 56:18
**willing** 110:13
**wish** 104:18
120:20
**witness** 4:8 5:2
5:21 6:13 8:18
9:5,16 11:25
16:22 17:1,5
17:21 20:9
22:24 28:25
30:4,9 32:9,14
34:23 42:15

56:11 60:15
63:12 66:23
73:16 74:6
75:22 76:9
77:13 78:3,16
81:15 90:25
91:10 93:15
95:18 96:4
100:3,12
101:22 103:1,4
103:18 104:6
107:11 111:25
112:2 113:14
113:16 115:5
115:21 117:14
119:12 120:1
126:14 128:25
133:3,17 134:6
134:9 136:8,10
136:12,19
**witnesses** 83:6
**wonderful** 92:8
**wondering**
98:21
**wording** 78:4
105:13
**wordings**
101:24 103:12
**words** 44:25
122:13
**work** 17:7,11
17:21,25 23:17
63:16 93:6
98:6,11 103:10
105:24

**worked** 28:13
56:14 95:16
98:14
**working** 24:18
**works** 65:25
**world** 67:16
**worries** 22:13
125:1
**worry** 22:17
**write** 16:25
**writings** 79:14
**written** 64:3
82:14 101:24
117:17
**wrong** 24:16
38:24 39:6
61:4 72:5
87:12 91:17
125:22 127:10
**wyatt** 1:23
**wyattfirm.com**
1:25

**x**

**x** 3:1,12 16:8

**y**

**yeah** 6:25
21:25,25 38:23
46:1 49:18
61:15 66:1
80:5 102:13
106:21 109:14
117:2 124:23
126:19

Alpha Reporting
800-556-8974
A Veritext Company
www.veritext.com

Case 3:21-cv-00619    Document 187-11    Filed 03/01/23    Page 175 of 179 PageID #:
10491

**[year - zoom]**

| | |
|---|---|
| **year** | 36:5 96:16 |
| **years** | 21:22 |
| | 23:1 36:4 |
| | 101:11 102:15 |
| | 103:24 104:10 |
| | 105:17,20 |
| | 124:1 |

| **z** |
|---|
| **zoom** 4:21 |

Alpha Reporting
A Veritext Company

Tennessee Rules of Civil Procedure

Depositions Upon Oral Examination

Rule 30


Rule 30.05: Submission to Witness; Changes;
Signing.


When the testimony is fully transcribed the
deposition shall be submitted to the witness for
examination and shall be read to or by the witness,
unless such examination and reading are waived by
the witness and by the parties. Any changes in form
or substance which the witness desires to make
shall be entered upon the deposition by the officer
with a statement of the reasons given by the
witness for making them. The deposition shall then
be signed by the witness, unless the parties by
stipulation waive the signing or the witness is ill
or cannot be found or refuses to sign. If the
deposition is not signed by the witness within 30
days of its submission, the officer shall sign it
and state on the record the fact of the waiver or
of the illness or absence of the witness or the
fact of the refusal to sign together with the
reason, if any, given therefor; and the deposition

may then be used as fully as though signed unless
on a motion to suppress under Rule 32.04(4) the
court holds that the reasons given for the refusal
to sign require rejection of the deposition in
whole or in part.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

### VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.